# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELISE AUGUSTINE, individually and on behalf of all others similarly situated, | No. 3:24-CV-1309 |
| *Plaintiff*, | **JURY DEMAND** |
| v. | |
| LESSEREVIL LLC, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

# Table of Contents

I.      Introduction......................................................................................................................1

II.     Parties..............................................................................................................................2

III.    Jurisdiction and Venue.....................................................................................................2

IV.     Facts.................................................................................................................................2

        A.      Lead is toxic........................................................................................................2

        B.      Defendant's Products contain lead.......................................................................3

        C.      Consumers are not aware of the danger posed by Defendant's Products.............5

        D.      Defendant is aware of this risk............................................................................6

        E.      Plaintiff was misled by Defendant.......................................................................7

V.      Class Action Allegations..................................................................................................8

VI.     Claims............................................................................................................................10

        Count I: Violation of the Connecticut Unfair Trade Practices Act,..................................10

        Conn. Gen. Stat. §42-110a, et seq...................................................................................10

        Count II: Breach of the Illinois Consumer Fraud and Deceptive Business Practices Act.13

        Count III: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq. ...........15

        Count IV: Breach of Implied Warranty ...........................................................................18

        Count V: Breach of Express Warranty ............................................................................20

        Count VI: Quasi-Contract ..............................................................................................21

VII.    Jury Trial Demand. ........................................................................................................21

VIII.   Prayer for Relief.............................................................................................................21

## I.     Introduction.

1.     Lead is a toxic metal.  When consumed, it accumulates in the body and "affects multiple body systems."[1]  It is linked to "a host of health problems in children and adults."[2]  In adults, for example, it can "lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues."[3]  In children, it can cause "profound and permanent adverse health impacts, particularly on the development of the brain and nervous system."[4]  Children are "more vulnerable to the harmful effects of [lead] contaminants" because "their smaller body sizes and metabolism."[5]  There is "no known safe blood level concentration."[6]  "Lead exposure is estimated to account for 21.7 million years lost to disability and death…worldwide due to long-term effects on health."[7]

2.     Due to its toxicity, lead exposure has been regulated.  For example, the state of California has set a maximum allowable dose level for lead, at 0.5 micrograms a day, because exceeding this maximum allowable dose is unhealthy and unsafe.

3.     Defendant LesserEvil LLC ("LesserEvil") makes, sells, distributes, and markets kids snack products, including LesserEvil Lil' Puffs kids snacks (the "Products").  Defendant's Products are snacks intended for consumption by children.  Yet, there is no warning or disclosure telling consumers that the products contain lead.  And, independent laboratory testing shows that the kids snacks do in fact contain lead in harmful amounts that even exceed California's

---

[1] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[3] *Id.*
[4] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[5] https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods
[6] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[7] *Id.*

1

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica. CA 90401

maximum allowable daily dose limit.

4.      Like other consumers, Plaintiff Elise Augustine purchased LesserEvil Lil' Puffs Kids Snacks. The products did not disclose the presence of lead.  She believed that the product was properly manufactured, free from defects, safe for consumption, and not adulterated or misbranded.

## II.    Parties.

5.      Plaintiff Elise Augustine is a citizen of Illinois, domiciled in McHenry County.

6.      The proposed class includes citizens of all states except California.

7.      Defendant LesserEvil LLC is a citizen of Connecticut. Defendant is a Connecticut Limited Liability Company with its principal place of business located at 41 Eagle Road, Danbury, Connecticut 06810.  Defendant markets and sells LesserEvil Lil' Puffs Kids Snacks.

## III.    Jurisdiction and Venue.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant. Defendant has its principal place of business in Connecticut.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant is Connecticut limited liability company and has its principal place of business in this district. And Defendant sells the LesserEvil Lil' Puffs Kids Snacks products here.

## IV.    Facts.

### A.    Lead is toxic.

11.     Lead is toxic.  Lead accumulates in the body and "affects multiple body

systems."[8]  In children, it can cause "profound and permanent adverse health impacts, particularly on the development of the brain and nervous system."[9]  It also "causes long-term harm in adults, including increased risk of high blood pressure and kidney damage."[10]  There is "no known safe blood level concentration."[11]  "Lead exposure is estimated to account for 21.7 million years lost to disability and death…worldwide due to long-term effects on health."[12]

12.     Further, "[y]oung children are particularly vulnerable to the toxic effects of lead and can suffer profound and permanent adverse health impacts, particularly on the development of the brain and nervous system."[13]  "Even low levels of lead in blood have been shown to negatively affect a child's health."[14]  "There is no level of exposure to lead that is known to be without harmful effects."[15]

   **B.     Defendant's Products contain lead.**

13.     Defendant makes, sells, and distributes kids snacks, including LesserEvil Lil' Puffs Kids Snacks.   The snacks are marketed as "kids" snacks, and state that they are for consumption by "toddler[s]":

---

[8] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] https://www.cdc.gov/lead-prevention/symptoms-complications/index.html
[15] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

  

14.    Defendant's marketing expressly directs consumers to feed the snacks to toddlers and young children.  The packaging tells parents that the snacks are fit for children who can "stand[] alone," "feed[] self with fingers" and "bite[] through a variety of textures."[16]  Defendant advertises that its products are "air-puffed healthy snacks for kids."[17]  The marketing materials state that the snacks are "simply made with a blend of seven wholesome vegetables so you and your toddlers can (super) power through the day."

15.    The packaging marketing materials further state that the LesserEvil Lil' Puffs are "Clean Label Certified" and "[w]hen [consumers] see the Clean Label Project certification on our packaging," they "can trust that we've taken every measure to ensure it's a safe and high-quality product" that has passed "rigorous third-party testing."[18]

---

[16] https://shop.lesserevil.com/products/voyager-veggie-blend-lil-puffs
[17] https://shop.lesserevil.com/products/voyager-veggie-blend-lil-puffs
[18] https://shop.lesserevil.com/collections/lesserevil-kids/products/starberry-beet-lil-puffs; https://lesserevil.com/blogs/lesserevil-101/spotlight-clean-label-project/

4

16.     These marketing statements—on the packaging and website— are made directly to buyers of the Products.

17.     By making, selling, and marketing the Products as "kids" snacks to consumers, Defendant represents to consumers that the Products do not contain harmful chemicals such as lead.  In addition, by marketing the Products as kids snacks, Defendant represents to consumers that the Products are safe and healthy for toddlers and young children.

18.     The Products do not include any labeling indicating to consumers that they contain any lead.  There is no warning indicating that consuming the Products can expose consumers to lead.  Based on the labels and the fact that the Products are sold and marketed as kids snacks fit for consumption by toddlers and young children, consumers are misled into believing that these Products do not contain lead.  They are unaware that the Products may be contaminated with lead.  That a product intended for consumption as kids snacks contains lead, or may contain lead, is material to reasonable consumers.

19.     The truth is, the LesserEvil Lil' Puffs Kids Snacks contain lead.  In July 2024, an independent laboratory tested samples of LesserEvil Lil' Puffs Kids Snacks for lead, using inductively coupled plasma mass spectrometry (ICP-MS).  Each sample tested positive for lead. For example, one test result showed that the Lil' Puffs contained 346.793 parts per billion of lead.  Just one serving contained 2.427 micrograms of lead, exceeding the maximum allowable daily dose level set by the state of California.

20.     There is no need for Defendant's Products to contain lead.  Other snack food makers are able to make snack products for children that are not contaminated with lead.

**C.     Consumers are not aware of the danger posed by Defendant's Products.**

21.     Consumers reasonably expect that Defendant's Products are safe for consumption. The purpose of a kids snack is to feed it toddlers and young children.  And, consumers can be

expected to consume the recommended serving size as directed by the label. Moreover, consumers purchase kids snacks to enhance the health of their toddlers and young children. They do not expect that kids snacks may be contaminated with lead. They do not expect that the kids snacks contain lead, which harms the health of toddlers and young children.

22.     Consumers reasonably rely on Defendant's representations on the packaging and advertisements for the Products. The representations on the packaging and advertisements are made directly to buyers. The representations include the word "kids," and instructions regarding when toddlers are "ready to try Lil' Puffs."[19] These representations lead reasonable consumers to believe that the Product is safe for toddlers and young children.

23.     Defendant should have, but did not, warn consumers that its Products contained lead. The information could have been placed on the snack labels. For example, Defendant could have placed a warning that consuming the Products would expose consumers to lead.

24.     Thus, consumers are unaware that the Products contain lead. They are unaware that Defendant's Products may be contaminated with lead.

**D.     Defendant is aware of this risk.**

25.     Defendant knows of the lead contamination risk for Lil' Puffs because it has been told that the Lil' Puffs Products are contaminated with lead.

26.     In November 2021, LesserEvil was sent a Proposition 65 notice of violation, in which a claimant notified Defendant "Lil' Puffs contains lead. Lead is known to the State of California to cause cancer."[20] Through 2021 to the present, Defendant received four additional Proposition 65 notice letters in which claimants informed Defendant that its products were

---

[19] https://shop.lesserevil.com/products/starberry-beet-lil-puffs
[20] https://oag.ca.gov/system/files/prop65/notices/2021-02800.pdf

contaminated with lead.[21]

27.     More recently, a widely publicized Consumer Reports study found that LesserEvil's puffs are contaminated with lead.[22]  For example, Defendant's Voyager Veggie Blend puffs "had more lead than any of the 80 baby foods CR has tested since 2017."  *Id.*  In addition to publishing this result, Consumer Reports informed LesserEvil of its findings.  *Id.*

28.     Thus, Defendant is aware of the lead contamination risk.

**E.     Plaintiff was misled by Defendant.**

29.     Plaintiff regularly purchased the LesserEvil Lil' Puffs kids snacks from Spring 2023 – Spring 2024. For example, on September 11, 2023 and May 17, 2024, Ms. Augustine purchased the LesserEvil Lil' Puffs from Thrive Markets while living in Cary, IL.

30.     In purchasing the Products, Plaintiff read and relied on the representations on the packaging and in the product description. The packaging did not disclose that the Product had lead, or provide any warning that the Product might contain lead.  Thus, at the time of purchase, Plaintiff was unaware that Defendant's Product contained lead.

31.     In addition, Plaintiff saw and relied on the representations on the packaging that the Products were safe for consumption by toddlers and young children.  The representations include the word "kids," and instructions regarding when toddlers are fit to consume the snacks. These representations lead reasonable consumers, including Plaintiff, to believe that the Products are safe for toddlers and young children.

32.     Plaintiff relied on these representations and omissions, and fed the Products to her

---

[21] https://oag.ca.gov/prop65/60-day-notice-search-results?combine=&combine_1=&field_prop65_defendant_value=lesserevil&date_filter%5Bmin%5D%5Bdate%5D=&date_filter%5Bmax%5D%5Bdate%5D=&field_prop65_product_value=&sort_by=field_prop65_id_value&items_per_page=20

[22] https://www.consumerreports.org/health/food-safety/lesser-evil-serenity-kids-cassava-puffs-high-lead-levels-a2654657249/

toddler.

33.     When she purchased the Products, Plaintiff relied on the fact that they were safe for consumption and that they did not contain lead.  She would not have purchased the Products if she knew that the Products contained lead. In fact, knowing the truth, the Products are worthless to her.

34.     As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct.

## V.    Class Action Allegations.

### *The Nationwide ex-California Class and the Illinois Subclass*

35.     Plaintiff brings her claims individually and on behalf of the following class and subclasses:

- Nationwide ex-California Class: all persons other than persons in California who, while in the United States and within the applicable statute of limitations period, purchased one or more Products (the "Nationwide Class").[23]

- Illinois Subclass: all persons who, while in the state of Illinois and within the applicable statute of limitations period, purchased one or more Products (the "Illinois Subclass").

36.     The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the

---

[23] The state of California has a state-specific regulatory scheme with notice requirements. Thus, California residents are excluded at this time.

Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

### *Numerosity*

37.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

### *Commonality*

38.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendant's conduct was unfair and/or deceptive;

(3) Whether Defendant breached its contracts;

(4) Whether Defendant breached an express warranty;

(5) Whether Defendant breached an implied warranty;

(6) What damages are needed to compensate Plaintiff and the proposed class; and

(7) Whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain lead.

39.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products.

40.    The interests of the members of the proposed class and subclass will be adequately protected by Plaintiff and her counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that she seeks to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute

the class and subclass claims.

### *Predominance and Superiority*

41.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Defendant's labeling is found to be unfit for its ordinary use for some proposed class members, but not others.

42.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant has made, marketed, and sold a defective product unfit for its ordinary use.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to separately litigate millions of individual claims.

### *Class-wide Injunctive Relief*

44.     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## VI.    Claims.

### Count I: Violation of the Connecticut Unfair Trade Practices Act,

### Conn. Gen. Stat. §42-110a, et seq.

### (on behalf of Plaintiff and the Nationwide ex-California Class)

45.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

46.     Plaintiff brings this count individually and for the Nationwide ex-California Class.

47.     The Connecticut Unfair Trade Practices Act ("CUTPA") states in part, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48.     Defendant is a "person" as defined in Conn. Gen. Stat. §42-110a, because it is a corporation.

49.     Defendant is engaged in "trade or commerce" because it advertises, offers for sale, sells, and distributes products, including the Lil' Puff snacks in the state of Connecticut. Defendant is based in Danbury, Connecticut.[24]  All of Defendant's Products are produced at its factory in Danbury, Connecticut, and distributed nationwide.[25]

50.     Plaintiff and the Class purchased the Products.

51.     Defendant participated in unfair and deceptive acts and practices that violated CUTPA. The conduct alleged in this Complaint constitutes unfair or deceptive methods of competition. The conduct resulted in the sale of goods to consumers.

52.     As alleged more fully above, Defendant advertised its Products to consumers in a way that is misleading or is likely to deceive reasonable consumers. Defendant's statements and omissions would and did lead Plaintiff and other members of the Class to believe reasonably that its Products are free of defects and safe and fit for human consumption.  The statements and omissions would and did lead Plaintiff and the Class to believe reasonably that the Products did not contain lead.  Defendant failed to warn that the Products contained lead.

---

[24] https://lesserevil.com/blogs/guru-guide/letter-from-the-ceo/
[25] https://lesserevil.com/faqs/

53.     Even though Defendant was aware of a material defect— that the Products may contain lead— Defendant sold its products without notifying customers of this fact.  Instead, Defendant omitted this information, and intended that consumers would rely on the omission. Plaintiff and the Class reasonably relied on Defendant's silence, and purchased Defendant's Products.

54.     As alleged above, Defendant's representations and omissions are deceptive and unfair. They offend public policy, are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

55.     As alleged above, Defendant's representations and omissions were willful and knowing.

56.     Defendant's representations and omissions occurred in the conduct of trade and commerce in Connecticut, and affected the people of the State of Connecticut.

57.     Defendant's representations and omissions were material. As alleged in detail above, these representations were important to consumers and affected their choice to purchase the Products. And, as alleged in detail above, these representations were likely to mislead, and did mislead, reasonable consumers.

58.     Plaintiff and Class members were injured and suffered an ascertainable loss as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Products if they had known that they contained lead, or risked being contaminated by lead, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

59.     Plaintiff and the Class seek actual damages, an injunction, reasonable attorneys' fees, expenses, and all other available relief.

**Count II: Breach of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/2**
**(on behalf of Plaintiff and the Illinois Subclass)**

60.     Plaintiff incorporates each and every factual allegation set forth in paragraphs 1-44 above.

61.     Plaintiff brings this claim in the alternative to Claim 1, on behalf of herself and the Illinois Subclass, seeking reasonable attorneys' fees, actual damages, and other relief.

62.     Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

63.     Plaintiff and the members of the Illinois Subclass are "consumers" as that term is defined in 815 LCS 505/1(e).

64.     Plaintiff and the Illinois Subclass purchased the Products in Illinois.

65.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

66.     Defendant participated in misleading, false, or deceptive acts that violated the Illinois statute. The conduct alleged in this Complaint constitutes unfair or deceptive methods of competition, and the conduct was undertaken by Defendant in transactions intended to result in reliance. The conduct did result in the sale of goods to consumers.

67.     As alleged more fully above, Defendant advertised its Products to consumers in a way that is misleading or is likely to deceive consumers. Defendant's statements and omissions led Plaintiff and other members of the Illinois Subclass to believe that its Products are free of

defects and safe and fit for human consumption.  The statements and omissions led Plaintiff and

the Illinois Subclass to believe that the Products did not contain lead.  Defendant failed to warn

that the Products contained lead.  Defendant's representations and omissions were likely to

deceive, and did deceive, a substantial portion of the public into believing that the product did

not contain lead.

68.    Even though Defendant was aware of a material defect— that the Products may

contain lead— Defendant sold its products without notifying customers of this fact.  Instead,

Defendant omitted this information, and intended that consumers would rely on the omission.

Plaintiff and the Subclass relied on Defendant's silence, and purchased Defendant's Products.

69.    As alleged above, Defendant's representations and omissions are deceptive and

unfair. They offend public policy, are immoral, unethical, oppressive, and unscrupulous, and

cause substantial injury to consumers.

70.    As alleged above, Defendant's representations and omissions were willful and

knowing.

71.    Defendant's representations and omissions occurred in the conduct of trade and

commerce affecting the people of the State of Illinois.

72.    Defendant's representations and omissions were material. As alleged in detail

above, these representations were important to consumers and affected their choice to purchase

the Products. And, as alleged in detail above, these representations were likely to mislead, and

did mislead, reasonable consumers.

73.    Plaintiff and Subclass members were injured as a direct and proximate result of

Defendant's conduct because: (a) they would not have purchased the Products if they had known

that they contained lead, or risked being contaminated by lead, (b) they overpaid for the Products

because the Products are sold at a price premium due to Defendant's misleading representations

and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

74.    Plaintiff and the Subclass seek actual damages, an injunction, reasonable attorneys' fees, expenses, and all other available relief.

## Count III: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq.

### (on behalf of Plaintiff and the Nationwide ex-California Class)

75.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

76.    Plaintiff brings this count individually and for the Nationwide ex-California Class, or in the alternative, the Illinois Subclass.

77.    Defendant's Products are each a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(1).

78.    Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

79.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(4)-(5).

80.    Defendant issued material, written warranties by representing on the packaging that the Products were "kids" products and by including instructions regarding when toddlers are fit to consume the snacks. This was an affirmation of fact and a promise that the Products were safe for consumption by toddlers and young children, and that the Products did not contain unsafe levels of contaminants such as lead.

81.    Defendant marketed its Products to consumers, and Defendant's warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

82.    In fact, the Products do not conform to the above-referenced representation

because, as alleged above, they are contaminated with lead. Thus, the warranty was breached.

83.     Plaintiff and Class members were foreseeable third-party beneficiaries of Defendant's sale of the Products. Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members. Defendant's Products are kids snacks intended for purchase by consumers, such as Plaintiff and class members, who intend to feed the products to toddlers and young children.

84.     In addition, as the manufacturer of kids snacks, Defendant impliedly warranted to Plaintiff and the class that the Products were of merchantable quality and were safe for their ordinary use as kids snacks.

85.     As described in detail above, the Products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed given that they were contaminated with lead. This makes them unfit for ordinary purposes even when used correctly.

86.     Defendant's Products are not adequately labeled because they fail to disclose the risk of lead exposure.

87.     Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

88.     Defendant also impliedly warranted to Plaintiff and the class that the Products were suitable and fit for a particular purpose. Plaintiff and class members purchased Defendant's Products for the particular purpose of consuming the Products as a children's snack. As explained in detail above, Defendant knew, or had reason to know, that Plaintiff and class members were purchasing the Products for the particular purpose of consuming them as kids snacks.

89.     Defendant markets itself as a knowledgeable and effective developer and seller of

16

consumer food products, including kids' snacks.  As explained more fully above, Defendant

knew, or had reason to know, that Plaintiff and class members would justifiably rely on

Defendant's particular skill and knowledge in selecting kids' snacks.  Plaintiff and class

members did justifiably rely on Defendant's judgment and skill.

90.     Due to the defect in the Products, the Products are not suitable for their intended

purpose.

91.     Defendant's breach of implied warranties has deprived Plaintiff and class

members of the benefit of their bargain.

92.     Plaintiff and the class were foreseeable third-party beneficiaries of Defendant's

sale of the Products.  Defendant sells the Products to retailers for distribution and sale to

consumers such as Plaintiff and class members.  Defendant's Products are kids snacks intended

for purchase by consumers, such as Plaintiff and class members, who intend to feed the products

to toddlers and young children.

93.     Plaintiff notified Defendant with notice of these breaches of warranties by mailing

a notice letter on August 6, 2024.

94.     The amount in controversy of Plaintiff's individual claim exceeds $25.  The

amount in controversy of this action exceeds the sum value of $50,000 (exclusive of interests and

costs) computed on the basis of all claims to be determined in this suit.

95.     Defendant has been afforded a reasonable opportunity to cure its breach,

including after Plaintiff sent a notice letter informing Defendant of the breach.

96.     Defendant's breaches directly caused Plaintiff and Class members harm.  Plaintiff

and class members were injured as a direct and proximate result of Defendant's conduct because

(a) they would not have purchased Defendant's Products if they had known the truth, (b) they

overpaid for the Products because the Products are sold at a price premium due to the

misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

## Count IV: Breach of Implied Warranty

### (on behalf of Plaintiff and the Nationwide ex-California Class)

97.     Plaintiff incorporates by reference each and every factual allegation set forth above.

98.     Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

99.     The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

100.     Defendant is and was, at all relevant times, a merchant with respect to consumer food products, and with respect to kids snacks in particular. Defendant's Products each constitute a "good" under the UCC.

101.     Plaintiff and class members purchased Defendant's Products.

102.     Plaintiff and the class members were foreseeable third-party beneficiaries of Defendant's sale of the Products.  Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.  Defendant's Products are kids snacks intended for purchase by consumers, such as Plaintiff and class members, who intend to feed the products to toddlers and young children.

103.     As the manufacturer of kids' snacks, Defendant impliedly warranted to Plaintiff and the Class that the products were of merchantable quality and were safe for their ordinary use as kids snacks.  In fact, as described in detail above, the products, when sold and at all times

18

after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed and defective because they contained lead. The defective design makes them unfit for ordinary purposes even when used correctly. In addition, Defendant's Products are not adequately labeled because they fail to disclose that they contained lead.

104.    Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

105.    Defendant's sale of the Products is subject to the implied warranty of merchantability. By selling Products to consumers, Defendant is warranting that the Products are merchantable, meaning that they are fit for their ordinary purpose as kids snacks.

106.    Defendant breached this warranty because, as alleged in detail above, Defendant's Products are unsafe for consumption and are contaminated. As discussed in greater detail above, Defendant's Products contain lead. For example, a single serving of Defendant's Product contained lead that exceeded the maximum allowable daily dose limits under California law. This renders Defendant's products unsafe and unfit for human consumption, and in particular by toddlers and young children, and so unfit for their ordinary purpose.

107.    Defendant's Products would not pass without objection in the trade under the contract description; are not of fair average quality within the description; are not fit for the ordinary purposes for which such goods are used; do not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; are not adequately labeled; and do not conform to the promises or affirmations of fact made on the label.

108.    Plaintiff provided Defendant with notice of this breach of implied warranty, by mailing a notice letter to Defendant's headquarters on August 6, 2024.

109.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Products if they had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendant's false implied warranty; or (c) they received products that were, in truth, worthless.

## Count V: Breach of Express Warranty

### (on behalf of Plaintiff and the Nationwide ex-California Class)

110.    Plaintiff incorporates by reference each and every factual allegation set forth above.

111.    Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

112.    Defendant, as the manufacturer, marketer, distributor, and/or seller of the Products, issued material, written warranties by representing on the packaging that the Products were "Kids" products and by including instructions regarding when toddlers are fit to consume the snacks.  This was an affirmation of fact and a promise that the Products were safe for consumption by toddlers and young children, and that Products did not contain lead.

113.    Defendant marketed its Products directly to consumers, and Defendant's warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

114.    In fact, the Products do not conform to the above-referenced representations because, as alleged above, they are contaminated with lead.  Thus, the warranty was breached.

115.    Plaintiff notified Defendant with notice of these breaches of warranties by mailing a notice letter on August 6, 2024.

116.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Defendant's Products if they

had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendant's false implied warranty; or (c) they received products that were, in truth, worthless.

## Count VI: Quasi-Contract

### (on behalf of Plaintiff and the Nationwide ex-California Class)

117.    Plaintiff incorporates by reference each and every factual allegation set forth above.

118.    Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

119.    Plaintiff and class members purchased the Products from Defendant.  When they purchased the Products, they reasonably believed that the Products were fit for their expected and ordinary purpose. They believed that the Products were fit for human consumption.  They did not know that the Products contained lead, or risked being contaminated by lead.

120.    Plaintiff and class members conferred benefits on Defendant by purchasing defective Products.

121.    Defendant voluntarily accepted and retained this benefit.

122.    In exchange, Defendant provided Products that had an inherent defect, were unfit for and unsafe for their ordinary use, were unfit for human consumption, particular by toddlers and young children, and contained lead.

123.    It would be inequitable for Defendant to retain this benefit.

## VII.    Jury Trial Demand.

124.    Plaintiff demands the right to a jury trial on all issues so triable.

## VIII.    Prayer for Relief.

125.    Plaintiff seeks the following relief for herself and for the proposed class and

subclass:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, including statutory and treble damages, as allowed by law;

- Restitution, disgorgement, and other just equitable relief, as allowed by law;

- Attorney's fees, as available by law;

- An injunction;

- Pre- and post-judgment interest; and

- Any additional relief that the Court deems reasonable and just.


Dated: August 13, 2024                          Respectfully submitted,


By: */s/ Craig A. Raabe*

IZARD, KINDALL & RAABE LLP
Craig A. Raabe (ct04116)
Seth R. Klein (ct18121)
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

Christin K. Cho (Cal. Bar No. 238173)*
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiff*

*Pro Hac Vice forthcoming

22