**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ELISE AUGUSTINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LESSEREVIL LLC,<br><br>Defendant. | Case No: 3:24-CV-01309-OAW<br><br><br><br><br><br>October 4, 2024 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... II

INTRODUCTION .......... 1

BACKGROUND .......... 4

A. The Accused Lil' Puffs .......... 4

B. The FDA Regulates Lead in the U.S. Food Supply .......... 5

C. Plaintiff's Claims .......... 8

D. Lil' Puffs Comply with Federal and State Laws .......... 9

ARGUMENT .......... 11

I. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT SHE WAS MISLED .......... 11

II. PLAINTIFF CANNOT SUPPLANT THE FDA AS A REGULATOR OF AMBIENT LEAD IN FOOD .......... 16

A. Plaintiff's Claims Are Preempted .......... 16

B. Plaintiff's Claims Fall Under the FDA's Primary Jurisdiction .......... 20

III. PLAINTIFF LACKS ARTICLE III STANDING .......... 24

A. Plaintiff Does Not Plausibly Allege that She Was Injured .......... 24

B. Plaintiff Lacks Standing to Seek Injunctive Relief .......... 27

C. Plaintiff Lacks Standing to Sue Under Connecticut Consumer Protection Law .......... 28

IV. THE MAGNUSON-MOSS WARRANTY ACT CLAIM SHOULD BE DISMISSED FOR ADDITIONAL REASONS .......... 30

V. LEAVE TO AMEND SHOULD BE DENIED ........ 32

CONCLUSION ........ 33

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Barnett v. Kroger Co.*,
No. 1:22-CV-544, 2023 WL 5899836 (S.D. Ohio Sept. 11, 2023) .......... 27

*Bates v. Dow Agrosciences L.L.C.*,
544 U.S. 431 (2005) .......... 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) .......... 28, 29

*Brown v. Coty, Inc.*,
No. 22 CIV. 2696 (AT), 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) .......... 14

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) .......... 28

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......... 22

*Coyle v. Hornell Brewing Co.*,
No. 08–02797 (JBS), 2010 WL 2539386 (D.N.J. June 15, 2010) .......... 22

*Critcher v. L'Oreal USA, Inc.*,
959 F.3d 31 (2d Cir. 2020) .......... 18

*Davis v. Angelcare USA, LLC*,
No. 3:23-CV-119 (VAB), 2024 WL 1344666 (D. Conn. Mar. 29, 2024) .......... 31

*Demetres v. Zillow, Inc.*,
No. 3:21-CV-00802-JAM, 2024 WL 3595917 (D. Conn. July 30, 2024) .......... 12

*DiMuro v. Clinique Lab'ys, LLC*,
572 F. App'x 27 (2d Cir. 2014) .......... 11

*Dimuro v. Estee Lauder Co.*,
No. 3:12CV01789(AVC), 2013 WL 12080901 (D. Conn. Nov. 22, 2013) .......... 11

*Ellis v. Trib. Television Co.*,
443 F.3d 71 (2d Cir. 2006)........................................................................................21, 22

*Farina v. Nokia, Inc.*,
625 F. 3d 97 (3d Cir. 2010).............................................................................................20

*Fawemimo v. American Airlines, Inc.*,
751 F. App'x. 16 (2d Cir. 2018) ......................................................................................17

*Fellner v. Tri-Union Seafoods LLC*,
539 F.3d 237 (3d Cir. 2008)............................................................................................17

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982).........................................................................................................18

*Fink v. TimeWarner Cable*,
714 F.3d 739 (2d Cir. 2013)............................................................................................15

*Floyd v. Am. Motor Co.*,
966 F.3d 1027 (9th Cir. 2020) .........................................................................................31

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*,
84 F. 3d 91 (2d Cir. 1996)...............................................................................................21

*Gallagher v. Lactalis Am. Grp., Inc.*,
No. 22-CV-614 (JLS), 2023 WL 6224881 (W.D.N.Y. Sept. 21, 2023) ..................................29

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000).........................................................................................................18

*Heller v. Coca-Cola Co.*,
230 A.D. 2d 768 (N.Y. App. Div., 2d Dep't 1996) ...........................................................22

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015)..............................................................................33

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*
09-cv-01597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010)...............................................25

*Holk v. Snapple Beverage Corp.*,
575 F.3d 329, 340 (3d Cir. 2009).....................................................................................17

*Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*,
490 F. Supp. 3d 533 (D. Conn. 2020)...............................................................................18

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,
651 F. Supp. 3d 629 (N.D.N.Y. 2023)..............................................................................24

*In re Frito-Lay N. Am. Inc. All Nat'l Litig.,* No.,
12-cv-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................................... 32

*In re* Gerber Prod. Co. Heavy Metals *Baby Food Litig.,*
No. 121CV269MSNJFA, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ...................... 3, 23, 26

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig*.,
No. 13-MD-2451 ADS AKT, 2014 WL 868827 (E.D.N.Y. Mar. 5, 2014)............................. 30

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litigation*,
903 F.3d 278 (3d Cir. 2018)....................................................................................................... 26

*In re PepsiCo, Inc. Bottled Water Mktg. and Sales Practices Litig*.,
588 F. Supp. 2d 527 (S.D.N.Y. 2008)........................................................................................ 17

*In Re Potash Antitrust Litig*.,
667 F.Supp.2d 907 (N.D. Ill. 2009) .......................................................................................... 30

*In re Scotts EZ Seed Litig.,*
No. 12-cv-4727, 2013 WL 2303727 .......................................................................................... 32

*In re Theos Dark Chocolate Litigation*,
No. 23-CV-02739-HSG, 2024 WL 4336631 (N.D. Cal. Sept. 27, 2024)................................ 26

*In re Trader Joe's Co. Dark Chocolate Litig*.,
No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024)....................... 27

*In re Whole Foods Mkt. Grp., Inc. Overcharging Litig*.,
167 F. Supp. 3d 524 (S.D.N.Y 2016)......................................................................................... 33

*Israel v. Baxter Labs*.,
466 F. 2d 272 (D.C. Cir. 1972) .................................................................................................. 22

*Jurgensen v. Felix Storch, Inc*.,
No. 12 CIV. 1201 KBF, 2012 WL 2354247 (S.D.N.Y. June 14, 2012).................................. 30

*Kane v. Chobani, Inc.,*
No. 12-cv-2425, 2013 WL 3703981 (N.D. Cal. July 12, 2013) ............................................... 32

*Kimca v. Sprout Foods, Inc.*,
2022 WL 3586095 (N.J. Super. Law Div. Aug. 5, 2022) .......................................................... 23

*Kimca v. Sprout Foods, Inc.*,
No. CV 21-12977 (SRC), 2022 WL 1213488 (D.N.J. Apr. 25, 2022) ..................................... 26

*Knowles v. McDonald's USA, LLC*,
No. 16-81657-CIV, 2018 WL 8244277 (S.D. Fla. Feb. 9, 2018) ............................................ 30

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 29

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) .......... 27

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 25

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .......... 11

*Manuel v. Pepsi-Cola Co.*,
No. 17 CIV. 7955 (PAE), 2018 WL 2269247 (S.D.N.Y. May 17, 2018) .......... 12

*Marentette v. Abbott Lab'ys, Inc.*,
886 F.3d 112 (2d Cir. 2018) .......... 3, 17

*Maryland v. Louisiana*,
451 U.S. 725 (1981) .......... 17

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) .......... 11

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 28

*Onaka v. Shiseido Am. Corp.*,
21-cv-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) .......... 25

*Paradowski v. Champion Petfoods USA, Inc.*,
No. 22-962-CV, 2023 WL 3829559 (2d Cir. June 6, 2023) .......... 23

*Pharm. Research & Mfrs. of Am. V. Walsh,*
538 U.S. 644 (2003) .......... 21

*Pichardo v. Only What You Need, Inc.*,
No. 20-CV-493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) .......... 15

*Reid v. GMC Skin Care USA Inc.*,
No. 815CV277BKSCFH, 2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) .......... 31

*Richburg v. ConAgra Brands, Inc.*,
2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) .......... 15

*Silva v. Farrish*,
47 F.4th 78 (2d Cir. 2022) .......... 15, 16

*Simington v. Lease Fin. Grp., LLC,*
No. 10 CIV. 6052 (KBF), 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) .......... 29

*Simon v. KeySpan Corp.*,
No. 10-5437, 2011 WL 2135075 (S.D.N.Y. May 27, 2011) .......... 27

*Skelton v. General Motors Corp.,*
660 F. 2d 311 (7th Cir. 1980) .......... 32

*Smith v. Pizza Hut, Inc.,*
No. 09–CV–01632 (CMA) (BNB), 2011 WL 2791331 (D. Colo. July 14, 2011) .......... 30

*Sneed v. Ferrero U.S.A., Inc.*,
656 F. Supp. 3d 777 (N.D. Ill. 2023) .......... 11

*Sorkin v. Kroger Co*.,
No. 23 C 14916, 2024 WL 3673719 (N.D. Ill. Aug. 6, 2024) .......... 12

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016) .......... 16, 25

*Steele v. Wegmans Food Markets, Inc*.,
472 F. Supp. 3d 47 (S.D.N.Y. 2020) .......... 12

*Taylor v. Procter & Gamble Co.*,
No. 22-CV-1949-DWD, 2023 WL 5289451 (S.D. Ill. Aug. 17, 2023) .......... 12, 13

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) .......... 14

*U.S. v. W. Pac. R.R. Co.*,
352 U.S. 59 (1956) .......... 21

*White v. Beech-Nut Nutrition Co*.,
No. 23-220-CV, 2024 WL 194699 (2d Cir. Jan. 18, 2024) .......... 24

*Wiggins v. Unilver United States, Inc*.,
684 F. Supp. 3d 127 (S.D.N.Y. 2023) .......... 28

*Wilson v. Frito-Lay N. Am., Inc.,* No.,
12-cv-1586, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) .......... 32

**STATUTES**

15 U.S.C. § 2301 .......... 30
15 U.S.C. § 2301(6) .......... 31, 32

15 U.S.C. § 2310 ..... 31
15 U.S.C. § 2311 ..... 4, 31, 32
21 U.S.C. § 342 ..... 6, 19
21 U.S.C. § 343-1 ..... 12
21 U.S.C. § 343-1(a) ..... 16, 17
21 U.S.C. § 346 ..... 6
21 U.S.C. § 350l ..... 8
21 U.S.C. § 371 ..... 5, 31
21 U.S.C. § 393 ..... 5, 31
U.S. CONST. art. VI, cl. 2 ..... 16

**RULES**

Fed. R. Civ. P. 8 ..... 27
Fed. R. Civ. P. 9 ..... 27
Fed. R. Civ. P. 12 ..... 11

**REGULATIONS**

21 C.F.R. § 7.1 ..... 5
21 C.F.R. § 101.100 ..... 15
56 Fed. Reg. 28592-01 (Jun. 21, 1991) ..... 20
73 Fed. Reg. 49603 (Aug. 22, 2008) ..... 6
82 Fed. Reg. 27843 (June 19, 2017) ..... 6

Defendant LesserEvil LLC respectfully submits this memorandum in support of its motion to dismiss.

## INTRODUCTION

LesserEvil makes a variety of delicious and nutritious snacks at its factory in Danbury, Connecticut, including the accused Lil' Puffs. Lil' Puffs are made with high quality ingredients, low in carbs, completely plant-based, and gluten-free. The labels are accurate and comply with Federal regulations. Plaintiff is a captive litigant who resides in Illinois.

Plaintiff accuses LesserEvil of false advertising without identifying any false statement. She claims that Lil' Puffs should not be able to market its product (or say anything good about it, or say that kids should eat it) because Lil' Puffs contain trace amounts of lead. Unfortunately, anything grown in dirt contains trace amounts of heavy metals that come from their ambient presence in our air, soil, and water. (Declaration of Amelia Courtney Hritz ("Hritz Decl."), Ex. A (FDA, Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance for Industry) at 4 ("Lead is widely present in the environment due to both its natural occurrence and to human activities that have introduced it into the environment. Because lead may be present in environments where food crops used to make food intended for babies and young children are grown, various foods may contain small amounts of lead.").)[1] Plaintiff's theory—that snacks must disclose their lead content, or even the *risk* of ambient lead—lacks merit, is preempted by the federal laws that govern heavy metal disclosures, is contrary to Second Circuit precedent, and would result in an incomprehensible and pointless patchwork of labeling rules

[1] LesserEvil has concurrently filed a Request for Judicial Notice, supported by the Declaration of Amelia Courtney Hritz, attaching true and correct copies of judicially noticeable documents published by the FDA and documents Plaintiff incorporates into her Complaint. (Hritz Decl., Exs. A-G.)

that would baffle and desensitize consumers and needlessly tax businesses. Were Plaintiff's legal theory correct, any business that makes products with real fruit and vegetables would be subject to suit by her lawyer.

Plaintiff's attempts to turn ambient lead into federal litigation fail for many legal reasons:

First, Plaintiff does not plausibly allege she was misled, a necessary element of her claims. LesserEvil's product labels are completely accurate, comply with Federal regulations, and make no claims regarding heavy metals. Plaintiff claims that the fact that Lil' Puffs are for kids caused her to believe that the product did not contain ambient lead. But claiming that a product is for kids has nothing to do with whether that product contains ambient lead. Her assumption that the product was free of lead is implausible given that everything from an apple to breast milk contains ambient lead. Her claim is an attempt to make up, and impose, a new labeling regulation that would have Plaintiff and her lawyer dictating ambient lead levels for food instead of Congress and the FDA. For this reason, Plaintiff also lacks Article III standing because she has not plausibly alleged causation and injury.

Second, Plaintiff's claims are preempted by federal law. The FDA regulates what food companies are required to say about the presence of heavy metals in foods. The FDA makes its rules through notice-and-comment rulemaking based on the FDA's scientific expertise on consideration of a full evidentiary record, taking into account broader policy questions, such as balancing the dangers of ambient lead against the importance of encouraging children to consume foods made from vegetables and fruit. Under the FDA's rules, companies are not required to disclose trace amounts of heavy metals. Through this litigation, Plaintiff seeks to impose an ad hoc, made-up disclosure rule that is inconsistent with the FDA's expert judgment and the democratic process, in which regulations are passed by those who are politically

accountable, and rules are promulgated through the process that Congress has dictated. Such claims are preempted. *See, e.g.*, *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 117 (2d Cir. 2018).

Third, Plaintiff's claims are subject to the FDA's primary jurisdiction. The FDA is in the process of considering how to regulate heavy metal levels in foods. The Court should dismiss or alternatively stay this action pending the FDA's final determination because Congress entrusted these decisions to the FDA's expertise. *E.g.*, *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 121CV269MSNJFA, 2022 WL 10197651, at *13-15 (E.D. Va. Oct. 17, 2022).

Fourth, Plaintiff does not sufficiently allege that she suffered any injury because she does not allege that the Lil' Puffs she bought contained lead, much less that she—or anyone else—incurred any harm from consuming them. This is fatal to her claims because she fails to allege Article III standing and likewise fails to allege the requisite elements of her claims.

Fifth, Plaintiff separately lacks standing for injunctive relief because she has not alleged the possibility of future harm. She already knows that whatever product she supposedly bought contains ambient lead and could not somehow be misled by that in the future.

Sixth, Plaintiff's claims fail for the independent reason that as a resident of Illinois, Plaintiff has no standing to bring claims under Connecticut's consumer protection law.

Seventh, Plaintiff separately fails to state a claim under the Magnuson-Moss Warranty Act for at least three reasons: Plaintiff has not met the Act's jurisdictional requirement of 100 named plaintiffs; Plaintiff's claim is preempted as the Act is "inapplicable" where the warranty is "otherwise governed by Federal law;" and the Lil' Puffs labeling is not a "warranty" within the meaning of MMWA because it does not guarantee "performance over a specified period of time." 15 U.S.C. §§ 2311(d), 2301(6).

For each of these reasons, Plaintiff's claims should be dismissed with prejudice.

## BACKGROUND

### A. The Accused Lil' Puffs

Defendant LesserEvil makes organic, clean, tasty, and sustainable snacks as a better alternative to the big-name snacks. The company is led by Chief Executive Officer Charles Coristine, who left the world of finance to pursue a more holistic lifestyle of meditation and self-awareness. Pursuant to this philosophy, LesserEvil makes snacks that are healthier and accessible to people with a wide array of dietary needs by avoiding grains, refined salts and sugars, and vegetable oils. LesserEvil operates factories in Connecticut, employing approximately 280 people, which gives it more control over ingredients and sustainable practices.

LesserEvil makes popcorn popped with coconut oil, cheese-less Space Balls, and the accused Lil' Puffs. Lil' Puffs are a cleaner, grain-free, alternative toddler snack. LesserEvil, like many people with young kids, was dissatisfied with kids' snacks because almost all of them are packed with ingredients like potato starch, rice flour, and vegetable oil. Lil' Puffs are baked, not fried, rice-free, and organic. Puffed snacks require a starch to go through an extruder, so LesserEvil used cassava root for the starch because it is easily digestible and does not cause inflammation like other grains. Because of its "thoughtful selection of ingredients" including "organic cassava flour, organic sweet potato flour, certified humane egg white powder, and organic avocado oil," LesserEvil was recognized in 2020 as Whole Foods Market's National Award Recipient for Raising the Bar for Quality.[2]

---

[2] *LesserEvil Receives Top Honor for Quality at Whole Foods Market 2020 Supplier Awards*, Food Dive (Mar. 9, 2020), https://www.fooddive.com/press-release/20200309-lesserevil-receives-top-honor-for-quality-at-whole-foods-market-2020-suppli/.

There are three different kinds of Lil' Puffs: Star-berry Beet, Sweet Potato Apple Asteroid, and Voyager Veggie Blend. They are delicious, safe to eat, and compliant with federal and state law.

**B. The FDA Regulates Lead in the U.S. Food Supply**

The FDA is the federal agency tasked with regulating food safety for U.S. consumers. The FDA's enabling statute, the Food, Drug & Cosmetic Act ("FDCA"), requires the FDA to (i) ensure that foods are safe, wholesome, sanitary, and properly labeled, (ii) promulgate regulations to enforce the provisions of the FDCA, and (iii) enforce its regulations through administrative proceedings. 21 U.S.C. §§ 371, 393(b)(2)(A), 21 C.F.R. §§ 7.1, *et seq*.

The FDA has determined that "it is not possible to completely prevent lead from entering the food supply." (Hritz Decl., Ex. B (FDA, Lead in Food and Foodwares).) Lead naturally occurs in organic foods due to heavy metals in the air, water, and soil that bioaccumulate in plants. (Hritz Decl., Ex. A, at 4.) Root vegetables, which grow underground, are likely to absorb more lead from the soil than other vegetables. (*Id*. at 8-9.) Pursuant to its goal of protecting consumers from excessive exposure to contaminants while maintaining access to nutritious foods, the FDA regulates the maximum levels of naturally occurring lead that a food may legally contain. (*Id*. at 5 ("The [FDA's] plan commits to consulting with stakeholders, including on the achievability of reducing toxic element levels in foods intended for babies and young children, and notes the importance of minimizing the potential for unintended consequences on the availability of nutritious foods for children.").) The FDCA provides that the presence of unavoidable lead is permissible "if the quantity of such substance in such food does not ordinarily render it injurious to health." 21 U.S.C. § 342. Federal law requires that when such a substance cannot be avoided in food and may be present at levels that could be harmful, the FDA sets action levels that may not be exceeded. 21 U.S.C. § 346. The action levels reflect considered

scientific judgment and decision-making about when food may be rendered unsafe by the presence of deleterious substances.

The FDA has regulated lead in the U.S. food supply, and has taken action and declined to take action, as it deems appropriate under the law. (Hritz Decl., Ex. A, at 5.) The FDA has noted the impracticality of setting regulatory limits for heavy metals in foods, noting that since “fruits, vegetables, and grains can ‘take up’ toxic elements in the environment from the water, soil, and air, there are limits to how low the levels can be reduced.” (Hritz Decl., Ex. C (FDA’s Apr. 8, 2021 Constituent Update) (further noting that heavy metal exposure depends both “on the levels of the elements found in the foods as well as the amount of the food consumed”).)

The FDA contains no requirement that products disclose a risk of containing lead. Given the ubiquity of lead, this is consistent with the FDA’s concern for overwarning, or the concept that “individuals are exposed to so many warnings in the course of daily life that they are less likely to pay attention to any one particular warning,” “may lead consumers to discount all risks, or miss the most important risk information.” Experimental Study of Risk Information Amount and Location in Direct-to-Consumer Print Ads, 82 Fed. Reg. 27843, 27844 (June 19, 2017). It could also result in consumers avoiding products made from organic ingredients, which would be bad for consumers. *E.g.*, 73 Fed. Reg. 49603, 49605-06 (Aug. 22, 2008) (“overwarning . . . may deter appropriate use of [] products, or overshadow more important warnings.”); (Hritz Decl., Ex. A, at 9 (explaining the need for a higher action level for root vegetables because they “are a source of several nutrients important in growth and development for babies and young children”).)

In 2021, the FDA announced its “Closer to Zero” action plan, a comprehensive multi-year plan identifying actions the FDA “will take to reduce exposure to toxic elements, including

lead, from foods eaten by babies and young children to as low as possible." (Hritz Decl., Ex. A at 5.) The Action Plan recognizes that "[r]educing levels of contaminants in foods is complicated and multifaceted," and that it is "crucial" that measures taken not have unintended harmful consequences such as eliminating from the marketplace certain foods and, therefore, the nutrients in those foods. (Hritz Decl., Ex. D (Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods).) The FDA is committed to a "science-driven, transparent, and inclusive process that will include active stakeholder engagement and public sharing of data and information." (*Id.*)

The Action Plan has four specific stages: (1) evaluating the scientific basis for action levels for arsenic, lead, cadmium, and mercury, including establishing an interim reference level for certain toxic elements as appropriate; (2) proposing action levels for certain elements in categories of baby foods and other foods commonly eaten by babies and young children; (3) consulting with stakeholders regarding proposed action levels; and (4) finalizing those levels. (*Id.*) The FDA published a timeline for completing its work. Towards that end, in January 2023, the FDA issued a draft guidance report "for comment purposes only" with "non-binding recommendations" "to provide information to industry on the action levels for lead in food intended for babies and young children." (Hritz Decl., Ex. A at 1.) The FDA presented "action levels for lead in processed food intended for babies and young children."
*Id*. The FDA explained that in issuing the guidance report, its goal is to provide "achievable" limits for industry and that it will "strive for continual reductions over time." *Id*. The FDA is planning to issue final guidance in December 2024. (Hritz Decl., Ex. D.)

If the FDA determines that food is adulterated because it contains excessive lead, the FDA has the authority to order a recall of that food. 21 U.S.C. § 350l; (Hritz Decl., Ex. D

(explaining that if the FDA finds that a product violates safety laws, "we take action . . . to prevent the product from entering, or remaining in, the U.S. market").) For example, in October 2023, the FDA initiated a recall of various applesauce products flavored with cinnamon intended for babies and young children following an investigation into reports of children with elevated blood lead levels. (Hritz Decl., Ex. B.) The FDA tested samples of the applesauce and discovered a lead concentration of 2,180 ppb, which is more than 200 times greater than the FDA's proposed action level of 10 ppb. (Hritz Decl., Ex. E (FDA, Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (Nov. 2003)).)

### C. Plaintiff's Claims

Plaintiff Elise Augustine resides in Illinois, retained a lawyer in Los Angeles, and filed this action in Connecticut. Plaintiff alleges she "saw and relied on the representations on the [LesserEvil Lil' Puffs'] packaging" that the product is a "kids snack[]," and "your toddler is ready when he or she: stands alone," "feeds self with fingers," and "bites through a variety of textures." (Comp. ¶¶ 13-14, 31-32). She "regularly purchased" Lil' Puffs "from Spring 2023 – Spring 2024" and "fed the Products to her toddler." (Comp. ¶¶ 29, 32).[3] Plaintiff does not claim that her toddler had any difficulty eating the snacks. Plaintiff alleges that she now "know[s]" Lil' Puffs contain lead, but she does not allege that she tested any of the Lil' Puffs that she purchased. (Comp. ¶ 33). In fact, Plaintiff does not allege that the product she fed her toddler contained lead or that her toddler experienced elevated levels of lead in their blood, much less that the toddler experienced any symptoms of lead exposure.

Instead, Plaintiff alleges that, in July 2024, an "independent laboratory" tested samples of Lil' Puffs using "inductively coupled plasma mass spectrometry" and "[e]ach sample tested

[3] Plaintiff does not state whether she purchased Star-berry Beet, Sweet Potato Apple Asteroid, or Voyager Veggie Blend Lil' Puffs.

positive for lead," with one sample containing a lead concentration of 346 ppb. (Comp. ¶ 19). Plaintiff provides no information about which kind of Lil' Puffs were sampled or the number of samples collected. Plaintiff does not allege that the products she purchased were the same kind of Lil' Puffs as the products tested by this independent laboratory, that they were from the same lots, or that she purchased the products during the same time period the laboratory was collecting samples for testing. In fact, she alleges she stopped purchasing Lil' Puffs in the spring and the laboratory testing was done the following July. (Comp. ¶¶ 19, 29.)

Plaintiff does not bring a products liability claim or allege that her child experienced any side effects from eating Lil' Puffs. Instead, she claims the Lil' Puffs packaging misled her either because it should have disclosed the lead content, even though no law requires it to do so, or it should not have said anything positive about the product. Plaintiff alleges that if Lil' Puffs had disclosed on its label that it contained lead or might contain lead, Plaintiff "would not have purchased the Products." (Comp. ¶¶ 17, 31, 33). Plaintiff does not base her claim on any specific quantity of lead that she alleges is present in Lil' Puffs. Plaintiff's position is that because Lil' Puffs are for kids, it should have disclosed that its products contained—or had a material risk of containing—*any* amount of lead.

**D. Lil' Puffs Comply with Federal and State Laws**

LesserEvil maintains rigorous quality standards for all its products, which comply with all applicable federal and state laws. This includes California's notorious Proposition 65, which imposes the strictest food requirements in the country.[4] While the Complaint makes reference to a Proposition 65 case against LesserEvil (Comp. ¶ 26), that case was dismissed because the plaintiff admitted to destroying the products she supposedly purchased so there was no way to

[4] *See About Proposition 65*, California Office of Environmental Health Hazard Assessment, https://oehha.ca.gov/proposition-65/about-proposition-65.

verify her claim that the products contained lead. (Hritz Decl., Ex. F (Order, *Kaloustian v. LesserEvil LLC*, No. 22STCV13274 (Super. Ct. Sep. 24, 2024).) No court or federal agency has ever found that Lil' Puffs violate Proposition 65, much less that they are unsafe for children.

Plaintiff's lawyers also rely on a Consumer Reports article (Comp. ¶ 27), but even that piece says that Consumer Reports' supposed "head of food safety testing" concluded kids could safely consume up to "1.5 servings per day" of Lesser Evil's Lil' Puffs Sweet Potato Apple Asteroid. The article also states that veggie puffs can "get little kids to eat their vegetables," are "an appealing snack that's not loaded with sugar," and that puffs made with cassava avoid rice, which "can be high in arsenic." Lauren Kirchner, *Cassava-Based Puffs From Lesser Evil and Serenity Kids Contain High Levels of Lead*, Consumer Reports (June 5, 2024), https://www.consumerreports.org/health/food-safety/lesser-evil-serenity-kids-cassava-puffs-high-lead-levels-a2654657249/.

The Consumer Reports article further explains that "our tests are not assessments of whether a product exceeds California's or any other legal standard—they are meant to indicate which products had comparatively higher levels of lead." (*Id.*) Consumer Reports describes its methodology as an "estimate [of] the average concentration of a heavy metal in a tested baby puff product" and that a heavy metal presence was "assumed" if a metal was detected in "only one or two of the samples of a given product." (Hritz Decl., Ex. G (Consumer Reports Test Methodology).) While the article claims to have detected levels of lead in the six different cassava products (including products made by companies other than LesserEvil), the article did not conclude that any of the products were unsafe. To the contrary, the article purported to report "how many servings . . . a child could consume before exceeding" California's "maximum allowable dose level" of lead, which is "the most protective [standard] available." (Kirchner,

*supra*.) It explained "Rice, fresh cassava, sweet potatoes, carrots, and other root vegetables can be high in heavy metals, but they can be essential sources of nutrients in kids' diets." *Id*.

## ARGUMENT

Under Rule 12(b)(1), a "case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory [authority] or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). Under Rule 12(b)(6), a claim must be dismissed unless the complaint pleads enough facts to "state a claim to relief that is plausible on its face." *Dimuro v. Estee Lauder Co*., No. 3:12CV01789(AVC), 2013 WL 12080901, at *2 (D. Conn. Nov. 22, 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *aff'd sub nom*. *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27 (2d Cir. 2014). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 570.

Claims that "sound in fraud" must satisfy the heightened pleading standards of Rule 9(b) and "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Dimuro*, 2013 WL 12080901, at *4 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 784 (N.D. Ill. 2023) ("Deceptive practices claims are subject to the heightened Rule 9(b) pleading standard").

### I. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT SHE WAS MISLED

Plaintiff's false advertising claims suffer from an insurmountable defect: she does not allege that any supposedly false statement by LesserEvil misled her. Nor could she. LesserEvil does not state anywhere on its labels that its products are free of lead. Given the ubiquity of lead

in the environment, it is unclear that any product containing fruits or vegetables could make such a claim.

The failure to plausibly allege a false or misleading statement is fatal to all of Plaintiff's claims. "To be within the scope of permissible state regulation under 21 U.S.C. § 343-1, a plaintiff's state law claims must allege a false or misleading representation." *Manuel v. Pepsi-Cola Co.*, No. 17 CIV. 7955 (PAE), 2018 WL 2269247, at *7 (S.D.N.Y. May 17, 2018); *see also Demetres v. Zillow, Inc.*, No. 3:21-CV-00802-JAM, 2024 WL 3595917, at *7 (D. Conn. July 30, 2024) (to satisfy the elements of a Connecticut Unfair Trade Practices Act claim, "the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct"); *accord Sorkin v. Kroger Co.*, No. 23 C 14916, 2024 WL 3673719, at *4 (N.D. Ill. Aug. 6, 2024) (dismissing claim that "farm fresh" deceptively conveys "the eggs came from a farm where the hens were living a natural life . . . and were not confined in cages" because "the term 'farm fresh' does not say or suggest anything about whether the eggs came from a hen that was caged or not.").

Similarly, in a false advertising case, claims for breach of express or implied warranty and unjust enrichment also turn on "whether the marketing presentation was deceptive." *E.g.*, *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020); *Taylor v. Procter & Gamble Co.*, No. 22-CV-1949-DWD, 2023 WL 5289451, at *6 (S.D. Ill. Aug. 17, 2023) (concluding "[t]he Court's finding that Plaintiff failed to plausibly allege a false or misleading statement" is "fatal" to plaintiff's claims for breach of express and implied warranties and plaintiff's claim under the Magnuson Moss Warranty Act). Relatedly, because nothing on the Lil' Puffs labels is an actionable affirmation or promise that Lil' Puffs "did not contain lead," Plaintiff's Breach of Express Warranty Claim fails. *See Taylor v. Procter & Gamble Co.*, No. 22-

CV-1949-DWD, 2023 WL 5289451, at *6 (S.D. Ill. Aug. 17, 2023) (express warranty claim requires that seller "made an affirmation of fact or promise").

Plaintiff claims she was misled because (1) the Lil' Puffs packaging did not disclose that the product had, or might contain, lead and (2) the word "kids" and instructions regarding when toddlers are fit to consume the snacks led her to believe the product was free of any lead. (Comp. ¶¶ 30-31). But there is no legal requirement that LesserEvil identify the amount of ambient lead in its products. This is a made-up rule (and one that is preempted by federal law, as detailed in Part II below). Nor does the word "kids" somehow suggest that the product is lead-free. The word "kid" is a general term that says nothing about the presence or absence of ambient lead. Moreover, given the ubiquity of lead in our environment, it is implausible Plaintiff believed "kids" meant "free of lead." Nor are trace amounts of lead that naturally occur in organic vegetables an "ingredient" that LesserEvil was required to disclose. LesserEvil's labels disclose all the ingredients in its products, and the Complaint does not allege LesserEvil's labels violate any of the numerous FDA regulations regarding food.

Plaintiff's argument that she believed that the word "kid" on the label is a claim that the product meant "healthy for toddlers and young children" (Comp. ¶ 17) proves too much. What is healthy for toddlers and small children might be a goal that a regulator could—after scientific inquiry and debate—use to fashion a concrete rule, but it is not a legal standard. Under Plaintiff's view, a lawyer could sue over naturally occurring ambient lead, sugar, fat, sodium, artificial flavors, gluten, or just about anything else. Such a statement would be puffery that is not actionable because it cannot be objectively tested. *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020). "Puffery includes statements that are broad, vague, and commendatory, or that express opinion rather than fact." *Brown v. Coty, Inc.*, No. 22 Civ. 2696,

2023 WL 2691581 at *4 (S.D.N.Y. Mar. 29, 2023) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (describing puffery as either "a general claim of superiority over comparable products that is so vague it can be understood as nothing more than a mere expression of opinion" or "an exaggerated, blustering, and boasting statement upon which no reasonable buy would be justified in relying"). Mere puffery is not actionable.

For example, in *Brown v. Coty, Inc.*, plaintiff alleged Covergirl mascara contained PFAS and she was misled into believing the products were free of PFAS based on various "aspirational company mission statements" such as "we intend to keep sustainability at the heart of product innovation," "[o]ur ambition is to put sustainability at the heart of innovation," and "[we] continuously seek to improve our products through research and development." 2023 WL 2691581 at *1. The court dismissed the case, concluding these statements were puffery because they "cannot be objectively measured and cannot be proven true or false." *Id*. The same logic applies here. The word "kid" and/or what it supposedly connotes cannot be objectively measured and proven true or false. To the extent that Plaintiff equates "kid" with "free of lead," this interpretation is implausible.[5]

Plaintiff also points to language discussing when toddlers are "ready" to eat Lil' Puffs ("stands alone," "bites through a variety of textures," and "feeds self with fingers") and claims that this constitutes some type of warranty about lead content. (Comp. ¶ 14.) This language, which also does not discuss lead, simply says that the product is for young kids—which it is. It is doubly implausible to interpret the above language as relating to lead because lead, like PFAS, is unavoidably present in our air, soil and water. In an arena heavily regulated by the FDA, in

[5] The dictionary defines the word "kid" as "a young person." *Kid*, Merriam-Webster, https://www.merriam-webster.com/dictionary/kid.

which the FDA requires food makers to disclose a variety of information—but not lead—it is implausible that Plaintiff believed Lil' Puff's labeling "kids snacks" meant the product was free of all trace amounts of lead, where lead is ubiquitous and naturally occurring in organic vegetables. *See, e.g.*, *Richburg v. ConAgra Brands, Inc.*, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023) (rejecting claim that it was misleading to advertise microwavable popcorn as containing "only real ingredients" and "100% ingredients from natural sources," even though the packaging contained PFAS, because it was implausible that any consumer would consider such "migratory chemicals to be an 'ingredient.'" (citing C.F.R. § 101.100(a)(3)(iii)).[6]

Because Plaintiff has failed to plausibly plead there was anything misleading about LesserEvil's labels, Plaintiff also does not plead causation and lacks Article III standing. Article III requires a plaintiff to prove causation and injury. "To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). As Plaintiff cannot point to any misleading statements on the Lil' Puffs, she does not allege any injury "fairly traceable" to the Lil' Puffs label. *Id*.

For any of these reasons alone, and especially taken together, Plaintiff's claims should be dismissed for failure to allege LesserEvil's Lil' Puffs packaging is misleading.

---

[6] The assessment of whether a particular statement on a product label is deceptive must be made "in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (cleaned up); *see also Fink v. TimeWarner Cable*, 714 F.3d 739, 740– 41 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.").

## II. PLAINTIFF CANNOT SUPPLANT THE FDA AS A REGULATOR OF AMBIENT LEAD IN FOOD

A separate, and equally insurmountable, legal defect in this case is that Plaintiff is trying to legislate and impose food labeling requirements that Congress and the FDA—the agency that Congress has appointed to regulate these issues through its expertise on food science and policy—have refused to adopt. Plaintiff's made-up food regulation is preempted by the FDCA, 21 U.S.C. § 343-1(a), which regulates lead in food. Even if Plaintiff's claims were not preempted, they all should be dismissed under the doctrine of primary jurisdiction, as the claims involve highly technical, scientific questions that the FDA is in the process of addressing with the expert resources at its disposal through notice-and-comment rulemaking, the proper mechanism for imposing food regulations.

### A. Plaintiff's Claims Are Preempted

Plaintiff's claims are expressly preempted by the FDCA and impliedly preempted as conflicting with the FDA's considered judgment about the safety and labeling of food products. Plaintiff's claims and the injunctive relief sought directly conflict with the FDA's role under federal law to establish a uniform, national policy for food safety, including regulation of lead and other heavy metals in the food supply. Under the Supremacy Clause, conflicts that arise between state and federal law must, of course, be resolved in favor of federal law. *See* U.S. CONST. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land"); *Maryland v. Louisiana*, 451 U.S. 725, 746-47 (1981).

Congress has both expressly and impliedly preempted state law claims seeking to impose labeling requirements different from, or in addition to, those required by federal regulations. The Nutrition and Labeling Education Act, which amended the FDCA in 1990, prohibits any state law or regulation "that is not identical to" federal regulations regarding claims made on food

labels. 21 U.S.C. § 343-1(a). Thus, state law claims are preempted if they "impose a broader obligation than federal law." *In re PepsiCo, Inc. Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 534 (S.D.N.Y. 2008) (cleaned up) (quoting *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 453 (2005)). In addition, conflict preemption applies "where compliance with both state and federal law is a physical impossibility or . . . where the state law at issue stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (internal citations and quotation marks omitted). Conflict preemption does not arise solely from federal statutes and regulations, but can "in appropriate circumstances" apply when there is "federal agency action taken pursuant to statutorily granted authority short of formal, notice and comment rulemaking" *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) (quoting *Fellner v. Tri-Union Seafoods LLC*, 539 F.3d 237, 244 (3d Cir. 2008)); *see also Fawemimo v. American Airlines, Inc.*, 751 F. App'x. 16, 18-19 (2d Cir. 2018) (summary order) (holding state law negligence claim was expressly preempted by the Federal Aviation Act and impliedly preempted in that it would interfere with federal regulations pertaining to airline safety).

Significantly, where a federal regulatory agency like the FDA has regulated in an area of its expertise pursuant to a legal mandate, state law may not be used to bar conduct that the agency has chosen to not prohibit. Otherwise, the threat of civil liability would erect an obstacle to the accomplishment of the comprehensive and carefully calibrated federal regulatory program. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) (federal law that required a percentage of new cars to employ passive-restraint systems impliedly preempted state tort claims that would have had effect of requiring auto manufacturers to install air bags in all new cars); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 156 (1982) (conflict preemption

where state law limited the availability of an option that the federal agency thought appropriate to ensure its overall regulatory objectives).

Plaintiff cannot commandeer the FDA's role to regulate food safety and food labeling under the guise of state consumer protection law. *See, e.g.*, *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 38 (2d Cir. 2020) (holding that states may not impose additional labeling requirements on products regulated under the FDCA that have not been imposed by Congress or the FDA); *Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*, 490 F. Supp. 3d 533, 545-46 (D. Conn. 2020) (fraud claim premised on a false representation made on the label of an inhaler was preempted because plaintiff was effectively requesting a change in labeling that would require FDA approval to implement).

Conflict preemption applies to Plaintiff's claims. The FDA pervasively regulates food safety under a grant from Congress. The FDA—singularly positioned to solicit expert opinions, marshal the scientific data, and harmonize stakeholder interests—has looked at and continues to study the issues of lead in food and to regulate its presence in the food supply. Contrary to Plaintiff's demand in this lawsuit, the FDA—as part of its historical study of lead—has *not* banned its presence in children's food, much less the Lil' Puffs at issue here. (Hritz Decl., Ex. A, at 5 (describing history of FDA lead regulations).) Nor, as part of its renewed look at these same issues, has the FDA provided any indication that action levels for lead in children's food, if adopted at all, will be set at 0, nor has it required any labeling with respect to presence of lead. *Id*. at 8 (describing proposed action levels). Instead, the FDA has decided to take a holistic approach that balances several competing objectives, including the need for babies and young children to eat a balanced and nutritious diet, and will set action levels as necessary to maintain the safety of the food supply. *Id*. This is in accord with the FDA's historical approach, such as

when the FDA set action levels for inorganic arsenic in rice cereals for infants or allowable levels of inorganic substances, including arsenic, cadmium, lead, and mercury, in bottled water.

The same is true with Plaintiff's request for disclosures regarding the presence of lead. The FDA has studied the impact of ambient lead on food safety. The presence of lead (and other unavoidable substances in food) was specifically contemplated by the FDCA, which empowers the FDA to set action levels and to regulate adulterants to ensure food safety. 21 U.S.C. §§ 342, 346. Both Congress through the FDCA and the FDA in their deliberate judgment and per their deliberate choice have not required warning labels or disclosures about the presence of ubiquitous lead on any food, including food for children. That position recognizes that, if this is a problem at all, it is a problem for the entire food supply, not just commercially manufactured children's food.

In other contexts where it was suggested that the FDA require warnings to declare the presence of certain ingredients and substances, the FDA has stated that it is "unwilling to require a warning statement in the absence of clear evidence of a hazard. If the agency were to require warnings for ingredients that only cause mild idiosyncratic responses, it is concerned that it would overexpose consumers to warnings. As a result, consumers may ignore, and become inattentive to, all such statements." Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592-01, 28615 (Jun. 21, 1991). That concern is applicable here because every child food product would need to carry a disclaimer about the potential presence of lead, which would provide no benefit to consumers.

Permitting Plaintiff's lawyers to act as the FDA, under the guise of state law, to set their own labelling requirements and ban trace amounts (or the risk) of contaminants altogether or to find, retroactively, that children's snacks should not have been sold or should have a warning

label, would "disrupt the expert balancing underlying the federal scheme." *Farina v. Nokia, Inc.*, 625 F. 3d 97, 126 (3d Cir. 2010). A determination of what requirements, if any, should be mandated, and the action levels, if any, that should be set, is squarely for the FDA to make. Otherwise, a patchwork of potentially contradicting court orders in different cases across the country would make it impossible for companies to comply. Accordingly, conflict preemption requires dismissal of the Compliant.

**B. Plaintiff's Claims Fall Under the FDA's Primary Jurisdiction**

Even if the Court harbors any doubts as to whether the preemption applies, this lawsuit should not proceed until the FDA concludes its inquiry under the separate—but related—doctrine of primary jurisdiction. The FDA is currently investigating whether to implement regulations (potentially including, but not limited to, establishing action levels for enforcement) regarding the presence of heavy metals and other contaminants in food for babies and young children. (Hritz Decl., Ex. D (stating that the FDA will "Finalize Action Levels" for "Lead in Foods Intended for Babies and Young Children" in December 2024).) Such regulation is undoubtedly within the ambit of the FDA's jurisdiction and expertise. (*Id*. (describing the process of reducing heavy metals in foods as a "complicated and multifaceted" process that can carry "unintended consequences").) Having opened an active and rigorous investigation into the matter, the agency should be afforded the opportunity before private lawsuits that seek individualized judicial determinations of appropriate levels of heavy metals proceed. Plaintiff's claims implicate numerous food regulatory issues that under the law require a uniform national approach to food safety based on science after input from all stakeholders. These issues should not be decided in the first instance by courts considering different defendants' products in false advertising consumer class actions.

The doctrine of primary jurisdiction applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *see also Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,* 84 F. 3d 91, 97 (2d Cir. 1996) (the doctrine's central aim is to allocate initial decision-making responsibility between courts and agencies and to ensure that they "do not work at cross-purposes."). The "doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime." *Pharm. Research & Mfrs. of Am. V. Walsh,* 538 U.S. 644, 673 (2003) (Breyer, J., concurring) (citations omitted). When it applies, the doctrine affords the court discretion to stay the case or dismiss without prejudice. *Ellis v. Trib. Television Co*., 443 F.3d 71, 92-93 (2d Cir. 2006).

In determining whether to apply the primary jurisdiction doctrine, courts consider factors such as whether the issue "is within the conventional experiences of judges or whether it involves technical or policy consideration within the agency's particular field of expertise;" whether the question "is particularly within the agency's discretion; " and "whether there exists a substantial danger of inconsistent rulings." *Ellis*, 443 F.3d 71, 82–83 (2d Cir. 2006) (quotation marks and citation omitted). These factors are satisfied in the instant case.

Plaintiff's theory is that any food for children that has ever tested positive for lead is unsafe and must disclose that it contains or may contain any trace amount of lead. But the FDA engages in a complex decision-making process for when to require labels because if too many warnings are required, the warnings lose their efficacy. Evaluating acceptable levels of lead in food "is a technical matter involving complex chemical considerations" that "lies within the

FDA's particular field of expertise regarding food chemistry and the labeling of food and beverage products." *Coyle v. Hornell Brewing Co.*, No. 08–02797 (JBS), 2010 WL 2539386, at *4 (D.N.J. June 15, 2010) (applying the doctrine because whether high fructose corn syrup renders a product not "100% natural" is a question within FDA expertise); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 140 (E.D.N.Y. 2018) (same, explaining the "FDA extensively regulates food labeling and has promulgated rules regarding the precise types of nutrient content claims and disclosure requirements implicated by plaintiff's claims" and concluding "the question of what constitutes proper quantitative Net Carb statements and the proper formula for calculating Net Carbs is best reserved for the FDA"); *Israel v. Baxter Labs.*, 466 F. 2d 272, 280 (D.C. Cir. 1972) (deferring the question of whether a drug is safe to the FDA because such is "most properly for the FDA"); *Heller v. Coca-Cola Co.*, 230 A.D. 2d 768, 769 (N.Y. App. Div., 2d Dep't 1996) (affirming dismissal of a class action against soft drink manufacturers concerning disclosures of an FDA-approved ingredient based upon the primary jurisdiction doctrine due to the need "for the expertise and specialized knowledge of an administrative agency and a need for consistency and uniformity in an industry which is nationally regulated").

The FDA is uniquely capable of taking into consideration food safety, the adequacy of the food supply, and the fact that alleged contaminants are omnipresent in the environment, and reducing all of that to feasible and achievable regulations and/or formal guidance. *See generally Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023) (summary order) ("it is not within the province of the courts to decide what information must be disclosed on consumer packaging.").

Specifically, the FDA's Toxic Elements Working Group aims to reduce exposure to toxic elements in food and is made up of senior leaders and risk managers in the Center for Food Safety and Applied Nutrition. (Hritz Decl., Ex. A.) The Group's Closer to Zero Action Plan will address lead in children's food by setting action levels if deemed necessary and by working to reduce heavy metals in the food supply.

Several courts have recently dismissed claims about heavy metals in food in deference to FDA's primary jurisdiction. *E.g.*, *Gerber*, 2022 WL 10197651, at *13-15 ("Any decision by the Court regarding what levels of Heavy Metals is harmful enough to require a warning label . . . will likely result in a patchwork of decisions that vary by locations, court, manufacturer, and product, resulting in different labeling standards for substantially similar . . . products produced by different manufacturers."); *Kimca v. Sprout Foods, Inc.*, 2022 WL 3586095, at *4 (N.J. Super. Law Div. Aug. 5, 2022) ("The FDA has already announced its plan to act on heavy metals in baby foods, and thus has expressed serious interest in the subject matter of the litigation. This leads to deferring to the FDA's primary jurisdiction because the FDA's final pronouncement . . . almost certainly would have an effect on the issues in litigation." (internal quotation marks omitted)).[7]

[7] *White v. Beech-Nut Nutrition Co*., No. 23-220-CV, 2024 WL 194699, at *2 (2d Cir. Jan. 18, 2024) does not compel another result. In that case, the district court invoked the primary jurisdiction doctrine in January 2023, citing the FDA's plan to issue final action levels by April 2024. *In re Beech-Nut Nutrition Co. Baby Food Litig.*, 651 F. Supp. 3d 629, 633 (N.D.N.Y. 2023). A year later, when the case was before the Second Circuit, the FDA had replaced the previously announced timeline with "no update." The Second Circuit, concerned that the FDA had "abandoned" its timeline, issued a non-precedential opinion that did not weigh the *Ellis* factors, but concluded that "*indefinite* delays outweigh any possible benefits that could be obtained from deferring to the agency." *White*, 2024 WL 194699, at *2 (emphasis added). Now there is no longer the possibility of "indefinite delay[]" as the FDA has announced that it will issue final guidance in December 2024. (Hritz Decl., Ex. D.)

Dismissal under the primary jurisdiction doctrine is appropriate here both because the regulation of food products is within the FDA's discretion and because the issue of acceptable heavy metal levels in food products is a highly technical question involving considerations within the FDA's particular field of expertise.

## III. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff lacks standing in at least four key respects. First, as explained in *supra* Part I she fails to allege Article III standing (and likewise fails to allege the requisite elements of her claims) because she fails to show that she was misled. In addition, she separately fails to allege that she was injured, she cannot seek injunctive relief because she is aware of the lead content of Lil' Puffs, and she lacks standing to sue under the Connecticut consumer protection laws because she does not live in Connecticut, does not claim to have bought any LesserEvil product in Connecticut, and does not even claim to have ever been to Connecticut.

### A. Plaintiff Does Not Plausibly Allege that She Was Injured

Plaintiff has failed to allege injury because the Complaint is devoid of any allegation that the Lil' Puffs she actually purchased contained lead or even that, at the time she purchased the Lil' Puffs, there was any risk that the puffs contained lead. This defect is fatal to all her claims both under Article III, which requires proof of causation and an injury-in-fact, and under substantive state law, which requires a plaintiff to establish injury as an element of her claims.

"An injury in fact must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (citing Black's Law Dictionary 479 (9th ed. 2009)). Plaintiff alleges she was injured by either purchasing products she would not have purchased, overpaying, or receiving a product that was defective. (*E.g.*, Comp. ¶¶ 34, 58.) Such threadbare allegations are insufficient.

The Complaint is devoid of any allegation that the Lil' Puffs that Plaintiff actually purchased contained lead or that her toddler experienced elevated blood lead levels after consuming Lil' Puffs. Plaintiff alleges she purchased the Lil' Puffs "regularly" until Spring 2024 and months later an "independent laboratory" concluded "samples" of Lil' Puffs "contained lead." (Comp. ¶¶ 19, 29.) The Complaint does not allege that all Lil' Puffs contain lead, nor does it allege that the testing was performed on Lil' Puffs from the same store or batch as the puffs Plaintiff had purchased. *See Onaka v. Shiseido Am. Corp.*, 21-cv-10665-PAC, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023) (dismissing claim when the plaintiffs did not "plausibly allege[] that the presence of PFAS in the [relevant cosmetics products] is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once" when "Plaintiffs provide[d] no facts from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased"); *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. 09-cv-01597, 2010 WL 3448531, at *3 (N.D. Cal. Sep. 1, 2010) (same, explaining plaintiffs "d[id] not plead facts to suggest that a palpable risk exists" where "[t]hey only allege[d] that [the contaminants] may be carcinogenic for humans, that there could be no safe levels for exposure to carcinogens and that [the bath] products contain some amount of these substances"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litigation*, 903 F.3d 278 (3d Cir. 2018) (same because "did not allege that she developed ovarian cancer, nor did she allege she is at risk of developing ovarian cancer in the future as a result of her [b]aby [p]owder use"); *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 121CV269MSNJFA, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022) (same because "Plaintiffs do not allege the Baby Food Products were unsafe as to them").

In addition, Plaintiff does not identify any other comparable, cheaper, or safer products to show that she, in fact, paid a premium for Lil' Puffs. *Kimca v. Sprout Foods, Inc.*, No. CV 21-12977 (SRC), 2022 WL 1213488, at *9 (D.N.J. Apr. 25, 2022). To the extent Plaintiff claims the product is worthless, "without any plausible allegations of future risk, the allegation that the [] Products were worthless [] falls apart." *Id*.

Plaintiff's failure to allege that the Lil' Puffs that Plaintiff (or anyone else) actually purchased likely contained lead also dooms her warranty and quasi-contract claims, which are based on her conclusion that all Lil' Puffs are not safe for children because they contain lead. (Comp. ¶ 103 ("[T]he Products are inherently flawed and defective because they contained lead."); ¶ 114 ("[T]he Products do not conform to the above-referenced representations because, as alleged above, they are contaminated with lead."); ¶ 122 ("Defendant provided Products that had an inherent defect, were unfit for and unsafe for their ordinary use, were unfit for human consumption, particular [sic] by toddlers and young children, and contained lead.")); *see, e.g.*, *In re Theos Dark Chocolate Litigation*, No. 23-CV-02739-HSG, 2024 WL 4336631, at *13 (N.D. Cal. Sept. 27, 2024) (dismissing breach of implied warranty claim because the allegation that chocolate bars are "unsafe for consumption because they contain high levels of Heavy Metals" does not "plausibly ple[a]d that chocolate containing trace amounts of Heavy Metals fails to conform to the standard performance of like products used in the trade, is unfit for its ordinary purpose as a food product or is not merchantable or fit for use as chocolate" (cleaned up)).

Plaintiff fails to state which state law applies to her common law claims, which is an additional reason to dismiss them. *E.g.*, *Barnett v. Kroger Co*., No. 1:22-CV-544, 2023 WL 5899836, at *3 (S.D. Ohio Sept. 11, 2023) (when plaintiffs state for the first time on reply which state law applies to their common-law claims for breach of implied warranty and unjust

enrichment, "the proper remedy is to dismiss" the claims); *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725, at *14 (S.D. Cal. Mar. 27, 2024).

Plaintiff's failure to allege what LesserEvil Lil' Puffs product she purchased and what the results of testing of that product showed are also insufficient under Federal Rules 8 and 9 because Plaintiff's allegations fail to fairly apprise LesserEvil of the charges against it.[8] *See, e.g., Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011) (plaintiff could only bring claim as to baby bath products actually purchased); *Simon v. KeySpan Corp.*, No. 10-5437, 2011 WL 2135075, at *6-7 (S.D.N.Y. May 27, 2011) (plaintiff "must allege and show that he personally has been injured, not that injury has been suffered by other, unidentified members of the class to which he belongs and which he purports to represent.").

### B. Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff lacks Article III standing to pursue injunctive relief because she cannot claim that she would suffer any imminent and irreparable injury in the future. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ("Where there is no likelihood of future harm, there is no standing to seek an injunction."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). To obtain injunctive relief, Plaintiff must demonstrate "a sufficient likelihood that [they] will *again* be wronged in a *similar* way," but she fails to make those allegations. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added).

[8] Plaintiff includes an image of the "Lil' Puffs Sweet Potato Apple Asteroid" but does not state whether that is the product she purchased. (Comp. ¶ 13.) LesserEvil also makes Lil' Puffs Intergalactic Voyager Veggie Blend and Star-Berry Beet. These products contain different vegetables and, according to Consumer Reports—the only source Plaintiff cites that identifies which varieties it tested—different possible lead concentrations. (Kirchner, *supra*.)

Plaintiff does not allege that she intends to buy Lil' Puffs in the future. To the contrary, now that Plaintiff is fully aware that Lil' Puffs are made with cassava flour, which may contain trace levels of naturally occurring heavy metals, if the allegations in the Complaint are to be credited, Plaintiff will *not* buy the products anymore. (Compl. ¶ 33 ("She would not have purchased the Products if she knew that the Products contained lead. In fact, knowing the truth, the Products are worthless to her.")); *see also Berni*, 964 F.3d at 147–48 ("No matter how ubiquitous Barilla pasta may be, there is no reason to believe that all, or even most, of the class members—having suffered the harm alleged—will choose to buy it in the future.").[9]

Even if Plaintiff were to contend that she might purchase the products again in the future, "hypothetical future purchases do not demonstrate the 'real or immediate threat' of injury necessary to pursue injunctive relief." *Wiggins v. Unilver United States, Inc*., 684 F. Supp. 3d 127, 142 (S.D.N.Y. 2023). "[T]here is no reason to believe" Plaintiff "will incur a harm anew" because "next time" she will be buying the product "with exactly the level of information that they claim they were owed from the beginning . . . [S]ome disclaimer language will not materially improve [her] position as [a] knowledgeable consumer[]." *Berni*, 964 F.3d at 148. As Plaintiff lacks standing to seek injunctive relief, her claim for injunctive relief must be dismissed.

### C. Plaintiff Lacks Standing to Sue Under Connecticut Consumer Protection Law

Plaintiff assumes that just because she styled this case as a putative "class action," that she can sue under the consumer protection laws of Connecticut, in which she never lived in nor did business. Not so. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they

[9] It is unclear what relief Plaintiff would seek, as LesserEvil is phasing out cassava flour "over the next coming months" anyway. https://lesserevil.com/blogs/uncategorized/to-the-lesserevil-community/.

personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations, internal quotation marks, and alterations omitted). Plaintiff, hailing from Illinois, has not offered any allegations whatsoever as to how she was injured under the laws of Connecticut, nor has she otherwise alleged how Connecticut's laws apply to her purchases of Lil' Puffs.

Plaintiff may only assert a state claim for states she resided in, did business in, or had some other connection to. *E.g., Simington v. Lease Fin. Grp., LLC,* No. 10 CIV. 6052 (KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Where plaintiffs themselves do not state a claim under their respective state's consumer statutes, however, they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action."); *Gallagher v. Lactalis Am. Grp., Inc.*, No. 22-CV-614 (JLS), 2023 WL 6224881, at *3–4 (W.D.N.Y. Sept. 21, 2023) ("Plaintiff is the only named plaintiff. And because she neither resides in, nor alleges that she purchased Feta Crumbles within, Alabama, Georgia, South Carolina, Tennessee, or Utah, she lacks standing to assert claims under the consumer protection statutes of those states."). To hold otherwise "would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws." *Smith v. Pizza Hut, Inc.,* No. 09–CV–01632 (CMA) (BNB), 2011 WL 2791331, at *9 (D. Colo. July 14, 2011); *see also Jurgensen v. Felix Storch, Inc.*, No. 12 CIV. 1201 KBF, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) ("It is well settled that plaintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than Washington—i.e., the state where she resides"); *In Re Potash Antitrust Litig.*, 667 F.Supp.2d 907, 924 (N.D. Ill. 2009) (dismissing

claims under the laws of states where the plaintiffs were not residents for lack of standing because the plaintiffs did not allege personal injuries in those states); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig*., No. 13-MD-2451 ADS AKT, 2014 WL 868827 (E.D.N.Y. Mar. 5, 2014) (same).

The location of LesserEvil's headquarters in Connecticut is insufficient to confer standing. *Knowles v. McDonald's USA, LLC*, No. 16-81657-CIV, 2018 WL 8244277, at *8 (S.D. Fla. Feb. 9, 2018) ("Plaintiff's allegation that McDonald's USA has its headquarters in Illinois and its advertising and marketing emanated from Illinois is insufficient to warrant application of the ICFA."). As Plaintiff does not allege that she has ever lived in Connecticut or purchased Lil' Puffs in Connecticut, she lacks standing to bring claims under Connecticut law, and Count I must be dismissed.

## IV. THE MAGNUSON-MOSS WARRANTY ACT CLAIM SHOULD BE DISMISSED FOR ADDITIONAL REASONS

Count III, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301, et seq. ("MMWA"), fails as a matter of law and must be dismissed for numerous reasons. As noted *supra* Part I, Plaintiff's MMWA claim depends on her breach of express and implied warranties claims. (*See* Comp. ¶¶ 80, 88.) Because Plaintiff's warranty claims fail for the reasons stated herein, Plaintiff's MMWA claim also must fail. Additionally, (1) Plaintiff has not met the jurisdictional requirements of the MMWA; (2) the claim is preempted pursuant to 15 U.S.C. § 2311(d); and (3) the Lil' Puffs labeling is not a "warranty" within the meaning of MMWA because it does not "guarantee performance over a 'specified period of time,'" 15 U.S.C. § 2301(6).

The MMWA contains jurisdictional requirements, including that federal district courts may decide MMWA claims in class action suits only where there are more than 100 named

plaintiffs. 15 U.S.C. § 2310(c)(3) ("No claim shall be cognizable . . . if the action is brought as a class action and the number of named plaintiffs is less than one hundred."). As Plaintiff is the only named plaintiff, she does not meet this threshold. *Davis v. Angelcare USA, LLC*, No. 3:23-CV-119 (VAB), 2024 WL 1344666, at *38 (D. Conn. Mar. 29, 2024) (dismissing MMWA claim for having fewer than 100 named plaintiffs because "the MMWA simply prevents claims under that Act from proceeding in federal court absent the satisfaction of certain jurisdictional prerequisites" (quoting *Floyd v. Am. Motor Co*., 966 F.3d 1027, 1035 (9th Cir. 2020))).

Plaintiff's MMWA claim is also preempted. As noted, food labels are subject to extensive regulation by the FDA pursuant to the FDCA. The FDA has exclusive regulatory authority under the FDCA and can determine what is "false or misleading." *See* 21 U.S.C. § 371 (giving the FDA regulatory authority over the enforcement of the FDCA). The MMWA, on the other hand, is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). Because the products at issue are subject to their own regulatory scheme (the FDCA), the MMWA cannot be used to attack label statements on the same products. *See Reid v. GMC Skin Care USA Inc.*, No. 815CV277BKSCFH, 2016 WL 403497, at *13 (N.D.N.Y. Jan. 15, 2016) ("The majority of courts that have considered whether § 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that the MMWA claim is barred.").

Even if not preempted, the claim still fails because Plaintiff has failed to plead an actionable warranty. The MMWA defines a "written warranty" as a "written affirmation" that a consumer product will be "defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6). The Complaint does not allege, and LesserEvil's advertising of Lil' Puffs does not purport to guarantee, anything over a specified period of time.

(*See, e.g.*, Comp. ¶¶ 75-96 (the purported warranties mentioned have no promise related to time)); *Skelton v. General Motors Corp.,* 660 F. 2d 311, 316 n.7 (7th Cir. 1980) (explaining that making MMWA claims are contingent on the articulation of a specified period of time).

"Kids" is a product description, not a promise of performance over time. Accordingly, the MMWA's temporal requirement is not met, and the claim must be dismissed. *See e.g. In re Frito-Lay N. Am. Inc. All Nat'l Litig.,* No. 12-cv-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (holding that an "All Natural" label does not "constitute a promise that the product 'will meet a specified level of performance over a specified period of time'"); *see also Wilson v. Frito-Lay N. Am., Inc.,* No. 12-cv-1586, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013) ("All Natural' label is "at most, product descriptions"); *see also Kane v. Chobani, Inc.,* No. 12-cv-2425, 2013 WL 3703981, at *19 (N.D. Cal. July 12, 2013) (holding that a food label is a product description and does not constitute a warranty); *In re Scotts EZ Seed Litig.,* No. 12-cv-4727, 2013 WL 2303727 at *5 ("none of the representations allegedly made by defendants includes the requisite temporal element to be actionable under the MMWA").

## V. LEAVE TO AMEND SHOULD BE DENIED

When "a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to amend is futile and should be denied." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc*., 148 F. Supp. 3d 285, 294 (S.D.N.Y. 2015). "Amendment is futile if an amended complaint would fail to state a claim on which relief could be granted." *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig*., 167 F. Supp. 3d 524, 539 (S.D.N.Y 2016). Here, the Court should deny leave to amend because Lil' Puff labels are not deceptive as a matter of law, Plaintiff's theory cannot give rise to an Article III injury in fact, and all of her claims are either preempted or subject to the FDA's primary jurisdiction.

## CONCLUSION

For the foregoing reasons, LesserEvil respectfully requests that the Court grant its motion to dismiss with prejudice.

Dated: October 4, 2024

Respectfully submitted,

*/s/ Amelia Courtney Hritz*

Amelia Courtney Hritz (ct31797)
hritz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

Matthew Borden*
borden@braunhagey.com
David H. Kwasniewski*
kwasniewski@braunhagey.com
747 Front Street, 4th Floor
San Francisco, California 94111
Telephone: (415) 599-0210

**Pro Hac Vice* pending
*Attorneys for Defendant LesserEvil LLC*