**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ELISE AUGUSTINE, individually and on behalf of all others similarly situated, | Case No. 3:24-cv-01309-OAW |
| | Hon. Omar A. Williams |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| LESSEREVIL LLC, | |
| *Defendant*. | |

**PLAINTIFF ELISE AUGUSTINE'S OPPOSITION TO**
**DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS**

**Table of Contents**

I. Introduction ............................................................................................................... 1

II. Plaintiff plausibly alleges that she was misled and adequately pleads each of her claims. ...................................................................................................................... 2

    A. Plaintiff adequately pleads her Illinois Consumer Fraud and Deceptive Business Practices Act claim. ............................................................................ 2

    B. Plaintiff adequately pleads her implied warranty claim. ..................................... 8

    C. Plaintiff adequately pleads her express warranty claim...................................... 10

    D. Plaintiff adequately pleads her Magnuson-Moss Warranty Act claim. ................ 11

    E. Plaintiff adequately pleads her quasi-contract claim. ......................................... 11

III. The FDCA does not preempt Plaintiff's claims................................................................ 11

    A. The FDCA does not expressly preempt Plaintiff's claims.................................... 12

    B. The FDCA does not impliedly preempt Plaintiff's claims. .................................. 15

IV. The primary jurisdiction doctrine does not apply. .............................................................. 19

V. Plaintiff has Article III standing. ...................................................................................... 23

    A. Plaintiff adequately alleges an economic injury-in-fact. .................................... 23

    B. Plaintiff should be granted leave to amend to add allegations sufficient to confer standing to seek injunctive relief. ............................................................ 29

VI. LesserEvil's additional arguments regarding the Magnuson-Moss Warranty Act claim fail. ...................................................................................................................... 29

    A. This Court has jurisdiction under the Class Action Fairness Act. ........................ 30

    B. Section 2311(d) does not preclude Plaintiff's MMWA claim. ............................. 33

    C. Plaintiff adequately pleads an actionable written warranty under the MMWA because LesserEvil's products are not "defect free." ............................. 34

VII. Conclusion. ................................................................................................................. 35

**Table of Authorities**

**Cases**

*Ackerman v. Coca-Cola Co.*,
2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ........................................................ 19

*Albrosco Ltd. v. Prince Agri Prods.*,
545 F. Supp. 3d 656 (C.D. Ill. 2021) ...................................................................................... 10

*Ashour v. Ariz. Bevs. USA LLC*,
2020 U.S. Dist. LEXIS 171505 (S.D.N.Y. Sep. 18, 2020).................................................. 15, 18

*Ault v. J.M. Smucker Co.*,
2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ....................................................... 21

*Balistreri v. McCormick & Co.*,
2023 U.S. Dist. LEXIS 162583 (N.D. Cal. Sep. 13, 2023) .............................. 17, 20, 21, 24, 27

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................................................................................... 3, 9, 10

*Bietsch v. Sergeant's Pet Care Prods.*,
2016 U.S. Dist. LEXIS 32928 (N.D. Ill. Mar. 15, 2016)........................................................... 8

*Brown v. COTY, Inc.*,
2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023) .......................................................... 9

*Brown v. Kerry Inc.*,
2021 U.S. Dist. LEXIS 224980 (S.D.N.Y. Nov. 22, 2021) ...................................................... 33

*Clinger v. Edgewell Pers. Care Brands, LLC*,
2023 U.S. Dist. LEXIS 41461 (D. Conn. Mar. 13, 2023) ..................................... 29, 30, 31, 32

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................... 28, 29, 33, 34

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...................................................................................... 34

*Cortina v. Goya Foods, Inc.*,
94 F. Supp. 3d 1174 (S.D. Cal. 2015)................................................................................. 16, 17

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017)................................................................................................................ 28

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ................................................................................................. 36

*Davis v. Angelcare USA, LLC*,
2024 U.S. Dist. LEXIS 57576 (D. Conn. Mar. 29, 2024) .......................................................... 3

*Davis v. Schwan's Consumer Brands, Inc.*,
2024 U.S. Dist. LEXIS 134923 (S.D.N.Y. July 30, 2024) ................................................... 15, 16

*Decoursey v. Murad, LLC*,
673 F. Supp. 3d 194 (N.D.N.Y. 2023)...................................................................................... 36

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ....................................................................... 34

*Ellis v. Trib Television Co.*,
    443 F.3d 71 (2d Cir. 2006) ....................................................................................... 24

*Fed. Mar. Com. v. Caragher*,
    364 F.2d 709 (2d Cir. 1966) ..................................................................................... 40

*Figueroa v. Foster*,
    864 F.3d 222 (2d Cir. 2017) ..................................................................................... 19

*Fishon v. Mars Petcare US, Inc.*,
    501 F. Supp. 3d 555 (M.D. Tenn. 2020) .................................................................. 41

*Fishon v. Peloton Interactive, Inc.*,
    620 F. Supp. 3d 80 (S.D.N.Y. 2022) ....................................................................... 34

*Forcellati v. Hyland's, Inc.*,
    2015 U.S. Dist. LEXIS 3867 (C.D. Cal. Jan. 12, 2015) .......................................... 41

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995)................................................................................................... 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................... 25

*Grocery Mfrs. Ass'n v. Sorrell*,
    102 F. Supp. 3d 583 (D. Vt. 2015) ........................................................................... 23

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
    2020 U.S. Dist. LEXIS 83556 (S.D. Cal. Apr. 27, 2020)........................................... 7

*Hedrick v. BSH Home Appliances Corp.*,
    2024 U.S. Dist. LEXIS 87747 (C.D. Cal. May 14, 2024) ........................................ 35

*Herrington v. Johnson & Johnson Consumer Cos.*,
    2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sep. 1, 2010) .......................................... 33

*Holk v. Snapple Bev. Corp.*,
    575 F.3d 329 (3d Cir. 2009) ..................................................................................... 22

*Holve v. McCormick & Co.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018)..................................................................... 14

*In re Frito-Lay N. Am., Inc.*,
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)................................ 21, 25

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
    2022 U.S. Dist. LEXIS 189822 (E.D. Va. Oct. 17, 2022)........................................ 33

*In re Ionosphere Clubs*,
    922 F.2d 984 (2d Cir. 1990) ..................................................................................... 39

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018) ..................................................................................... 33

*In re Lindt Sprüngli (USA), Inc.*,
 2024 U.S. Dist. LEXIS 160836 (E.D.N.Y. Sep. 6, 2024)........................................ 1, 5, 7, 8, 10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
 725 F.3d 65 (2d Cir. 2013) ........................................................................................... 19

*In re Plum Baby Food Litig.*,
 2022 U.S. Dist. LEXIS 25944 (N.D. Cal. Jan. 12, 2022) .............................................. 20

*In re Trader Joe's Co. Dark Chocolate Litig.*,
 2024 U.S. Dist. LEXIS 55568 (S.D. Cal. Mar. 27, 2024) ....................................... 25, 26

*John v. Whole Foods Mkt. Grp., Inc.*,
 858 F.3d 732 (2d Cir. 2017) .................................................................................... 28, 30

*Kail v. Wolf Appliance, Inc.*,
 2017 U.S. Dist. LEXIS 133280 (E.D.N.Y. Aug. 21, 2017).................................... 13, 36

*Kanfer v. Pharmacare US, Inc.*,
 142 F. Supp. 3d 1091 (S.D. Cal. 2015)......................................................................... 42

*Knapp v. McCoy*,
 548 F. Supp. 1115 (N.D. Ill. 1982) ............................................................................... 13

*Koenig v. Boulder Brands, Inc.*,
 995 F. Supp. 2d 274 (S.D.N.Y. 2014) ........................................................................... 15

*Krystofiak v. BellRing Brands, Inc.*,
 2024 U.S. Dist. LEXIS 106364 (N.D. Cal. June 14, 2024) ................................. 17, 20, 21, 27

*Kuns v. Ford Motor Co.*,
 543 F. App'x 572 (6th Cir. 2013) ................................................................................. 39

*Lee v. Mondelez Int'l, Inc.*,
 637 F. Supp. 3d 116 (S.D.N.Y. 2022) ........................................................................... 20

*Leppert v. Champion Petfoods USA Inc.*,
 2019 U.S. Dist. LEXIS 7585 (N.D. Ill. Jan. 16, 2019) .................................................. 8

*Levin v. Johnson & Johnson*,
 2019 U.S. Dist. LEXIS 101091 (E.D.N.Y June. 17, 2019) ........................................... 43

*Levy v. GE*,
 2015 U.S. Dist. LEXIS 159808 (D. Conn. Nov. 30, 2015) ...................................... 34, 35

*Levy v. HU Products LLC*,
 2024 U.S. Dist. LEXIS 37487 (S.D.N.Y. Mar. 1, 2024) ........................... 1, 5, 7, 24, 25, 26, 32

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.*,
 759 N.E.2d 66 (Ill. App. 2001) ....................................................................................... 3

*Lockwood v. Conagra Foods, Inc.*,
 597 F. Supp. 2d 1028 (N.D. Cal. 2009) ........................................................................ 19

*Manier v. L'Oreal U.S.A., Inc. (In re Amla Litig.)*,
 2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) ............................................. 37

*Meyer v. Seidel*,
    89 F.4th 117 (2d Cir. 2023) ............................................................................. 5, 35, 36

*Mirza v. Ignite USA, LLC*,
    439 F. Supp. 3d 1058 (N.D. Ill. 2020) ......................................................... 6, 7, 8, 35

*Motor Vehicle Mfrs. Ass'n v. Abrams*,
    899 F.2d 1315 (2d Cir. 1990) ................................................................................. 38

*N.Y. Pet Welfare Ass'n v. City of N.Y.*,
    850 F.3d 79 (2d Cir. 2017) ..................................................................................... 14

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009) ....................................................................... 14, 18, 20

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
    509 F. Supp. 2d 351 (S.D.N.Y. 2007) ..................................................................... 18

*Onaka v. Shiseido Ams. Corp.*,
    2023 U.S. Dist. LEXIS 53220 (S.D.N.Y. Mar. 27, 2023) ...................................... 32

*Ostenfeld v. Laundress, LLC*,
    2024 U.S. Dist. LEXIS 38442 (S.D.N.Y. Mar. 5, 2024) ............................. 37, 38, 40

*Palmer v. Amazon.com, Inc.*,
    51 F.4th 491 (2d Cir. 2022) ............................................................................. 23, 24

*Perona v. Wolkswagen of Am., Inc.*,
    684 N.E.2d 859 (Ill. 1997) ........................................................................................ 4

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014) ................................................................................................. 15

*Richburg v. ConAgra Brands, Inc.*,
    2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023) ............................................. 8

*Sandoval v. Pharmacare US, Inc.*,
    145 F. Supp. 3d 986 (S.D. Cal. 2015) ..................................................................... 42

*Sciortino v. PepsiCo, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015) ....................................................... 16, 17, 42

*Seljak v. Pervine Foods, LLC*,
    2023 U.S. Dist. LEXIS 36111 (S.D.N.Y. Mar. 3, 2023) ......................................... 18

*Shin v. Umeken, U.S.A., Inc.*,
    2017 U.S. Dist. LEXIS 222372 (C.D. Cal. June 1, 2017) ........................................ 41

*Siriano v. Goodman Mfg. Co., L.P.*,
    2015 U.S. Dist. LEXIS 191458 (S.D. Ohio Aug. 18, 2015) ................................... 38

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
    564 F. Supp. 2d 833 (N.D. Ill. 2008) ........................................................... 4, 10, 12

*Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc.*,
    2022 U.S. Dist. LEXIS 153434 (S.D.N.Y. Aug. 23, 2022) ....................................... 5

*Taylor v. P&G*,
  2023 U.S. Dist. LEXIS 144643 (S.D. Ill. Aug. 17, 2023) ........................................ 12

*Wach v. Prairie Farms Dairy, Inc.*,
  2022 U.S. Dist. LEXIS 90233 (N.D. Ill. May 19, 2022) .......................................... 11

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) .......................................................... 37, 39, 40

*White v. Beech-Nut Nutrition Co.*,
  2024 U.S. App. LEXIS 1145 (2d Cir. Jan. 18, 2024) .............................................. 28

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ...................................................................................... 3

*Willoughby v. Abbott Labs.*,
  2023 U.S. Dist. LEXIS 88882 (N.D. Ill. May 22, 2023) ............................... 24, 26, 27

## Statutes

15 U.S.C. § 2301 ...................................................................................................... 42, 43

15 U.S.C. § 2310 ................................................................................................ 38, 41, 43

15 U.S.C. § 2311 ...................................................................................................... 38, 41

21 C.F.R. § 101.100(a)(3) ............................................................................................... 8

21 U.S.C. § 343-1(a) ..................................................................................................... 16

28 U.S.C. § 1332(d)(2) .................................................................................................. 39

810 Ill. Comp. Stat. 5/2-313 .......................................................................................... 12

810 Ill. Comp. Stat. 5/2-314 ..................................................................................... 10, 11

815 Ill. Comp. Stat. 505/2 ............................................................................................... 3

Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ........................ 39

Magnuson-Moss Warranty Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) ................. 39

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353
  (21 U.S.C. § 343-1 note) ............................................................... 14, 17, 18, 23, 42

## Other Authorities

136 Congressional Record, 101st Congress, 2nd Session at 20419 (July 30, 1990) .................... 14

H.R. Rep. No. 101-538 (1990) ........................................................................................ 34

## I.    Introduction

Defendant LesserEvil manufactures and sells a product called Lil' Puffs, marketed as a clean and safe snack for toddlers.  Despite these claims, Lil' Puffs are contaminated with hazardous amounts of lead, a toxic substance that poses significant risks to children's health. LesserEvil has known that Lil' Puffs contain lead since at least 2021.  Yet it has continued to market and sell Lil' Puffs as suitable for toddlers, and it has never disclosed to consumers that they are contaminated with lead.

Plaintiff Elise Augustine regularly purchased Lil' Puffs for her toddler, believing them to be safe.  She did not know that they were contaminated with hazardous amounts of lead, because LesserEvil did not disclose that fact.  If she had known the truth, she would not have purchased Lil' Puffs or fed them to her toddler.  She brought this putative class action to hold LesserEvil accountable for its deceptive marketing of unsafe products and to compensate consumers for their purchases of unsafe food products.

Courts in the Second Circuit and elsewhere have recently considered similar consumer class actions regarding lead contamination in food products.  *See, e.g.*, *In re Lindt Sprüngli (USA), Inc.*, 2024 U.S. Dist. LEXIS 160836 (E.D.N.Y. Sep. 6, 2024) (lead in chocolate bars); *Levy v. HU Products LLC*, 2024 U.S. Dist. LEXIS 37487 (S.D.N.Y. Mar. 1, 2024) (same). These courts have held that materially identical allegations state claims for breach of consumer protection statutes and breach of express and implied warranties.  They have rejected the same arguments that LesserEvil makes here: that consumers were not misled because lead is ubiquitous and unavoidable, that marketing statements were inactionable "puffery," that the claims were preempted by the Food, Drug, and Cosmetic Act (FDCA) and fell under the Food and Drug Administration's (FDA) primary jurisdiction, and that consumers lacked standing because they did not test the products that they themselves purchased.

LesserEvil's arguments for dismissal fail here for the same reasons, and its motion to dismiss should be denied.  LesserEvil cannot be permitted to escape liability after knowingly selling toxic children's food to unsuspecting parents for years.

## II.   Plaintiff plausibly alleges that she was misled and adequately pleads each of her claims.

LesserEvil argues that Plaintiff's claims are inadequately pleaded because "she does not allege that any supposedly false statement by LesserEvil misled her."  Mot. 11.  LesserEvil does not address Plaintiff's claims individually.  Rather, it asserts generally that this purported "failure to plausibly allege a false or misleading statement is fatal to all of Plaintiff's claims."  Mot. 12. This is the only argument that LesserEvil makes with respect to whether Plaintiff's claims are adequately pleaded.  Mot. 11-15.  And it fails with respect to each claim, for the reasons explained below.[1]

### A.   Plaintiff adequately pleads her Illinois Consumer Fraud and Deceptive Business Practices Act claim.

A plaintiff adequately pleads an Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) claim by alleging: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce."  *Davis v. Angelcare USA, LLC*, 2024 U.S. Dist. LEXIS 57576, at *71 (D. Conn. Mar. 29, 2024) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)).

LesserEvil's challenge goes only to the first element—i.e., because Plaintiff did not allege a false or misleading statement, she has not alleged a deceptive or unfair act.  Mot. 11-15.

---

[1] Plaintiff withdraws her claim under the Connecticut Unfair Trade Practices Act without prejudice.

2

This challenge fails.  Plaintiff adequately alleges that LesserEvil's conduct was both deceptive and unfair.

Conduct is deceptive if it "creates a likelihood of deception or has the capacity to deceive."  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quotation omitted).  "Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception."  *Id.* (citation omitted).

Under the statute's plain text, deceptive conduct includes both "misrepresentation" and "suppression or omission of any material fact."  815 Ill. Comp. Stat. 505/2; *see Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. 2001) ("omission or concealment of a material fact" constitutes consumer fraud under ICFA).  For that reason alone, LesserEvil's argument that a "failure to plausibly allege a false or misleading statement is fatal" fails.  Mot. 12.  Plaintiff need not allege a false or misleading statement, because the omission of a material fact is sufficient to state a claim under ICFA.  *See, e.g.*, *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (plaintiff adequately alleged ICFA claim where "defendant knew or should have known that lead was an ingredient and . . . failed to disclose this fact to consumers").

Plaintiff alleges an omission of a material fact.  LesserEvil was "aware of the lead contamination risk" of its products.  Compl. ¶ 28; *see id*. ¶¶ 25-27 (describing how LesserEvil was made aware of this risk).  Yet LesserEvil's "packaging did not disclose that the Product had lead, or provide any warning that the Product might contain lead."  Compl. ¶ 30.  LesserEvil "omitted this information, and intended that consumers would rely on the omission."  Compl. ¶ 68.

This omission was material.  A fact is material if "a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be

3

expected to rely in making a decision [regarding] whether to purchase the product." *Lipinski*, 759 N.E.2d at 70 (quoting *Perona v. Wolkswagen of Am., Inc.*, 684 N.E.2d 859, 866 (Ill. 1997)). The complaint plausibly alleges that whether "a product intended for consumption as kids snacks contains lead, or may contain lead, is material to reasonable consumers." Compl. ¶ 18. Lead is toxic, and is especially harmful to children. Compl. ¶¶ 1-2, 11-12 (explaining how lead is hazardous to human health). So whether a children's food product contains lead is information that would affect a reasonable consumer's purchasing decision, because reasonable consumers do not wish to expose themselves or their children to toxic materials.

In similar cases, courts have found allegations that "the lead content of [the food product] is important to consumers and likely to affect their choice of product" sufficient to allege materiality. *In re Lindt Sprüngli (USA), Inc.*, 2024 U.S. Dist. LEXIS 160836, at *15 (E.D.N.Y. Sep. 6, 2024) (quotation omitted); *Levy v. HU Products LLC*, 2024 U.S. Dist. LEXIS 37487, at *14 (S.D.N.Y. Mar. 1, 2024). And that was true even where the lead levels were merely "trace amounts" that were "substantially below the thresholds set by regulators." *Lindt Sprüngli*, 2024 U.S. Dist. LEXIS 160836, at *15; *see Levy*, 2024 U.S. Dist. LEXIS 37487, at *14. Here, materiality is even stronger because the lead levels of LesserEvil's products "excee[d] the maximum allowable daily dose level set by the state of California," Compl. ¶ 19, and are between five and seventeen times more than the FDA's proposed maximum "action levels" for lead, *compare* Hritz Decl., Ex. A at 10 (proposing action levels of 10-20 parts per billion), *with* Compl. ¶ 19 (July 2024 laboratory test showed that a serving of one Lil' Puffs sample contained 346.793 parts per billion); Decl. of Stephen D. Andrews, Ex. A (July 2024 laboratory test results showing a serving of the least contaminated sample of Lil' Puffs contained 106.348 parts per

billion).[2]

Moreover, LesserEvil's omission of this information did in fact affect Plaintiff's purchasing decision: Plaintiff "would not have purchased the Products if she knew that the Products contained lead." Compl. ¶ 33. So Plaintiff adequately pleads an ICFA claim based on an omission of a material fact.

LesserEvil asserts that "there is no legal requirement that LesserEvil identify the amount of ambient lead in its products." Mot. 13. It calls this "a made-up rule." *Id.* But ICFA is not made up. It is a real statute with real prohibitions. And it prohibits manufacturers from omitting information material to consumers—including that food products contain hazardous amounts of lead.

Plaintiff also adequately pleads an ICFA claim based on LesserEvil's affirmative misrepresentations. Compl. ¶ 67. LesserEvil affirmatively markets its products as "kids snacks" and states that they are for "toddler[s]. *Id.* ¶ 13; *see id.* ¶ 14 (marketing states that products are "air-puffed healthy snacks for kids" and that they are "simply made with a blend of seven wholesome vegetables so you and your toddlers can (super) power through the day").

These affirmative statements represent that LesserEvil's food products are safe for consumption by children. Courts have held that nearly identical statements support consumer deception claims when products are not in fact safe. For example, "it is likely that naming . . . water bottles 'Contigo Kids' would mislead a reasonable consumer into believing they were safe for children." *Mirza v. Ignite USA, LLC*, 439 F. Supp. 3d 1058, 1072 (N.D. Ill. 2020) (denying

---

[2] The Complaint makes a "clear, definite, and substantial reference" to the July 2024 laboratory test results, so those results are "incorporated by reference into the complaint." *Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc.*, 2022 U.S. Dist. LEXIS 153434, at *2 n. 2 (S.D.N.Y. Aug. 23, 2022) (citations omitted). If the Court holds that more detail is required in the four-corners of the Complaint, Plaintiff should be given leave to amend. *See Meyer v. Seidel*, 89 F.4th 117, 139 (2d Cir. 2023) (leave to amend should be freely given).

motion to dismiss consumer protection claims).  As another example, "use of the words 'baby powder,'" and statements that a product has "been designed for baby's unique and delicate skin" and is "[g]reat for kids and adults too," "may suggest to a reasonable consumer the product is safe."  *Gutierrez v. Johnson & Johnson Consumer, Inc.*, 2020 U.S. Dist. LEXIS 83556, at *30 (S.D. Cal. Apr. 27, 2020).

In addition, LesserEvil's packaging states that the products are "Clean Label Certified," which tells consumers that they "'can trust that we've taken every measure to ensure it's a safe and high-quality product' that has passed 'rigorous third-party testing.'"  Compl. ¶ 15.  This further represents that the products are safe for consumption.

LesserEvil argues that Plaintiff has not alleged a misrepresentation because "LesserEvil does not state anywhere on its labels that its products are free of lead."  Mot. 11.  It asserts that the "word 'kid' is a general term that says nothing about the presence or absence of ambient lead."  Mot. 13.  This is a strawman argument.  Although "kids snacks" and similar phrases do not specifically address lead, they do represent to consumers that the product is safe for children. *See Mirza*, 439 F. Supp. 3d at 1072; *Gutierrez*, 2020 U.S. Dist. LEXIS 83556, at *30.  And a product is not safe for children if it contains hazardous amounts of lead.

LesserEvil also argues that "given the ubiquity of lead in our environment, it is implausible Plaintiff believed 'kids' meant 'free of lead.'"  Mot. 13; *see* Mot. 14-15 (making this same argument).  Courts in this Circuit have rejected this exact argument.  *See Lindt Sprüngli*, 2024 U.S. Dist. LEXIS 160836, at *15 (rejecting argument that omissions were not material "[b]ecause lead and cadmium are unavoidable in the food supply"); *Levy*, 2024 U.S. Dist. LEXIS 37487, at *14 ("[T]he Court declines to find that the reasonable consumer would not assume that [the food product] was lead-free.").  It is plausible that consumers who purchase food products marketed for children do not believe that those products contain toxic lead—much less at the

6

levels of LesserEvil's products.[3]

Finally, LesserEvil contends that its representations are non-actionable "puffery" because they "cannot be objectively tested." Mot. 13. "[O]nly exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely constitute puffery." *Lindt Sprüngli*, 2024 U.S. Dist. LEXIS 160836, at \*16 (quotation omitted). And representations that a food is safe go beyond puffery. *See, e.g.*, *id.* (representations were "not puffery because a reasonable customer could interpret Lindt's statements as representations about . . . an absence of lead"); *Mirza*, 439 F. Supp. 3d at 1070-71 (rejecting argument that "Contigo Kids" was "not subject to a true or false measurement" because it represented that the products were "safe for children"); *Leppert v. Champion Petfoods USA Inc.*, 2019 U.S. Dist. LEXIS 7585, at \*24 (N.D. Ill. Jan. 16, 2019) (in lead case, statements that cat food would keep a cat "healthy, happy and strong" went "beyond mere puffery because they convey the cat food is nutritious and safe"); *Bietsch v. Sergeant's Pet Care Prods.*, 2016 U.S. Dist. LEXIS 32928, at \*11-12 (N.D. Ill. Mar. 15, 2016) ("Because Sergeant's packaging conveys to a consumer that the Pur Luv Treats are safe, . . . the representations cannot be said to be puffery.").[4] Moreover, the safety of LesserEvil's products can be—and has been—"objectively tested." Mot. 13. Those tests have found that the products contain hazardous amounts of lead. Compl. ¶ 19.

---

[3] LesserEvil's reliance on *Richburg v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023) is misplaced. *Richburg* found that an "only real <u>ingredients</u>" statement was not deceptive because reasonable consumers would not consider "migratory chemicals" to be an "ingredient," given the FDA's exclusion of such chemicals from its "ingredients" list. *Id.* at \*22-23 (emphasis added). Here, Plaintiff's claims are not based on any representations about "ingredients." They are based on representations about safety. Moreover, the FDA exclusion does not cover lead. 21 C.F.R. § 101.100(a)(3).

[4] LesserEvil relies on *Brown v. COTY, Inc.*, 2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023). But that case involved "aspirational company mission statements" on a website—not representations on packaging that food is safe for consumption. *Id.* at \*11.

Thus, Plaintiff adequately pleads that LesserEvil's conduct was deceptive in two different ways: because LesserEvil omitted a material fact, and because it misrepresented that its products were safe for consumption.

In addition, Plaintiff adequately pleads that LesserEvil's conduct was unfair.  The ICFA unfairness inquiry involves three considerations: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quotation omitted).  "A court may find unfairness even if the claim does not satisfy all three criteria." *Id.*  And here, Plaintiff alleges all three.  Compl. ¶ 69.

In *Benson*, the Seventh Circuit found that the plaintiff adequately alleged unfairness by alleging that a manufacturer "includ[ed] needless slack-fill in its chocolate boxes, and that this amounted to a misrepresentation of the quantity of chocolate within."  944 F.3d at 647.  This "seriously injure[d] consumers by making them believe that they [were] receiving more chocolate than the actual amount within each box." *Id.*  Here, Plaintiff's allegations are even more unfair and injurious.  Consumers who are misled by LesserEvil's representations and omissions will not just be left with less chocolate; their children will have consumed toxic lead at levels far exceeding what regulatory bodies consider acceptable.  So Plaintiff states an ICFA claim on this basis as well.

**B.      Plaintiff adequately pleads her implied warranty claim.**

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale." 810 Ill. Comp. Stat. 5/2-314(1).  Goods are unmerchantable if they are not "fit for the ordinary purposes for which such goods are used."  810 Ill. Comp. Stat. 5/2-314(2)(c).  Accordingly, all that is required to allege a breach of the implied warranty of merchantability is that the product is not fit for its ordinary purpose. *See, e.g.*, *Albrosco Ltd. v. Prince Agri Prods.*, 545 F. Supp. 3d

8

656, 663 (C.D. Ill. 2021) (plaintiff "stated a claim for breach of the implied warranty of merchantability" by alleging that products "were not fit for the ordinary purpose").

A product is not fit for its ordinary purpose if it is not safe to use for that purpose. *See, e.g.*, *Stella*, 564 F. Supp. 2d at 836 (lipstick unmerchantable where it contained "dangerous levels of lead" such that it was "not safe" to use); *Lindt Sprüngli*, 2024 U.S. Dist. LEXIS 160836, at *30 ("chocolate bars 'were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals' unsafe for consumption"). Here, the ordinary purpose of LesserEvil's products is to be consumed by children. Compl. ¶ 3 ("Defendant's Products are snacks intended for consumption by children."); Mot. 14 (conceding that its products are "for young kids"). And the products are unsafe for that purpose because they contain hazardous amounts of lead, a toxic metal that is particularly dangerous for children. Compl. ¶¶ 1-3, 11-12, 19. LesserEvil therefore breached the implied warranty of merchantability.

LesserEvil argues that Plaintiff's implied warranty claim "turn[s] on whether the marketing presentation was deceptive." Mot. 12 (quotation omitted). This argument fails for two reasons. First, as described above, LesserEvil's conduct *was* deceptive because it misrepresented that its food was safe for kids and failed to disclose the hazardous amount of lead. *Supra* § II.A.

Second, LesserEvil's argument misunderstands the nature of Plaintiff's implied warranty claim. This claim is not based on any deceptive statement or omission, but rather on the sale of a product that was not fit for its ordinary purpose. LesserEvil admits that the ordinary purpose of its products are snacks for children. Mot. 14. They are unfit for that purpose because they contain hazardous amounts of lead, rendering them unsafe for children to eat. This claim does not turn on any deceptive act by LesserEvil; it turns on LesserEvil's sale of a product that is

9

unsafe for its intended purpose.  Notably, the Illinois implied warranty statute contains a *different* way that products can be unmerchantable, which is if they fail to "conform to the promises or affirmations of fact made on the container or label."  810 Ill. Comp. Stat. 5/2-314(2)(f).  In such a case, the failure to allege a false affirmation of fact would be fatal.  *Cf. Wach v. Prairie Farms Dairy, Inc.*, 2022 U.S. Dist. LEXIS 90233, at *15-16 (N.D. Ill. May 19, 2022) (conclusion that labeling was not false or misleading was "fatal" to implied warranty claim based on "affirmations of fact" on the label).[5]  Here, however, LesserEvil's products are unmerchantable because they are unsafe.  *See, e.g.*, *Stella*, 564 F. Supp. 2d at 836.

### C.    Plaintiff adequately pleads her express warranty claim.

Under Illinois law, an express warranty is created by "[a]ny description of the goods" or "[a]ny affirmation of fact or promise" that becomes "part of the basis of the bargain."  810 Ill. Comp. Stat. 5/2-313(1)(a)-(b).  "It is not necessary . . . that the seller use formal words such as 'warrant' or 'guarantee' or that [it] have a specific intention to make a warranty."  810 Ill. Comp. Stat. 5/2-313(2).

Here, as described above, LesserEvil's description of the goods and affirmations of fact represented to consumers that its products were safe for consumption by children.  *Supra* § II.A.  That became part of the bargain.  When Plaintiff "purchased the Products, Plaintiff relied on the fact that they were safe for consumption and that they did not contain lead."  Compl. ¶ 33.  "She would not have purchased the Products if she knew that the Products contained lead."  *Id.*  So

---

[5] In *Taylor v. P&G*, 2023 U.S. Dist. LEXIS 144643 (S.D. Ill. Aug. 17, 2023), cited by LesserEvil, the implied warranty claim similarly turned on the defendant's allegedly false affirmations.  The plaintiff alleged that the defendant misrepresented that its shaving cream contained only "PURE" ingredients and had more than a negligible amount of "aloe," but did not allege "that the Product was capable of causing harm."  *Id.* at *2-4, *13-14.  So without the alleged misrepresentations, the product was not unmerchantable.

Defendant's representations about the products' safety were part of the bargain, and created an express warranty. Defendant breached that warranty because the products were not in fact safe.

### D.    Plaintiff adequately pleads her Magnuson-Moss Warranty Act claim.

The Magnuson-Moss Warranty Act (MMWA) "allows a consumer to recover damages under existing state law" and thus "claims under the [MMWA] stand or fall with the express and implied warranty claims under state law." *Kail v. Wolf Appliance, Inc.*, 2017 U.S. Dist. LEXIS 133280, at *17 (E.D.N.Y. Aug. 21, 2017). Because Plaintiff states claims for breach of express and implied warranty, she states claims under the MMWA. *Supra* §§ II.B-C.

### E.    Plaintiff adequately pleads her quasi-contract claim.

"All a plaintiff need establish in an unjust enrichment action is that there be unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience." *Knapp v. McCoy*, 548 F. Supp. 1115, 1118 (N.D. Ill. 1982) (quotation omitted). Plaintiff alleges that she conferred a benefit on LesserEvil "by purchasing defective Products." Compl. ¶ 120. And LesserEvil's retention of that benefit is unjust because, based on LesserEvil's representations and omissions, Plaintiff "believed that the Products were fit for human consumption" and "did not know that the Products contained lead, or risked being contaminated by lead." *Id.* ¶ 119. "It would be inequitable for [LesserEvil] to retain this benefit" after misrepresenting the safety of its products and failing to disclose that they contain hazardous amounts of lead. *Id.* ¶ 123.

### III.    The FDCA does not preempt Plaintiff's claims.

LesserEvil contends that Plaintiff's claims are expressly and impliedly preempted by the FDCA, as amended by the Nutrition and Labeling Education Act (NLEA). LesserEvil is wrong.

"[E]very preemption case starts with the presumption that Congress did not intend to displace state law." *N.Y. Pet Welfare Ass'n v. City of N.Y.*, 850 F.3d 79, 86 (2d Cir. 2017). This

11

presumption "is especially strong in areas where states traditionally wield police powers." *Id.* And "laws regulating the proper marketing of food[] are traditionally within states' historic police powers." *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 554 (W.D.N.Y. 2018) (quotation omitted). LesserEvil bears the "heavy burden" of overcoming this presumption against preemption. *N.Y. Pet Welfare*, 850 F.3d at 86. It must show that Congress had the "clear and manifest purpose" to preempt the state regulation at issue. *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (quotation omitted). It has not done so here.

In the NLEA, Congress explicitly limited the scope of federal preemption. It stated that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343-1(a)]." *Id.* (quoting Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (21 U.S.C. § 343-1 note)).

Plaintiff's claims are not expressly preempted under section 343-1(a). And they are not impliedly preempted either—nor could they be, given Congress's clear statement that only express preemption is sufficient under the NLEA.

### A. The FDCA does not expressly preempt Plaintiff's claims.

Preemption under section 343-1(a) applies to "certain specifically enumerated sections of the FDCA." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280 (S.D.N.Y. 2014). It applies only to state-law requirements that are "of the type" of these "certain FDCA provisions." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014). If a state-law requirement addresses a different issue than the specifically listed FDCA provisions, it is not preempted. *See Ashour v. Ariz. Bevs. USA LLC*, 2020 U.S. Dist. LEXIS 171505, at *8 (S.D.N.Y. Sep. 18, 2020) ("[P]reemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.") (quotation omitted). A defendant claiming NLEA preemption must therefore show that the plaintiff's claims fall within one of the specifically

12

listed provisions in section 343-1(a).  *See Davis v. Schwan's Consumer Brands, Inc.*, 2024 U.S.

Dist. LEXIS 134923, at *6 (S.D.N.Y. July 30, 2024) (defendant claiming NLEA preemption

"must explain how the state law claim is different from or imposes additional obligations to a

specific FDCA provision").

LesserEvil fails to do so.  It does not even identify any listed provision—let alone show

that it addresses the disclosure of hazardous amounts of lead.  Mot. 16-20 (failing to identify any

specifically listed provision in section 343-1(a)).  LesserEvil's preemption argument fails for this

reason alone.  *See Davis*, 2024 U.S. Dist. LEXIS 134923, at *6 (defendant fails to carry burden

when it "has not specified which section of the FDCA or the FDA's implementing regulations is

inconsistent with state law").

Moreover, LesserEvil cannot show that Plaintiff's claims fall within one of the

specifically listed provisions.  Those provisions do not address safety warnings about hazardous

materials.  *See Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 799-800 (N.D. Cal. 2015);

*Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1187-88 (S.D. Cal. 2015).[6]  In fact, Congress

specifically stated that the preemption provision "shall not be construed to apply to any

requirement respecting a statement in the labeling of food that provides for a warning concerning

the safety of the food or component of the food."  Pub. L. No. 101-535, § 6(c)(2) (21 U.S.C. §

343-1 note).[7]  So the NLEA does not preempt state laws "requiring food safety warnings."

---

[6] The listed provisions, for example, require that "artificial coloring be labeled," require that labels bear "the common or usual name of the food," and allow "multiple spices, flavorings, or colorings to be designated as spices, flavorings, or colorings without naming each."  *Sciortino*, 108 F. Supp. 3d at 799 (citing 21 U.S.C. § 343-1(a) and certain listed provisions).

[7] In its statement of intent, Congress noted that this clarification "may be unnecessary because section 403 [*i.e.* 21 U.S.C. § 343, the misbranding provision subject to the express preemption provisions of the NLEA] *does not require health warnings* and therefore, by the terms of section 403A [*i.e.* 21 U.S.C. § 343-1(a), the preemption provisions added by the NLEA], state laws requiring health warnings would not be preempted."  *Sciortino*, 108 F. Supp.

13

*Sciortino*, 108 F. Supp. 3d at 801.

Accordingly, courts consistently reject arguments that the NLEA preempts claims for failing to warn about hazardous materials in food products—including lead specifically. *See, e.g.*, *Krystofiak v. BellRing Brands, Inc.*, 2024 U.S. Dist. LEXIS 106364, at *14-16 (N.D. Cal. June 14, 2024) (FDCA did not preempt claims for deceptively marketing protein shakes as "healthy" while failing to disclose presence of lead); *Balistreri v. McCormick & Co.*, 2023 U.S. Dist. LEXIS 162583, at *19-22 (N.D. Cal. Sep. 13, 2023) (FDCA did not preempt claims for failing to disclose lead and other heavy metals in herbs and spices); *Cortina*, 94 F. Supp. 3d at 1188 (FDCA did not preempt claims for failing to disclose potential carcinogens in soft drinks).

Plaintiff's claims are of exactly this type. Plaintiff alleges that LesserEvil markets its snack products as safe for consumption by children and fails to disclose that those products contain hazardous levels of lead. Compl. ¶¶ 14-28. Plaintiff's claims are therefore based on LesserEvil's failure to include "a warning concerning the safety of the food or component of the food"—the precise type of requirement that Congress expressly stated is not preempted. Pub. L. No. 101-535, § 6(c)(2) (21 U.S.C. § 343-1 note).

Thus, Plaintiff's claims do not fall into any of the specifically listed provisions in section 343-1(a). To the contrary, Congress specifically excluded them from the preemption provision's scope. Therefore, they are not expressly preempted.

LesserEvil's express preemption argument also fails for another reason. Claims that labels are "'false or misleading,' which arise under 21 U.S.C. § 343(a)(1), are not covered by the NLEA's express pre-emption provision." *Seljak v. Pervine Foods, LLC*, 2023 U.S. Dist. LEXIS

---

3d at 801 (alterations and emphasis in original) (quoting 136 Congressional Record, 101st Congress, 2nd Session at 20419 (July 30, 1990)). The *Sciortino* court also analyzed the legislative history of this provision, concluding that it "supports a broad construction" of the exemption. *Id.* at 803.

14

36111, at *25 (S.D.N.Y. Mar. 3, 2023).  Here, Plaintiff alleges that LesserEvil's labels are false

and misleading because they represent that its snack products are safe for consumption by

children, when in fact they contain hazardous amounts of lead.  These "state law claims that the

labeling of the Products was false and misleading are not preempted."  *Id.* at *25-26 (quotation

omitted).

 **B.**  **The FDCA does not impliedly preempt Plaintiff's claims.**

 LesserEvil's implied preemption argument fails for multiple reasons.

 To begin, "[t]he NLEA explicitly forecloses the possibility that state law would be

impliedly preempted."  *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 509 F. Supp. 2d 351, 355

(S.D.N.Y. 2007); *see Ashour*, 2020 U.S. Dist. LEXIS 171505, at *9 (implied preemption

argument "fails" because Congress explicitly required express preemption).  State-law

requirements are not preempted "unless such provision is *expressly preempted* under [section

343-1(a)]."  *N.Y. State Rest. Ass'n*, 556 F.3d at 123 (quoting Pub. L. No. 101-535, § 6(c)(1), 104

Stat. 2353, 2364 (21 U.S.C. § 343-1 note)).  LesserEvil's implied preemption argument therefore

fails out of the gate.

 Moreover, LesserEvil fails to establish any sort of implied preemption.  Implied

preemption comes in two types: "conflict" and "field."  *Figueroa v. Foster*, 864 F.3d 222, 228

(2d Cir. 2017).  LesserEvil relies only on conflict preemption; it does not argue that field

preemption bars Plaintiff's claims.  Mot. 16-20.[8]

---

 [8] Any argument based on field preemption would fail.  Field preemption exists only
"where Congress has legislated so comprehensively that federal law occupies an entire field of
regulation and leaves no room for state law."  *Figueroa*, 864 F.3d at 227.  As described above,
Congress expressly left room for states to regulate food labels outside of the specifically listed
areas in section 343-1(a).  So "[t]here is no dispute that implied field preemption is inapplicable"
to consumer deception claims based on food labels.  *Ackerman v. Coca-Cola Co.*, 2010 U.S.
Dist. LEXIS 73156, at *49 n. 24 (E.D.N.Y. July 21, 2010); *see Lockwood v. Conagra Foods,*

To establish conflict preemption, LesserEvil must show that "compliance with both federal and state regulations is a physical impossibility" or that "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013) (quotation omitted). LesserEvil does not clarify which of these types of conflict preemption it alleges.

Nor does LesserEvil identify any FDCA provision or FDA regulation that conflicts with Plaintiff's claims. That is because no such law or regulation exists. "The FDA . . . has not set regulated lead levels for the products at issue, and without such a standard, state law is not preempted." *Krystofiak*, 2024 U.S. Dist. LEXIS 106364, at *16; *see Balistreri*, 2023 U.S. Dist. LEXIS 162583, at *22 ("The analysis here is made simple by the fact that the FDA has not imposed any requirements regulating Heavy Metals labeling on herbs and spices."); *In re Plum Baby Food Litig.*, 2022 U.S. Dist. LEXIS 25944, at *5 (N.D. Cal. Jan. 12, 2022) (rejecting conflict preemption argument in failure-to-disclose-lead case because defendant "fail[ed] to articulate any specific federal law or regulation with which plaintiffs' state law claims purportedly conflict"). Because LesserEvil "cannot show that the FDA regulated this subject matter, Plaintiff's claims are not preempted." *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 127-28 (S.D.N.Y. 2022).

Having failed to identify a law or regulation that conflicts with Plaintiff's claims, LesserEvil argues that conflict preemption applies because the FDA has *not* regulated lead content or label disclosures. It argues that the FDA "has *not* banned [lead] in children's food"

---

*Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) ("Congress has explicitly stated that it does not intend to occupy the field of food and beverage nutritional labeling; instead, it permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions.").

16

and has "not required warning labels or disclosures about the presence of ubiquitous lead on any food." Mot. 18-19. But the mere absence of federal regulation does not constitute a "clear and manifest" intent of Congress to preempt state regulation. *N.Y. State Rest. Ass'n*, 556 F.3d at 123. And that is especially so where—as here—Congress explicitly said that state regulation outside of specifically listed areas is not preempted. *Id.*

The Supreme Court has rejected the notion that "the absence of regulation itself constitutes regulation" for preemption purposes. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 286 (1995). "[T]he absence of a federal standard cannot implicitly extinguish state common law." *Id.* at 282; *see Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118, at *10 (S.D.N.Y. May 15, 2014) ("[S]tate claims . . . should not be preempted by the FDA's inaction.").

In the specific context of lead and other heavy metals, courts have rejected as "unpersuasive" arguments that "the FDA's failure to impose requirements equates to a ban on states enforcing their own consumer protection laws." *Balistreri*, 2023 U.S. Dist. LEXIS 162583, at *21; *see Krystofiak*, 2024 U.S. Dist. LEXIS 106364, at *16. As these cases recognize, there are many potential reasons for the absence of specific regulations in this area— none of which "equate to a clear and manifest intention to preempt state law in this field." *Balistreri*, 2023 U.S. Dist. LEXIS 162583, at *21.

LesserEvil also points to the FDA's "Draft Guidance" for "Action Levels for Lead in Food Intended for Babies and Young Children." Mot. 18-19 (citing Hritz Decl., Ex. A). This reliance is misplaced for multiple reasons.

To begin, "non-binding guidance is not entitled to preemptive effect." *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *32 (E.D.N.Y. Aug. 29, 2013) (rejecting conflict preemption argument based on FDA's non-binding guidance on the meaning of "natural"). LesserEvil cites a Third Circuit case for the proposition that conflict preemption can sometimes

17

apply to "federal agency action taken pursuant to statutorily granted authority short of formal, notice and comment rulemaking." Mot. 17 (quoting *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 340 (3d Cir. 2009)). But that case makes clear that such actions—such as agency adjudications—must still carry "the force of law." *Holk*, 575 F.3d at 340. And it held that "FDA policy statement[s]" and "letter[s]" do not carry "the force of law required to preempt conflicting state law." *Id.* at 342.

Here, the FDA has not even issued the type of informal policy guidance that these cases held inadequate. LesserEvil cites only "Draft Guidance," which expressly states that it contains "Nonbinding Recommendations" and that it is a "Draft-Not for Implementation." Hritz Decl., Ex. A at 1. This draft guidance does not carry preemptive effect.

Moreover, LesserEvil fails to explain how Plaintiff's claims actually conflict with the draft guidance. The draft guidance contains proposed (non-binding) action levels for lead of 10-20 parts per billion. *Id.* at 10. Though "not binding," "these action levels reflect levels of lead at which FDA may regard the food as adulterated." *Id.* at 11. Defendant's products contain lead at levels far exceeding these proposed action levels. For example, one test result showed that Defendant's products contained 346.793 parts per billion of lead—more than seventeen times the maximum proposed action level in the FDA's draft guidance. Compl. ¶ 19. So a state-law claim for failing to disclose these hazardous lead levels would not conflict with the FDA's draft guidance; it would be entirely consistent with it.

Finally, LesserEvil argues that allowing Plaintiff's claims to proceed would result in "a patchwork of potentially contradicting court orders in different cases across the country [that] would make it impossible for companies to comply." Mot. 20. LesserEvil does not offer any support for this assertion. It does not, for example, explain why most (if not all states) would not similarly prohibit misleading statements or omissions regarding food safety with respect to lead

18

content. More fundamentally, LesserEvil's argument fails because Congress explicitly intended for states to maintain the power to regulate food labels outside of certain enumerated topics—and specifically with respect to food safety warnings. Pub. L. No. 101-535, § 6(c)(1)-(2) (21 U.S.C. § 343-1 note). "Regulation of food and beverages is an area in which Congress has long expressed its awareness of state legislation and has consistently tolerated the states' competing interests and regulatory control." *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 617 (D. Vt. 2015) (rejecting the same argument LesserEvil makes here).

## IV.    The primary jurisdiction doctrine does not apply.

LesserEvil asks this Court to dismiss this case because the FDA has proposed nonbinding industry guidance about lead levels in food products. This Court should not do so.

"The federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 504 (2d Cir. 2022) (cleaned up). The primary jurisdiction doctrine is a "relatively narrow" exception to that rule. *Id.* (quotation omitted). It asks whether an agency should have "*initial* decisionmaking responsibility" such that a court should delay its decision until the agency has decided a "threshold issue[], usually of a factual nature." *Id.* at 505 (quotations omitted) (emphasis in original).

Courts in the Second Circuit consider four "*Ellis*" factors when addressing primary jurisdiction: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Id.* at 506 (quoting *Ellis v. Trib Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006)). In addition to these factors, courts must also "balance the advantages of applying the doctrine against the potential costs resulting from complications and

19

delay in the administrative proceedings." *Id.* (quoting *Ellis*, 443 F.3d at 83).

Earlier this year, another court in this Circuit held that the primary jurisdiction doctrine did not warrant the dismissal or stay of a case alleging deceptive marketing based on the lead content of food products. *See Levy v. HU Products LLC*, 2024 U.S. Dist. LEXIS 37487, at *20-23 (S.D.N.Y. Mar. 1, 2024). This is in accord with recent cases from other circuits declining to apply the primary jurisdiction doctrine to consumer deception claims regarding lead content in food. *See, e.g.*, *Balistreri*, 2023 U.S. Dist. LEXIS 162583, at *23 (rejecting primary jurisdiction argument that case "should not proceed because the FDA is currently investigating whether to implement regulations regarding the presence of Heavy Metals and other contaminants in the food supply"); *Willoughby v. Abbott Labs.*, 2023 U.S. Dist. LEXIS 88882, at *20-25 (N.D. Ill. May 22, 2023) (rejecting primary jurisdiction argument based on same "action plan" in case alleging undisclosed heavy metals in baby food). Here, like in these cases, each factor weighs against application of the primary jurisdiction doctrine.

(1) The question at issue is within the conventional experience of judges, and does not require technical expertise. This is a consumer deception case. The "central question in this case is whether [LesserEvil] has misled the reasonable consumer about the lead content of the Products—an inquiry 'to which courts are eminently well suited, even well versed.'" *Levy*, 2024 U.S. Dist. LEXIS 37487, at *21 (quoting *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *27). "Although the parties will likely litigate what amount of lead is safe to consume, 'this case is far less about science than it is about whether a label is misleading.'" *Id.* (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014)). Courts routinely decline to apply the primary jurisdiction argument to consumer deception cases involving hazardous materials on this basis. *See also, e.g.*, *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 U.S. Dist. LEXIS 55568, at *45-47 (S.D. Cal. Mar. 27, 2024)

20

(rejecting primary jurisdiction argument in lead case, and collecting other cases).

(2) The question at issue is not particularly within the FDA's discretion.  As just described, the issue in this case is whether LesserEvil's representations and omissions would mislead a reasonable consumer about the lead content of its products.  That is not a matter committed to the FDA's discretion.  It is a question about consumer deception that courts answer all the time.  *See Levy*, 2024 U.S. Dist LEXIS 37487, at *21; *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 U.S. Dist. LEXIS 55568, at *45-47 (collecting cases).  And even as to the issues that the FDA guidance will address, it is not binding.  *See* Hritz Decl., Ex. A at 3 (clarifying that "[t]his draft guidance, when finalized, . . . does not establish any rights for any person and is not binding on FDA or the public").  So even those issues are not particularly within the FDA's discretion.  The FDA's guidance "would simply provide evidence regarding the health risk of heavy metals," which this Court would consider along with other evidence.  *Willoughby*, 2023 U.S. Dist. LEXIS 88882, at *24.  And "[s]imilar disputes are regularly decided in the courts."  *Id.* (quotation omitted).

(3) There is no substantial danger of inconsistent rulings.  As the *Levy* court reasoned, "lawsuits against other manufacturers . . . will require individualized assessments of the packaging and marketing of their products."  *Levy*, 2024 U.S. Dist. LEXIS 37487, at *22.  Because whether a given manufacturer's marketing is deceptive is a fact-specific inquiry, there is little risk of inconsistent rulings.

(4) LesserEvil "does not argue that a prior application has been made to the FDA regarding lead" in children's food.  *Id*.

Thus, all four *Ellis* factors counsel against application of the primary jurisdiction doctrine.

The necessary balancing consideration also weighs against application of the primary

21

jurisdiction doctrine.  The advantages of applying the doctrine are minimal, because waiting for the final FDA guidance on lead action levels will not help this Court decide this case.  That is true for three reasons.

First, the proposed FDA guidance contains no input whatsoever on labeling requirements. It addresses only "action levels" for lead; it does not say anything about whether manufacturers must warn about lead content on the label, or whether other representations about the food's safety are misleading.  So the proposed guidance goes only to whether the levels of lead in Defendant's products are safe—not whether Defendant's advertising was misleading.  *See, e.g.*, *Krystofiak*, 2024 U.S. Dist. LEXIS 106364, at *17 (distinguishing between "FDA 'action levels' for heavy metals and product labeling").

Second, even with respect to the safety issue, waiting for the final guidance would not have any significant advantages.  As described above, Defendant's products contain between five and seventeen times the maximum amount of lead that the FDA proposed as an "action level." *Compare* Hritz Decl., Ex. A at 10 (proposing action levels of 10-20 parts per billion), *with* Compl. ¶ 19; Ex. A (one serving of Lil' Puffs contains between 106.348 and 346.793 parts per billion).  LesserEvil offers nothing to suggest that the action levels in the FDA's final guidance will increase by at least 500% from the proposed guidance.  So it is unlikely that the final guidance will materially impact the safety analysis for Defendant's products.

Third, as described above, even if issued, the FDA's final guidance "would be neither binding nor retroactive."  *Willoughby*, 2023 U.S. Dist. LEXIS 88882, at *24.  So this Court would still reach its own conclusions regarding the safety of Defendant's products.  *Id.*; *see Balistreri*, 2023 U.S. Dist. LEXIS 162583, at *24 ("[A]bsent evidence that the FDA is actively engaged in *rulemaking* that could impact Plaintiffs' claims, there are no efficiencies to be gained by dismissing or staying this case under the primary jurisdiction doctrine.") (emphasis in

original) (quotation omitted).

On the other hand, dismissing or staying this case pending the FDA's final guidance could result in substantial delay.  As the Second Circuit pointed out earlier this year, the FDA has previously "abandoned . . . announced timelines" for its final guidance on lead action levels. *White v. Beech-Nut Nutrition Co.*, 2024 U.S. App. LEXIS 1145, at \*4 (2d Cir. Jan. 18, 2024) (reversing application of primary jurisdiction doctrine on this basis).  So while December 2024 is not a long time to wait, it could be potentially much longer.  The minimal benefit that the final guidance would provide for this case does not warrant that risk.

This Court should follow the majority of courts to consider the issue and decline to dismiss or stay this case under the primary jurisdiction doctrine.

## V.    Plaintiff has Article III standing.

### A.    Plaintiff adequately alleges an economic injury-in-fact.

Under Article III, "a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).  Accordingly, "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *see John v. Whole Foods Mkt. Grp., Inc.,* 858 F.3d 732, 736 (2d Cir. 2017) ("[O]verpaying for a product results in a financial loss constituting a particularized and concrete injury in fact.").

Plaintiff alleges both types of injury.  She alleges that she "would not have purchased the Products if she knew that the Products contained lead."  Compl. ¶ 33.  As a result, she "suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct."  *Id.* ¶ 34.  And she also alleges that she "overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading

23

representations and omissions." *Id.* ¶ 58.  Courts in the Second Circuit consistently find such allegations sufficient to support standing.  *See, e.g.*, *Clinger v. Edgewell Pers. Care Brands, LLC*, 2023 U.S. Dist. LEXIS 41461, at *17 (D. Conn. Mar. 13, 2023) (standing where plaintiffs alleged "they would not have paid as much or anything for their sunscreen had the label warned of the risk of benzene contamination"); *Colpitts*, 527 F. Supp. 3d at 575 (collecting cases).

LesserEvil argues that Plaintiff lacks standing because she does not allege that "her toddler experienced elevated blood lead levels after consuming Lil' Puffs."  Mot. 25.  But this is not a personal injury case; it is an economic injury case.  As just described, paying for a product that the plaintiff would otherwise not have paid for (or would have paid less for) confers standing.

LesserEvil also argues that the "Complaint is devoid of any allegation that the Lil' Puffs that Plaintiff actually purchased contained lead."  Mot. 25.  It asserts that the "Complaint does not allege that all Lil' Puffs contain lead, nor does it allege that the testing was performed on Lil' Puffs from the same store or batch as the puffs Plaintiff had purchased."  Mot. 25.  Courts in the Second Circuit have squarely rejected these arguments in similar cases.

For example, in *Clinger*, a court in this district held that plaintiffs had standing to pursue claims based on the risk of benzene contamination of sunscreen.  2023 U.S. Dist. LEXIS 41461, at *9-13.  The plaintiffs did not allege that they tested "any of the sunscreen products that they personally bought," or that their purchased sunscreens "came from the same product lot as those found to be contaminated by . . . testing."  *Id.* at *9-10.  But this did "not mean that they lack standing."  *Id.* at *10.  That is because "a product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products."  *Id.* (citing *John v. Whole Foods Mkt. Grp., Inc.,* 858 F.3d 732 (2d Cir. 2017)).  It was "reasonable to assume that the same product line would involve the same manufacturing process and with the

24

same likelihood of residual benzene contamination even if not every batch is contaminated." *Id.* at *12.

Here, two independent studies tested LesserEvil's Lil' Puffs products and found that they contained high levels of lead. In June 2024, *Consumer Reports* tested five batches of Lil' Puffs and found that they were contaminated with lead. Compl. ¶ 27.[9]  The *Consumer Reports* study found that cassava flour—the main ingredient in Lil' Puffs—was the likely source of the lead contamination.[10]  Following the *Consumer Reports* study, LesserEvil announced that it would phase out the use of cassava flour in its Lil' Puffs products, saying it was "dismayed by the recent news" that its products contained concerning levels of lead.[11]

Then, in July 2024, an independent laboratory tested all three flavors of Lil' Puffs for lead. Compl. ¶ 19; Ex. A (test results). Each sample tested positive for lead. Compl. ¶ 19, Ex. A (test results). For each sample, the lead content of just one serving exceeded California's maximum allowable daily dose. Compl ¶ 19; Ex. A (test results). And the tests showed that one serving of each sample contained at least five times the maximum action level proposed by the FDA. Compl. ¶ 19; Ex. A (least contaminated sample contained 106.348 parts per billion of lead per serving); *see* Hritz Decl., Ex. A at 10 (maximum action level proposed by the FDA is 10-20 parts per billion).

Here, like in *Clinger*, it is "reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of [lead] contamination."

---

[9] *See* Lauren Kirchner, *Cassava-Based Puffs From Lesser Evil and Serenity Kids Contain High Levels of Lead*, Consumer Reports (June 5, 2024), https://www.consumerreports.org/health/food-safety/lesser-evil-serenity-kids-cassava-puffs-high-lead-levels-a2654657249/ (last accessed Nov. 15, 2024) (cited at Compl. ¶ 27 n. 22).

[10] Cassava is a root vegetable that accumulates lead in its root system. *Id.* Processing it into flour can concentrate the lead. *Id.*

[11] *Id.*

2023 U.S. Dist. LEXIS 41461, at *12.  Plaintiff purchased Lil' Puffs regularly between 2023 and 2024, and at least as late as May 17, 2024.  Compl. ¶ 29.  This was less than a month before *Consumer Reports* found Lil' Puffs to contain hazardous amounts of lead, and about two months before the independent laboratory testing found all three Lil' Puffs flavors to contain lead. Plaintiff's purchases were therefore "reasonably near in time to the testing" that found lead, which further supports the plausibility of Plaintiff's allegations.  *Clinger*, 2023 U.S. Dist. LEXIS 41461, at *12.  Moreover, the products Plaintiff purchased—like the tested batches— contained cassava flour, which was the reason for the lead contamination.  So it is certainly plausible that the Lil' Puffs that Plaintiff bought—like the tested batches—contained hazardous amounts of lead.

Another court in this Circuit has found materially identical allegations sufficient to allege standing.  In *Levy*, testing by *Consumer Reports* in December 2022 revealed traces of lead in the defendant's chocolate bars.  2024 U.S. Dist. LEXIS 37487, at *2.  The plaintiff had purchased the defendant's chocolate bars in September 2022—i.e., three months before *Consumer Reports*' testing.  *Id.* at *3.  The defendant made the same argument LesserEvil makes here: that the plaintiff had not shown that the chocolate *she* purchased contained an unsafe amount of lead.  *Id.* at *7.  The court rejected this argument.  *Id.* at *8-9.  Applying Second Circuit precedent, it held that the plaintiff had standing because it was "reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of residual [lead] contamination even if not every batch is contaminated."  *Id.* at *9 (quoting *Clinger*, 2023 U.S. Dist. LEXIS 41461, at *12).  This holding directly applies here.

By contrast, in the only in-circuit case LesserEvil cites, the complaint "fail[ed] to state when [the] independent testing was conducted," and therefore did not allege that such testing was "reasonably near in time" to the plaintiffs' purchases.  *Onaka v. Shiseido Ams. Corp.*, 2023

U.S. Dist. LEXIS 53220, at *13 (S.D.N.Y. Mar. 27, 2023) (distinguishing *Clinger* on this basis).

Nor did the plaintiffs provide any "facts from which the Court could extrapolate that their

isolated testing should apply broadly to Defendant's Products, regardless of when they were

purchased." *Id.* Here, as described above, and as in *Clinger* and *Levy*, Plaintiff alleges that she

purchased Lil' Puffs within weeks of the independent testing. Moreover, the products she

purchased contained the same ingredient (cassava flour) that caused the lead contamination,

which is strong evidence that the purchased products were also contaminated.[12]

LesserEvil also argues that "Plaintiff does not identify any other comparable, cheaper, or

safer products to show that she, in fact, paid a premium for Lil' Puffs." Mot. 26. This argument

goes only to Plaintiff's price-premium theory of standing. It does not apply to her theory that she

paid for products that she would not have purchased had she known they contained lead, a theory

which provides Plaintiff an independent basis for standing. *See Colpitts*, 527 F. Supp. 3d at 575.

Moreover, LesserEvil's argument fails even with respect to the price-premium theory.

In the Second Circuit, "a plaintiff is not required to point to *any* comparator products in

order to successfully allege a price premium theory of injury." *Brown v. Kerry Inc.*, 2021 U.S.

Dist. LEXIS 224980, at *11 n. 4 (S.D.N.Y. Nov. 22, 2021). "Although plaintiffs sometimes

point to comparators in support of a price premium claim, a plaintiff is not required to do so in

order to allege injury." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 110 (S.D.N.Y.

---

[12] LesserEvil's out-of-circuit cases are also inapposite because the allegations in those cases were materially different. *See Herrington v. Johnson & Johnson Consumer Cos.*, 2010 U.S. Dist. LEXIS 90505, at *19 (N.D. Cal. Sep. 1, 2010) (plaintiffs did "not allege that the levels of the substances in Defendants' products were unsafe"; expressly distinguishing case where plaintiffs "alleged that manufacturers produced toys with unsafe levels of lead"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018) (plaintiff "fail[ed] to even plead that she "would pay less for unsafe powder""); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 U.S. Dist. LEXIS 189822, at *34 n.13 (E.D. Va. Oct. 17, 2022) (plaintiffs "specifically disavow[ed] any allegation that the Baby Food Products are unsafe or otherwise unfit for sale and consumption").

2021) (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 352 (S.D.N.Y. 2020)); *see Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 94 (S.D.N.Y. 2022) ("Plaintiffs need not plead that level of detail in order to have standing."). Thus, "[n]umerous courts in this Circuit have found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations." *Colpitts*, 527 F. Supp. 3d at 575 (quotation omitted) (collecting cases). That is exactly what Plaintiff alleges here. Compl. ¶¶ 58, 73, 96, 109, 116.

Finally, Defendant makes two arguments that do not bear on Article III standing. Defendant argues that "Plaintiff fails to state which state law applies to her common law claims, which is an additional reason to dismiss them." Mot. 26. But the complaint establishes which law applies to Plaintiff's common law claims. Plaintiff resides in Illinois and purchased the Lil' Puffs in Illinois. Compl. ¶¶ 5, 29. So Illinois law applies to her common law claims. *See, e.g.*, *Levy v. GE*, 2015 U.S. Dist. LEXIS 159808, at *6 (D. Conn. Nov. 30, 2015) (in motion to dismiss consumer class action, "the Court will assume that the law of the state where each plaintiff resides applies"). That is sufficient at the pleading stage. *See, e.g.*, *id.*; *Mirza*, 439 F. Supp. 3d at 1066 ("[A] plaintiff's failure to specify which state's law applies to common law claims does not warrant dismissal, as it is likely that the laws of the plaintiff's state of residency will apply."); *Hedrick v. BSH Home Appliances Corp.*, 2024 U.S. Dist. LEXIS 87747, at *39 (C.D. Cal. May 14, 2024) ("[B]ecause [the complaints] expressly allege where each Plaintiff resides and where each Plaintiff purchased his or her [product], Plaintiffs have sufficiently shown which law applies to each claim.").

LesserEvil also argues that Plaintiff "fail[s] to fairly apprise LesserEvil of the charges against it" because the complaint does not specify "what LesserEvil Lil' Puffs product she purchased and what the results of testing of that product showed." Mot. 27. But the results of

the testing showed that *all three* flavors of Lil' Puffs contained hazardous amounts of lead. Compl. ¶ 19; *see* Ex. A (test results). And that makes sense, because all three flavors contain cassava flour. So this putative class action challenges all three flavors of LesserEvil's Lil' Puffs. *See* Compl. ¶ 3 (defining the challenged "Products" to include all "LesserEvil Lil' Puffs kids snacks"). And because all three are contaminated, Plaintiff suffered injury regardless which specific flavors she purchased.[13]

### B.    Plaintiff should be granted leave to amend to add allegations sufficient to confer standing to seek injunctive relief.

Courts in the Second Circuit "have concluded that plaintiffs have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future if it is altered." *Decoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 224 (N.D.N.Y. 2023). The current complaint does not make such allegations, and therefore Plaintiff concedes that she does not adequately allege standing to seek injunctive relief. But Plaintiff should be given leave to amend the complaint to add such allegations. *See Meyer*, 89 F.4th at 139 (leave to amend should be freely given). And that is especially true here, where LesserEvil has stated that it is going to reformulate its products to avoid using cassava flour—the reason for the lead contamination.[14] Absent an injunction, Plaintiff "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Decoursey*, 673 F. Supp. 3d at 224 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)).

### VI.    LesserEvil's additional arguments regarding the Magnuson-Moss Warranty Act claim fail.

The MMWA "allows a consumer to recover damages under existing state law" and thus

---

[13]If the Court holds that more detail is required, Plaintiff should be given leave to amend. *See Meyer*, 89 F.4th at 139 (leave to amend should be freely given).

[14] Kirchner, *supra* n. 9.

"claims under the [MMWA] stand or fall with the express and implied warranty claims under state law." *Kail*, 2017 U.S. Dist. LEXIS 133280, at *17. Because Plaintiff states a claim under the express and implied warranty laws of Illinois, she also states a claim under the MMWA. LesserEvil makes three additional arguments regarding the MMWA claim, but each of them fails.

### A.    This Court has jurisdiction under the Class Action Fairness Act.

LesserEvil contends that Plaintiff's MMWA claim should be dismissed because she does not meet the requirements for jurisdiction under the MMWA. Mot. 30-31. But Plaintiff brings this case under the Class Action Fairness Act (CAFA), and she indisputably meets the requirements for jurisdiction under CAFA. Compl. ¶ 8 (alleging this Court's jurisdiction under CAFA because "[t]he amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant").

Courts in the Second Circuit have split on whether CAFA provides an independent basis for jurisdiction over MMWA claims. *See Ostenfeld v. Laundress, LLC*, 2024 U.S. Dist. LEXIS 38442, at *31 (S.D.N.Y. Mar. 5, 2024) (recognizing split). Numerous courts in this Circuit (and elsewhere) hold that "where, as here, the jurisdictional prerequisites of CAFA are satisfied, [the Court] may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015); *see, e.g.*, *id.* at 293 (observing that "the vast majority of courts have held that, where its conditions are met, CAFA provides an alternative basis for jurisdiction without regard for the MMWA"); *Ostenfeld*, 2024 U.S. Dist. LEXIS 38442, at *32 (agreeing with this approach); *Manier v. L'Oreal U.S.A., Inc. (In re Amla Litig.)*, 2017 U.S. Dist. LEXIS 116139, at *34-35 (S.D.N.Y. July 17, 2017) (same). For four

reasons, these courts are correct.

First, the plain text of the MMWA's jurisdictional provision requires this result. That provision states: "No claim shall be cognizable *in a suit brought under* paragraph (1)(B) of this subsection" if certain requirements are not met. 15 U.S.C. § 2310(d)(3) (emphasis added). But here, Plaintiff "base[s] subject-matter jurisdiction on—and therefore *bring[s] suit 'under'*— CAFA, not the MMWA." *Ostenfeld, LLC*, 2024 U.S. Dist. LEXIS 38442, at \*31 (finding jurisdiction for MMWA claim under CAFA for this reason).

Second, the MMWA "contains a broad savings clause, which states that 'nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law.'" *Motor Vehicle Mfrs. Ass'n v. Abrams*, 899 F.2d 1315, 1319 (2d Cir. 1990) (quoting 15 U.S.C. § 2311 (b)(1)). So the MMWA itself states that it does not restrict consumers' ability to bring class actions in federal court under CAFA. *See Siriano v. Goodman Mfg. Co., L.P.,* 2015 U.S. Dist. LEXIS 191458, at \*44 (S.D. Ohio Aug. 18, 2015) (recognizing this and holding that MMWA claims could proceed under CAFA). For both these reasons, applying CAFA's jurisdictional grant to Plaintiff's MMWA claim is entirely consistent with the text of the MMWA.

Third, under controlling Second Circuit precedent, "when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent." *In re Ionosphere Clubs*, 922 F.2d 984, 991 (2d Cir. 1990). CAFA was enacted thirty years after the MMWA. *Compare* Magnuson-Moss Warranty Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) *with* Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005). So even if the MMWA and CAFA were in conflict, CAFA would control.

The history and text of the two statutes support this result. As numerous courts have

recognized, "CAFA effectively supercedes [sic] the MMWA's more stringent jurisdictional requirements." *Kuns v. Ford Motor Co*., 543 F. App'x 572, 574 (6th Cir. 2013) (collecting cases). CAFA's jurisdictional grant is "quite broad," granting jurisdiction over "'*any* civil action' that both satisfies the amount in controversy requirement and 'is a class action'" meeting certain criteria. *Weisblum*, 88 F. Supp. 3d at 293 (quoting 28 U.S.C. § 1332(d)(2)) (emphasis in original). So "[o]n its face, . . . the plain text of CAFA seems to authorize suits like the one here." *Id.* at 294. And that "conclusion is reinforced by the fact that CAFA contains several enumerated exceptions"—including specifically identified statutory provisions—but "does not . . . carve out the MMWA." *Id.* So "there is no basis to read an MMWA exception into CAFA that Congress itself chose not to include." *Id.*

Moreover, this result "furthers the purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations." *Id.* "Treating CAFA as an alternative basis for jurisdiction is consistent with [its] goal of expanding federal court jurisdiction over significant class actions." *Id.* At the same time, CAFA still protects the purpose of the MMWA's jurisdictional provisions to "avoid trivial or minor actions being brought as class actions in the federal district courts." *Id.* (quotation omitted). That is because "CAFA's own limitations—including its amount-in-controversy requirement, its required minimum number of class members, and the local controversy and home state exceptions—ensure that trivial and minor actions still cannot be brought as class actions in federal courts." *Id.*

Fourth, applying CAFA's jurisdictional provision avoids counterintuitive results. Precluding jurisdiction over MMWA claims "would do nothing to prevent federal class actions from raising the same issues via breach-of-warranty claims based on state law." *Ostenfeld*, 2024 U.S. Dist. LEXIS 38442, at *32. The state-law warranty claims would still proceed in federal court under CAFA jurisdiction, while the MMWA warranty claim would have to be brought in

32

state court. But this is "a counter-intuitive, if not non-sensical, result." *Id.* It would result in "piecemeal litigation, with state-law claims proceeding in federal court and federal-law claims proceeding in state court." *Id.*; *see, e.g.*, *Fed. Mar. Com. v. Caragher*, 364 F.2d 709, 715 (2d Cir. 1966) ("We would be reluctant to conclude that Congress intended such an unworkable and nonsensical result . . . .").

For all these reasons, this Court should join the courts that have held that class action plaintiffs can pursue MMWA claims under CAFA jurisdiction.

**B.      Section 2311(d) does not preclude Plaintiff's MMWA claim.**

The MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). LesserEvil contends that "[b]ecause the products at issue are subject to their own regulatory scheme (the FDCA), the MMWA cannot be used to attack label statements on the same products." Mot. 31. This argument fails for multiple reasons.

To begin, section 2311(d) applies only to "written warrant[ies]." An MMWA claim may be based either on a "written warranty" or an "implied warranty." 15 U.S.C. § 2310(d)(1). So Plaintiff's implied warranty claims are sufficient to support her MMWA claim, and section 2311(d) has no effect on MMWA claims based on an implied warranty. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 2015 U.S. Dist. LEXIS 3867, at *21 (C.D. Cal. Jan. 12, 2015) (section 2311(d) is "wholly inapplicable" to MMWA claims based on implied warranties); *Shin v. Umeken, U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 222372, at *23 (C.D. Cal. June 1, 2017) (refusing to dismiss an implied warranty claim under the MMWA because it was "not written"); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 572 (M.D. Tenn. 2020) (section 2311(d) argument was "moot" because plaintiffs based their MMWA claim on an implied warranty).

Moreover, Plaintiff's express warranty claims are not based on any statement governed

33

by the FDCA.  The applicable portion of the FDCA (the NLEA) "does not in any way regulate carcinogens or other, non-nutritive substances in foods."  *Sciortino*, 108 F. Supp. 3d at 801 (quoting H.R. Rep. No. 101-538, at 7 (1990)).  So the NLEA does not regulate the presence of lead.  Indeed, as described above, the preemption provision in the NLEA expressly excludes safety disclosures.  Pub. L. No. 101-535, § 6(c)(2) (21 U.S.C. § 343-1 note).  This shows that Congress intended to leave the regulation of statements involving the safety of food products to the states.

Finally, "[w]hether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case."  *Sandoval v. Pharmacare US, Inc.*, 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015); *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1105 (S.D. Cal. 2015) (same).

### C.   Plaintiff adequately pleads an actionable written warranty under the MMWA because LesserEvil's products are not "defect free."

LesserEvil argues that Plaintiff has not pleaded an actionable warranty because LesserEvil's statements do not guarantee "anything over a specified period of time."  Mot. 31. LesserEvil bases this argument on the MMWA's definition of "written warranty," which includes any "written affirmation" that a product is "defect free or will meet a specified level of performance over a specified period of time."  Mot. 31 (quoting 15 U.S.C. § 2301(6)(A)).

This argument, like the section 2311(d) argument, applies only to Plaintiff's written warranty claim—it is based on the definition of "written warranty."  It does not apply to Plaintiff's implied warranty claim.  *See* 15 U.S.C. § 2301(7) (defining "implied warranty" as "an implied warranty arising under State law").  And, as described above, Plaintiff's implied warranty claim is sufficient to support her MMWA claim.  15 U.S.C. § 2310(d)(1).

34

Moreover, LesserEvil's argument ignores the disjunctive nature of the definition of "written warranty."  A "written warranty" can be an affirmation that the product "is defect free **or** will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A) (emphasis added).  So a Plaintiff can establish a written warranty based on *either* a representation that the product is "defect free" *or* a representation that it will perform over a specified period of time.  *See, e.g.*, *Levin v. Johnson & Johnson*, 2019 U.S. Dist. LEXIS 101091, at *24-25 (E.D.N.Y June. 17, 2019) (allowing MMWA claim based on written warranty to proceed where plaintiff alleged that defendant's advertisements represented that its shampoo was "safe and effective for reasonably anticipated uses," with no allegations about any specific period of time).  Here, similarly, LesserEvil warranted that its product was "defect free" by representing that they were safe for reasonably anticipated uses—i.e., consumption by children.

## VII.    Conclusion.

LesserEvil's motion to dismiss should be denied.  Plaintiff should be given leave to amend where necessary.


Date: November 27, 2024                              Respectfully submitted,

                                                     By: */s/ Stephen D. Andrews*
                                                     Richard Lyon*
                                                     rick@dovel.com
                                                     Stephen D. Andrews*
                                                     stephen@dovel.com
                                                     DOVEL & LUNER, LLP
                                                     201 Santa Monica Blvd. Suite 600
                                                     Santa Monica, CA 90401
                                                     Telephone: (210) 656-7066
                                                     Facsimile: (310) 656-7069

                                                     Craig A. Raabe (ct04116)
                                                     IZARD, KINDALL & RAABE LLP
                                                     29 South Main Street, Suite 305
                                                     West Hartford, CT 06107

Telephone: (860) 493-6292
Facsimile: (860) 493-6290
craabe@ikrlaw.com

*Counsel for Plaintiff*

\*Admitted Pro Hac Vice

36