**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ELISE AUGUSTINE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LESSEREVIL LLC, <br><br> Defendant. | Case No: 3:24-CV-01309-OAW <br><br><br><br> October 4, 2024 |

### REPLY IN SUPPORT OF DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................................................II

INTRODUCTION ............................................................................................................... 1

I.      PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT SHE WAS
        DECEIVED...............................................................................................................2

II.     PLAINTIFF'S "PRICE PREMIUM" ARGUMENT IS IMPLAUSIBLE..........................4

III.    PLAINTIFF FAILS TO PROVE THE AMOUNT OF LEAD IN ANY
        PRODUCT THAT SHE SUPPOSEDLY BOUGHT.............................................4

IV.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF
        AND SHOULD BE DENIED LEAVE TO AMEND.......................................... 5

V.      THE MAGNUSON-MOSS WARRANTY ACT CLAIM SHOULD BE
        DISMISSED ............................................................................................................. 6

VI.     PLAINTIFF'S CLAIMS ARE PREEMPTED AND SUBJECT TO FDA'S
        PRIMARY JURISDICTION .........................**ERROR! BOOKMARK NOT DEFINED.**

        A.      Plaintiff's Claims Are Preempted ......................... **Error! Bookmark not defined.**

        B.      Plaintiff's Claims Fall Under the FDA's Primary Jurisdiction...**Error! Bookmark not defined.**

**<u>INTRODUCTION</u>**

In her Opposition, Plaintiff ignores that it is implausible that she thought the word "kids" means "free of the ambient lead that is in everything" and instead now claims that she thought it meant that the product did not contain levels of lead that the FDA finds acceptable, but which her lawyers call "hazardous." These are not plausible interpretations of the product's label. Rather, they are an improper effort to supplant the FDA's regulation of ambient lead in children's food—a process that is based on science and other policy concerns, such as the balance between encouraging children to eat vegetables, which contain ambient lead, versus having them eat other, far-less-healthy products made from synthetic ingredients, which do not. Plaintiff attempts to distract from these defects by citing to various statutes and their elements (Opp. at 13), but for each of her claims, and to establish Article III standing, she must prove that she suffered an injury caused by Lesser Evil, i.e., that she relied on a false statement. Plaintiff's claims fail this basic test and, in fact, do not identify any product she allegedly bought or its lead content.

Plaintiff's arguments against preemption and primary jurisdiction also fail. She argues that the FDA is not trying to regulate the field of lead in children's products. (Opp. at 16–17.) But this argument does not reckon with the FDA's recent guidance—which is a regulation of ambient lead in children's food. That the FDA has chosen to regulate through iterative guidance, a process that is ongoing, does not somehow mean that FDA is not regulating this subject matter.

The Opposition fails to sustain Plaintiff's claims for many other reasons. She cannot show that she paid a "price premium" (Opp. at 23), without identifying a substitute product—an impossibility because all plant-based products contain ambient lead. Her warranty claim (Opp. at 8–10) fails because there is no specific guarantee arising from the word "kids," and because the claim does not meet the jurisdictional requirements of the MMWA and is separately preempted.

1

I.      **PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT SHE WAS DECEIVED**

The Opposition abandons Plaintiffs' claims under Connecticut law and instead relies entirely on the Illinois Consumer Fraud Act ("ICFA").[1] Plaintiff's claims fail under any law because to establish a false advertising claim—and more fundamentally, to have Article III standing—Plaintiff must plead that LesserEvil made a false statement that caused an injury to her. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423–24 (2021).

Plaintiff claims that the word "kids" misled her into buying Lil' Puffs (Opp. at 1), but makes no effort to explain how the word "kids" led her to believe that Lil' Puffs were free of ambient lead when every healthy food given to kids contains ambient lead. Were Plaintiff correct, every children's snack made from a fruit or vegetable would be falsely advertised. Plaintiff also argues that the word "kids" caused her to believe that the product was free of levels of ambient lead that the FDA deems proper, but which her lawyers call "hazardous." (Opp. at 1.)[2] Neither of these theories is a plausible or coherent interpretation of the word "kids." Failure to plausibly allege a false statement is fatal to Plaintiff's claims. *Taylor v. Procter & Gamble Co.*, 2023 WL 5289451, at *6 (S.D. Ill. Aug. 17, 2023) (plaintiff's failure to plausibly allege false statement under ICFA results in dismissal of plaintiff's other Illinois state law claims)).

Plaintiff ignores the cases cited in the moving papers (Mot. 14-15), which dismissed analogous claims involving an ambient and unhealthy substance present in food that companies have no duty to disclose. The same result should apply to ambient lead, especially as the source of lead—vegetables—is healthier than the alternative—completely synthetic foods.

The cases that Plaintiff cites do not hold otherwise. *Mirza v. Ignite USA, LLC* (Opp. 5),

---

[1] Plaintiff cannot "withdraw" her Connecticut law claim "without prejudice" (Opp. 2 n.1) after Lesser Evil was forced to move to dismiss it.

[2] Plaintiff's own pleadings cite an advocacy piece by *Consumer Reports* which admits lead is ubiquitous in the natural world, including similar snacks that can be part of a healthy child's diet.

involved a water bottle for children that was recalled because its detachable spout was a choking hazard. 439 F. Supp. 3d 1058, 1071 (N.D. Ill. 2020). The court there found that the word "kids" in the product name signified that the product was "free from defects that would pose a choking hazard given the frequency of choking incidents for this age group" (*id.* at 1071). The plaintiffs in *Mizra* alleged a defect that created a hazard to children. In contrast, Lil's Puffs have not been recalled due to any defective hazard. Lil' Puffs, like every other product made from real, soil-grown vegetables—e.g., baby food—contain ambient lead. The presence of ambient lead in a snack made from vegetable ingredients is not a hazard; it is simply a fact of our environment.

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (Opp. at 3), is also inapposite. In *Stella*, the plaintiff alleged that a lipstick manufacturer knew or should have known that lead was an *ingredient* in its lipstick and failed to list lead as an ingredient. (*id.* at 836). Adding an undisclosed ingredient can be misleading. In contrast, Plaintiff cannot plausibly claim to be unaware that ambient lead was in a product made from a vegetable.

*In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, 2024 WL 4107244, (E.D.N.Y. Sept. 6, 2024) and *Levy v. Hu Prods. LLC*, 2024 WL 897495, (S.D.N.Y. Mar. 1, 2024) (Opp. at 6), also miss the mark. In both those cases, plaintiffs alleged that defendants made misleading statements about the character and quality of the products' *ingredients*, not about the products' intended consumers. *See Lindt*, 2024 WL 4107244, at *5 (statements that "The chocolate bars are "[e]xpertly crafted with the finest ingredients;" and "[T]op quality is particularly important in the meticulous selection of our raw materials"); *Levy*, 2024 WL 897495, at *2 (plaintiff allegedly "'purchased the Products in reliance on Defendants' representations that the Products contained only the dark chocolate ingredients 'simple' and 'clean'").

Finally, Plaintiff cites a blog post by Consumer Reports to support her allegation that the

3

term "kids" led her to believe that Lil' Puffs was under some unidentified threshold for lead. (Opp. at 25.) Leaving aside that this contention makes no sense, as the word "kids" has nothing to do with lead, Consumer Reports is not a scientific organization and does not set and regulate lead thresholds. That role is reserved for the agency Congress tasked with doing this—the FDA. Moreover, even Consumer Reports concedes that its analysis of the purported levels of lead in its "tests are not assessments of whether a product exceeds . . . any . . . legal standard".[3]

## II.     PLAINTIFF'S "PRICE PREMIUM" ARGUMENT IS IMPLAUSIBLE

Plaintiff's claims fail for the separate and independent reason that her price premium theory is implausible. On the one hand, she claims that Lil' Puffs are hazardous to feed to her children and that she would not do so. (Opp. at 23.) On the other hand, she claims that she would gladly feed Lil' Puffs to her children, but that she would like to pay less for them. (Opp. at 23-24.) In addition to making no sense and contradicting her other arguments, this "price premium" fails because Plaintiff does not identify any substitute good—i.e., a cassava-root snack that she could buy instead that is free of ambient lead. Nor could she, as no such product exists. Absent an allegation that a substitute good exists, Plaintiff cannot establish that she paid a "premium" for the absence of ambient lead in a cassava-based product.

## III.    PLAINTIFF FAILS TO PROVE THE AMOUNT OF LEAD IN ANY PRODUCT THAT SHE SUPPOSEDLY BOUGHT

Plaintiff's claims fail for the separate reason that she has not plausibly alleged that she purchased a bag of Lil' Puffs that contained an amount of lead that her lawyers call hazardous. The Complaint does allege which Lil' Puffs product Plaintiff bought or when Consumer Reports bought the samples it says contained various levels of lead. At least one court in this Circuit has found such omissions disqualifying. *See Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877,

---

[3] Consumer Reports Blog, *supra*.

at *4 (S.D.N.Y. Mar. 28, 2023) (plaintiff's allegation of independent testing inadequate when plaintiff failed to state when independent testing was conducted).

From Plaintiff's allegations that she "regularly" purchased Lil' Puffs in Cary, IL it is not plausible to conclude she purchased a package of Lil' Puffs from the same batch as the products tested by Consumer Reports or Plaintiff's "laboratory."[4] Plaintiff's reliance on *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499 (D. Conn. Mar. 13, 2023) does not save her from her failure to plead facts sufficient to plausibly establish standing. *Clinger* concerned sunscreen, product which often has a yearslong shelf-life. Lil' Puffs, by contrast, are an organic, perishable food product that leaves store shelves quickly as they are intended to be eaten. What counts as "reasonably near in time to the testing" is thus different than for the Lil' Puffs than for a sunscreen. Nor does *Clinger* support Plaintiff's claims that the whole line of Lil' Puffs—which have different ingredients—contain the same amounts of lead.

## IV. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF AND SHOULD BE DENIED LEAVE TO AMEND

"Plaintiff concedes that she does not adequately allege standing to seek injunctive relief" and requests leave to amend. (Opp. 29). This request should be denied because Plaintiff elected not to amend her complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), has not identified any way that she could feasibly do so in her Opposition, or overcome Lesser Evil's point that amendment would be futile. (Mot. 27-28, 32). Plaintiff claims, without explanation, that she should be given leave to amend here because "LesserEvil has stated that it is going to reformulate its products to avoid using cassava flour—the reason for the lead contamination." (Opp. 29). If anything the reformulation makes clear that Plaintiff lacks standing to seek

---

[4] That fact is compounded by regional diversity. LesserEvil produces its products in western Connecticut; Plaintiff resides and shops in Cary, Illinois; Plaintiff's lawyer is located in Santa Monica, California; and the lab is in Olympia, Washington. Plaintiff has provided no information about where *Consumer Reports* is located or where they might have obtained the Lil' Puffs.

injunctive relief because it precludes her from making the required showing that "she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (affirming district court's finding that plaintiff lacked standing where Amazon had ceased selling product that caused alleged injury).

## V.    THE MAGNUSON-MOSS WARRANTY ACT CLAIM SHOULD BE DISMISSED

Plaintiff concedes her MMWA claim "stand[s] or fall[s]" with her warranty claims (Opp. 30.) Because those claims are defective, the MMWA claim too should be dismissed. (*See supra* Part I.) In addition, the MMWA claim does not meet the jurisdictional requirements, is preempted, and fails to identify any concrete, actionable warranty.

Plaintiff does not dispute that she fails to meet the jurisdictional requirements of the MMWA. (Opp. 30.) She claims the Class Action Fairness Act ("CAFA") provides an independent basis for jurisdiction over MMWA claims, relying on out-of-district decisions. In *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 162 (D. Conn. 2024), this District rejected that argument and adopted the reasoning of *Floyd v. American Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (Mot. 31.), which explained that "the statutory language of the MMWA and of CAFA" are "irreconcilable" because "the MMWA simply prevents claims under that Act from proceeding in federal court absent the satisfaction of certain jurisdictional prerequisites," *id.* at 1035. Thus, "[c]onstruing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA." *Id.* Because "the legislature's intent to repeal a statute must be clear and manifest," and there is no such intent here, "CAFA may not be used to evade or override the MMWA's specific numerosity requirement." *Id.*

Numerous courts have concluded that MMWA claims founded on the labels of products governed by the FDCA are barred by § 2311(d). (Mot. 31). Plaintiff attempts to distinguish these

cases by claiming that "the NLEA does not regulate the presence of lead." (Opp. 34.) Plaintiff cites no cases allowing MMWA claims to proceed under this theory. (Opp. 34.) As explained in the moving papers and unaddressed by Plaintiff, the FDA extensively regulates lead in the food supply and decides when warnings are or are not necessary. (Mot. 6.) There is no reason this Court should depart from the other courts that have found similar MMWA claims preempted.

Finally, Plaintiff fails to explain how the word "kids" and the "instructions regarding when toddlers are fit to consume the snacks" (Compl. ¶ 80)—the only written warranties Plaintiff cites—are anything more than product descriptions. (Opp. 35). These descriptions "do not suggest that the [puffs] are defect free or that they will meet a specified level of performance over a specified period of time." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (dismissing MMWA claim because "honey" and "graham" are product descriptions and not written warranties); (Mot. 31-32).[5]

## VI.   PLAINTIFF'S CLAIMS ARE PREEMPTED AND SUBJECT TO FDA'S PRIMARY JURISDICTION

The Opposition does not overcome that the FDA has been developing guidance for ambient lead levels in foods for children which it partially finalized just days ago. (Reply RJN, Ex. A.) That guidance—the result of a multi-year "science-based, iterative approach to decreasing toxic elements, including lead, in foods over time"—does not recommend anything like the regulation Plaintiff seeks to create. Instead, after consulting with dozens of scientists and other members of the public, and performing complex exposure and achievability assessments, the FDA established "action levels" for lead in various types of food to achieve lead levels below these thresholds. (*Id.*) These action levels are just one part of FDA's *Closer to Zero* program, a

---

[5] *Levin v. Johnson & Johnson* does not help Plaintiff. (Opp. 35.) There, plaintiff alleged that Johnson & Johnson advertised "the product was safe and effective," and the court allowed the MMWA claim to proceed to discovery because plaintiff was pro se and "just barely pled the requisite elements." 2019 WL 6392503, at *9 (E.D.N.Y. June 17, 2019).

7

"science-driven, transparent, and inclusive process" with many other active components that remain ongoing—including with more specific guidance for puff-type products yet to come. (*Id.*) None of the cases cited by Plaintiff suggests that the Court should supplant FDA's science-based guidance with Plaintiff's lawyers' notions of how to regulate vegetable-based snacks.

### A.    Plaintiff's Claims Are Preempted

Plaintiff argues that the action levels set by FDA are only "non-binding guidance" and thus she is thus free to make up her own food standards. (Opp. at 16-18.) But Plaintiff does not dispute that the FDA pervasively regulates food safety, including lead in food intended for children, or that the guidance is part of a long-term, "science-driven, transparent, and inclusive process" to gradually reduce lead in food. (Mot. 5-7.)

Plaintiff's assertion that "there are many potential reasons for the absence of specific regulations" is thus incorrect. (Opp. 17; Mot. 7.) Both Congress through the FDCA, and FDA "in their deliberate judgment" and per their "deliberate choice," have not required warning labels or disclosures about the presence of ambient lead in any food, including baby food. Imposing such a regulation here would contravene this policy as shown in the FDA's new guidance. (Mot. 19).[6]

None of the decisions cited by Plaintiff involved a situation where, like here, a federal agency has made an affirmative decision that is directly on point. Plaintiffs cite *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995) (cited at Opp. 17), but in that case "the lack of federal regulation did not result from an affirmative decision of agency officials." *Id.* at 286.[7]

---

[6] *See also Arizona v. United States*, 567 U.S. 387, 405 (2012) (imposing criminal penalties on aliens who sought unlawful employment would interfere with Congress' judgment not to impose penalties); *Cohen v. Apple Inc.*, 46 F.4th 1012, 1029 (9th Cir. 2022) (state-law claims preempted because they would disrupt the FCC's balancing between public safety and the public's access to new telecommunications services).

[7] *See also Krystofiak v. Bellring Brands*, 2024 WL 3012801 (N.D. Cal. June 14, 2024) (no preemption where FDA had taken no action regarding lead in protein shakes); *Balistreri v. McCormick & Co.*, 2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) (no preemption where FDA had taken no action with respect to lead in spices); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174 (S.D. Cal. 2015) (finding no preemption where FDA had taken no action regarding 4-MEI, an alleged carcinogen, in soda). Instead, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000),

Plaintiff also speculates that her claims could be consistent with the FDA's brand-new guidance. (Opp. 17-18.) Yet here, the FDA has made clear that it is intentionally lowering action levels for lead in children's food over time to make those action levels attainable and to avoid inhibiting children's access to nutritious foods. (Mot. 5-6.) Any other determination regarding "safe" lead levels will undermine the FDA's mandate of creating nationwide uniformity and providing consistent messaging to consumers regarding the food supply.

B.      **Plaintiff's Claims Fall Under the FDA's Primary Jurisdiction**

Plaintiffs arguments against primary jurisdiction fall all four of the *Ellis* factors.

***Establishing actions levels for lead is uniquely within the purview of FDA.*** Plaintiff does not dispute that the FDA's brand-new guidance, the result of a multi-year "science-driven, transparent, and inclusive process" is just one component of the FDA's ongoing efforts to reduce lead in food for children. (Mot. 20-22.) Plaintiff contends the Court can ignore this process because this is a "consumer deception case" and thus does not implicate any complicated issues. (Opp. 20-21.) But, as detailed above, the Complaint fails to identify any deceptive statement on Lil' Puffs labels and is predicated entirely on her theory that Lil' Puffs contain "hazardous" amounts of lead. Implementing Plaintiff's proposed regulation would require an analysis at least as complex and technical as what the FDA did in its guidance. Because Plaintiff contends food safety is front and center in this case, Plaintiff's claims fall squarely within FDA's primary jurisdiction and cannot be resolved without guidance from FDA.

---

which distinguished Freightliner (cited at Mot. 17, but unaddressed by Plaintiff), is directly on point. In *Geier* plaintiffs' claims were preempted because they would have required air bags in all new cars when the federal agency's rule only required them in a percentage of new cars. There, as here, there was no regulation regarding the specific item at issue because the agency made the policy decision to "phase-in" new requirements. *Geier*, 529 U.S. at 877-78.

***Food safety standards are within FDA's authority.*** Plaintiff does not dispute that the responsibility for food safety lies with FDA and that FDA is uniquely capable of making determinations regarding lead and food. (Opp. 21.) Plaintiff repeats the same argument that this is a consumer deception case, but that argument fails for the reasons above. Plaintiff's reliance on *McCormick*, *Hu* and *Abbott Labs* (Opp. 20) is misplaced because those cases did not involve foods that were actively being monitored by the FDA. *Balistreri v. McCormick & Co., Inc.*, 2023 WL 5988600, *8 (N.D. Cal. Sept. 13, 2023) ("the FDA has sought funding to investigate toxic elements in foods for babies," not "Heavy Metals in herbs and spices"); *Hu*, 2024 WL 897495, at *8 (noting the issue is "lead in chocolate," but defendant "cites an ongoing FDA assessment of heavy metals in baby food"); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, *6 (N.D. Ill. May 22, 2023) ("The draft guidance does not apply to infant formula.").

***There is a danger of inconsistent rulings.*** Plaintiff contends that because companies' labels will differ, there is no risk of inconsistent rulings. (Opp. 21.) But as set forth above, Plaintiff's claims have nothing to do with the labels, and instead turn on whether or not products are "hazardous" according to her lawyers. Regulating products through *ad hoc* litigation will invariably lead, and has already led, to inconsistent results. *Compare In re Plum Baby Food Litig.*, No. 21-cv-913-YGR, Dkt. 125 at 1 (N.D. Cal. Jan. 12, 2022) (plaintiffs had standing to pursue heavy metals claims against Plum because they had alleged injury in fact) *with In re Plum Baby Food Litig.*, 2022 WL 16552786, at *6-9 (D.N.J. Oct. 31, 2022) (dismissing identical claims against Plum for lack of injury-in-fact).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Dated: January 13, 2025                    Respectfully submitted,


Matthew Borden*
borden@braunhagey.com
David H. Kwasniewski*
kwasniewski@braunhagey.com
747 Front Street, 4th Floor
San Francisco, California 94111
Telephone: (415) 599-0210

Amelia Hritz
hritz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 403-4089


*Pro Hac Vice*
*Attorneys for Defendant LesserEvil LLC*

11