UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

ELISE AUGUSTINE,                              :
                                              :
                        Augustine,            :
                                              :
            v.                                :        3:24-CV-01309 (SFR)
                                              :
LESSEREVIL LLC,                               :
                                              :
                        LesserEvil.           :
---------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Plaintiff Elise Augustine ("Augustine") has filed a six-count Complaint against Defendant LesserEvil, LLC ("LesserEvil") on behalf of a prospective class of consumers who purchased LesserEvil's snacks. The Complaint alleges that Augustine was misled by LesserEvil into purchasing its Lil' Puffs Kids Snacks, which are marketed as healthy snacks for toddlers yet contain lead. The Complaint contains six counts: (1) violation of the Connecticut Unfair Trade Practices Act; (2) breach of the Illinois Consumer Fraud and Deceptive Business Practices Act; (3) violation of the Magnuson-Moss Warranty Act; (4) breach of implied warranty (5) breach of express warranty (6) quasi-contract.

LesserEvil has moved to dismiss Augustine's claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. For the following reasons, I deny in part and grant in part LesserEvil's Motion to Dismiss.

## I.    BACKGROUND

### A.    Factual Background

The following facts, alleged in the Complaint, are assumed as true for purposes of the Motion to Dismiss. Compl., ECF No 1.

1

LesserEvil makes, sells, distributes, and markets kids snack products. *Id.* ¶ 3. One such product is LesserEvil's Lil' Puffs Kids Snacks ("Products"). *Id.* ¶ 3. The Complaint asserts that Augustine was misled by LesserEvil's marketing materials into purchasing the Products and feeding them to her toddler even though they contained lead, a toxic metal. *Id.* ¶¶ 1, 3, 4, 32.

The Complaint alleges that lead is toxic, causing myriad health issues, and that young children are especially vulnerable to its ill effects. *Id.* ¶¶ 11, 12. The Complaint alleges that "[t]here is no level of exposure to lead that is known to be without harmful effects." *Id.* ¶ 12. LesserEvil's snacks are marketed as "kids" snacks and for "toddler[s]." *Id.* ¶ 13. LesserEvil's marketing materials expressly directs consumers to feed the snacks to toddlers and young children, advertising that its Products are "air-puffed healthy snacks for kids." *Id.* ¶ 14. The marketing materials state that the snacks are "simply made with a blend of seven wholesome vegetables so you and your toddlers can (super) power through the day." *Id.* In addition, the packaging marketing materials state that the LesserEvil Lil' Puffs are "Clean Label Certified" and "[w]hen [consumers] see the Clean Label Project certification on our packaging," they "can trust that we've taken every measure to ensure it's a safe and high-quality product" that has passed "rigorous third-party testing." *Id.* ¶ 15 (alterations in original). According to the Complaint, by making, selling, and marketing the Products as "kids" snacks to consumers, LesserEvil represents to consumers that the Products do not contain harmful chemicals such as lead. *Id.* ¶ 17.

The Products' labeling do not give any indication that they contain lead, misleading customers into thinking that the Products do not contain lead. *Id.* ¶ 18. Consumers rely upon the packaging and marketing to believe that the Products are safe for children. *Id.* ¶ 22 An

awareness of the lead content of the Products would be a material consideration to consumers. *Id.* ¶ 18.

In July 2024, an independent laboratory tested samples of LesserEvil Lil' Puffs Kids Snacks for lead; each came up positive. *Id.* ¶ 19. One result showed that the Lil' Puffs contained 346.793 parts per billion of lead. *Id.* Just one serving contained 2.427 micrograms of lead, exceeding the maximum allowable daily dose level set by the state of California (0.5 micrograms). *Id.* ¶¶ 19, 2. According to the Complaint, exceeding California's maximum allowable dose is unhealthy and unsafe. *Id.* ¶ 2. LesserEvil was aware its food contained lead, *id.* ¶¶ 25-27, and could have placed a warning of the possible exposure to lead on the packaging, *id.* ¶ 23.

Augustine regularly purchased the Products from Spring 2023 to Spring 2024. *Id.* ¶ 29. In purchasing the Products, Augustine relied upon the representations on the packaging and in the product description that the Products were safe for consumption by toddlers and young children. *Id.* ¶¶ 30-31. Because of the Products' misleading labels, Augustine was unaware that LesserEvil's Products contained lead. *Id.* ¶ 30. Augustine relied upon the misrepresentations and omissions in feeding the Products to her toddler. *Id.* ¶ 32. Augustine would not have purchased the Products had she known they contained lead, and knowing their lead content, "the Products are worthless to her." *Id.* ¶ 33. As a result, Augustine spent money she would otherwise not have spent absent LesserEvil's alleged misconduct. *Id.* ¶ 34.

The Complaint also includes class action allegations. *Id.* ¶¶ 35-44. Specifically, Augustine seeks to bring her claims on behalf of a nationwide class, excluding California, and a subclass of people who purchased the Products in the State of Illinois. *Id.* ¶ 35.

### B.    Procedural History

Augustine initiated this case when she filed her Complaint in this Court on August 13, 2024. ECF No. 1. On October 4, 2024, LesserEvil filed its Motion to Dismiss and accompanying memorandum of law. Mot. to Dismiss, ECF No. 16; Def.'s Mem. of L. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), ECF No. 16-1. On November 18, 2024, the Court,[1] upon review of the Parties' Rule 26(f) report, stayed discovery pending resolution of the Motion to Dismiss. ECF No. 26. On November 27, 2024, Augustine filed her Memorandum in Opposition to LesserEvil's Motion to Dismiss. Mem. of L. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem."), ECF No. 27. In her Memorandum, Augustine states that she withdraws her claim under the Connecticut Unfair Trade Practices Act without prejudice. *Id.* at 9 n.1.[2] On January 6, 2025, this case was transferred to me. ECF No. 28. On January 13, 2025, LesserEvil filed its Reply brief. Def.'s Reply, ECF No. 29.

## II.    <u>LEGAL STANDARD</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (citation and internal quotation marks omitted). "It is well-settled that the 'plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *Matthias v. United States*, 475 F. Supp. 3d 125, 133 (E.D.N.Y. 2020) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). Although the court "must accept as true all material factual allegations in the complaint," a court should not "draw inferences from the complaint favorable to plaintiffs."

---

[1] The Honorable Omar A. Williams originally presided over this case.

[2] Page citations are to the page number generated by the ECF system.

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings." *Student Members of Same v. Rumsfeld*, 321 F. Supp. 2d 388, 392 (D. Conn. 2004) (quoting *Luckett*, 290 F.3d at 496-97).

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the Plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.   <u>DISCUSSION</u>

LesserEvil moves to dismiss Augustine's Complaint in its entirety for three reasons: (1) Augustine has failed to plausibly allege that she was misled, (2) Augustine cannot supplant the role of the Federal Drug Administration ("FDA") in regulating ambient lead in food; and (3) Augustine lacks Article III standing. Def.'s Mem. 20, 25, 33. LesserEvil additionally moves to dismiss Augustine's Magnuson-Moss Warranty Act ("MMWA") claim on the grounds that Augustine has not met the jurisdictional requirements of the MMWA and fails to state a claim.

*Id.* at 39-41. Finally, LesserEvil argues that this Court should deny leave for Augustine to amend her claim for injunctive relief. *Id.* at 41.

### A.    Judicial Notice

As an initial matter, LesserEvil makes two requests for judicial notice of documents. *See* ECF Nos. 16-2 (requesting judicial notice of ECF No. 16-4 to 16-10), 29-1 (request judicial notice of ECF No. 29-3).

Under Federal Rule of Evidence 201, a court may take judicial notice of any fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Under Rule 201(b)(2), courts may take judicial notice of publicly available documents such as regulatory filings." *Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022). "But they must do so to determine what statements the documents contained . . . and not for the truth of the matters asserted in the documents." *Id.* (cleaned up); *accord Porrazzo v. Bumble Bee Foods*, LLC, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011).

Exhibits 16-4, 16-5, 16-6, 16-7, 16-8, and 29-3 are documents available on the website of the FDA website. These documents are publicly posted on government websites and can be judicially noticed because their accuracy cannot reasonably be questioned. *See Becker v. Cephalon, Inc.*, No. 14 Civ. 3864 (NSR), 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015) (collecting cases taking judicial notice of FDA documents). Although the Court takes judicial notice of these documents, it does so "only to determine what the documents state[]"—not to accept "the truth of their contents." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Exhibit 16-9 is an order from a case in Los Angeles Superior Court. "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* The Court will likewise take judicial notice of this document, but not for the truth of the matters asserted therein.

Exhibit 16-10 is a copy of a Consumer Reports Test Methodology. Although not a public filing, Augustine relied upon this report in her Complaint, quoting and citing it. *See* Compl. ¶ 27. Therefore, I conclude it is incorporated by reference and I can rely on it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see* Compl. ¶ 27.

### B.    Allegations that Augustine was Misled

LesserEvil argues that the "failure to plausibly allege a false or misleading statement is fatal to all of Plaintiff's claims." Def.'s Mem. 21. In particular, LesserEvil argues that the labels were not misleading because LesserEvil had no obligation to disclose the content of ambient lead in its Products. *Id.* at 22. LesserEvil says it is implausible that Augustine believed that the Products were free of all trace amounts of lead. *Id.* LesserEvil also asserts that to the extent Augustine believed the word "kid" on the Products meant "healthy for toddlers and young children" then such a statement would be mere puffery, and therefore not actionable. *Id*. at 22-23. Augustine responds that she has adequately pleaded all her state law claims. Pl.'s Mem. 9-15. She asserts that labeling the Products as a clean and healthy snack misled her into buying the Products, and she relied upon the packaging and labeling to believe that the Products did not contain lead, particularly at the levels allegedly present in the Products. *Id.* at 8.

Count Two alleges breach of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which requires: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 149 (D. Conn. 2024) (internal quotation marks omitted). "[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (internal quotation marks omitted). "Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Id.* The "omission of any material fact" is sufficient to state a claim under the ICFA. 815 Ill. Comp. Stat. 505/2.

Thus, the critical inquiry for purposes this claim is whether LesserEvil's labeling is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (emphasis in original) (internal quotation marks omitted) (noting that "[w]hile the required elements of claims under each statute vary, the parties do not dispute the District Court's conclusion that there is substantial overlap between the elements of the claims, and that to prevail on *any* of their claims, plaintiffs must demonstrate . . . a deceptive act," which "is governed by the reasonable consumer standard"); *Harris v. Mondelēz Glob. LLC*, No. 19-cv-2249 (ERK) (RER), 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (applying "consumer protection statutes from forty states and the District of Columbia" and finding that the "critical issue" for each was "whether a reasonable consumer would be misled by [d]efendant's statement"); *Dorris v. Danone Waters of Am.*, 711 F. Supp. 3d 179, 187-93 (S.D.N.Y. 2024) (analyzing whether a "reasonable consumer" would have been misled under

New York, California, and Massachusetts consumer protection statutes); Def.'s Mem. 11; Pl.'s Mem. 9.

In order to survive LesserEvil's motion to dismiss, Augustine "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers," but rather must "plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (internal quotation marks omitted); *see also Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) ("A consumer deception case may be dismissed under Rule 12(b)(6) where it is clear that reasonable consumers would not be deceived by a product's packaging.").

The Complaint alleges that LesserEvil advertises that its products are "air-puffed healthy snacks for kids." Compl. ¶ 14. The marketing materials state that the snacks are "simply made with a blend of seven wholesome vegetables so you and your toddlers can (super) power through the day." *Id.* Additionally, the Complaint alleges that the packaging materials state that the Products are "Clean Label Certified," and that "[w]hen [consumers] see the Clean Label Project certification on our packaging," they "can trust that we've taken every measure to ensure it's a safe and high-quality product" that has passed "rigorous third-party testing." *Id.* ¶ 15 (alterations in original).

The Complaint plausibly alleges that a reasonable consumer could rely upon these assertions to believe that the Products did not contain lead, particularly at the levels that the Complaint alleges were present in the Products. Although LesserEvil asserts that all food products contain lead, Def.'s Mem. 24, the Complaint alleges more than mere trace amounts. The Complaint states that every single sample in independent laboratory test of LesserEvil Lil'

Puffs Kids Snacks tested positive for lead. Compl. ¶ 19. One test result showed that the Lil' Puffs contained 346.793 parts per billion of lead. *Id.* Just one serving contained 2.427 micrograms of lead, exceeding the maximum allowable daily dose level set by the state of California (0.5 micrograms). *Id.* ¶¶ 19, 2. The Complaint plausibly alleges that a reasonable consumer might well rely upon LesserEvil's assertions to believe that the Products would be free from these levels of lead, a toxic substance with serious potential health effects for young children. *Id.* ¶ 1. The Complaint asserts that in purchasing the Products, Augustine "relied on the representations on the packaging that the Products were safe for consumption by toddlers and young children." *Id.* ¶ 31. Taking the facts alleged in the Complaint as true, I find that a significant portion of the consumer public might have relied upon this marketing to believe the Products did not contain lead, particularly at the levels alleged in the Complaint.

Multiple courts in the Second Circuit have held that similar allegations allege a plausible claim of misrepresentation. *See In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *5 (E.D.N.Y. Sept. 6, 2024) ("Taking the packaging as a whole, these allegations are sufficient to allege that a reasonable consumer could be misled into purchasing or overpaying for Lindt's dark chocolate because the consumer believed that the bars did not contain unsafe amounts of lead, or any lead at all."); *Levy v. Hu Prods. LLC*, No. 23 CIV. 1381 (AT), 2024 WL 897495, at *1, *7 (S.D.N.Y. Mar. 1, 2024) (finding that the plaintiff stated a plausible misrepresentation claim where the plaintiff alleged "that at least three elements of [the defendant's] packaging are misleading: (1) the name of the 'Simple' 70% dark chocolate bar; (2) the ingredient list, which does not contain lead; and (3) 'the long list of undesired items that the Product boastfully does not contain,' including refined sugar, dairy, and soy"); *White v. Tom's of Maine, Inc.*, No. 25-CV-

00662 (OEM) (LKE), 2026 WL 686269, at *6 (E.D.N.Y. Mar. 11, 2026) (internal quotation marks and citations omitted) ("[A]t this stage, Plaintiff's allegations bring[] the claim of deception within the realm of plausibility. Plaintiff alleges that the Products are marketed to appeal to children by claiming the Products are each healthy toothpastes for kids. Plaintiff also claims that Defendant misrepresents that the Products are safe for use. There is a plausible link between the belief that the Products are healthy, or safe for children and the allegation that the Products contain potentially unsafe levels of lead or arsenic.") (internal quotation marks and citations omitted).

Moreover, I reject LesserEvil's argument that its language about the health of its snacks is mere puffery, and therefore not actionable. Def.'s Mem. 22-23. "[S]tatements and practices that are mere puffery are not actionable." *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020). "Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Id.* (internal quotation marks omitted).

Considering LesserEvil's packaging as a whole, the statements at issue here are not mere puffery because a reasonable customer could interpret LesserEvil's statements as representations about the quality and safety of the Products' ingredients, and, more specifically, an absence of lead. *Levy*, 2024 WL 897495, at *7 (concluding that the word "simple" used to describe chocolate bar ingredients is not mere puffery); *see also In re Lindt & Sprüngli*, 2024 WL 4107244, at *6 (concluding that the advertisement "[e]xpertly crafted with the finest ingredients" and the word "excellence" were not mere puffery); *Dopico v. IMS Trading Corp.*, No. 14-CV-1874 (BRM), 2018 WL 4489677, at *4-5 (D.N.J. Sept. 18, 2018) (concluding that the statement on dog treats label that they were made with "only the finest

11

ingredients" was not mere puffery in express warranty breach claim); *see also Rodriguez v. Mondelēz Glob. LLC*, 703 F. Supp. 3d 1191, 1212 (S.D. Cal. 2023) (collecting cases concluding that marketing concerning "safety and quality assurances" on food products was not mere puffery); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018) (concluding that representations that dog food was "natural," and that its manufacturer adhered to "rigorous standards and practices" and produced "only the highest-quality pet food" are not puffery); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (concluding that the phrase "most stringent quality control tests" was actionable and not mere puffery).

LesserEvil argues I should decline to follow the holdings of *Levy* or *In re Lindt & Sprüngli* because in those cases "plaintiffs alleged that defendants made misleading statements about the character and quality of the products' *ingredients*, not about the products' intended customers." Def.'s Rep. 5 (emphasis in original). However, the Complaint does not rely only on the fact that the Products were marketed as snacks for kids. Instead, the Complaint alleges that LesserEvil's statements about the Products' ingredients and the safety of the Products for toddlers misled her. For example, LesserEvil's marketing materials state that the snacks are "simply made with a blend of seven wholesome vegetables so you and your toddlers can (super) power through the day." Compl. ¶ 14; *see also id.* ¶¶ 14-15 (alleging Products are advertised as "air-puffed healthy snacks for kids" and, based on the Products' "Clean Label Project certification" customers "can trust that we've taken every measure to ensure it's a safe and high-quality product" that has passed "rigorous third-party testing"). I conclude that such statements are not mere puffery.

Because I conclude that Augustine has alleged sufficient facts to show she was misled, I need not consider Augustine's arguments that some of her claims do not require a showing of misrepresentation. Pl.'s Mem. 15-17.

### C.    The FDA as Regulator of Ambient Lead in Food

LesserEvil argues I should dismiss all of Augustine's claims because Augustine cannot supplant the FDA's role as regulator of ambient lead in food. Def.'s Mem. 25. Specifically, LesserEvil asserts that Augustine's claims are (1) preempted and (2) fall under the FDA's primary jurisdiction. *Id.* at 25, 29.

### 1.    Preemption

LesserEvil contends that Augustine's claims conflict with the FDA's role under federal law to establish a uniform, national policy for food safety, including the regulation of lead. *Id.* at 25. According to LesserEvil, Augustine's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343-1(a). *Id.* Since the FDA does not require disclosure of lead, LesserEvil argues that Augustine cannot hold it liable for failing to include lead disclosures in its packaging. *Id.* at 27-29. Augustine argues that her claims are not preempted because no FDCA provision or FDA regulation conflicts with her claims and the absence of regulation does not constitute regulation for preemption purposes. Pl.'s Mem. 23-24. I agree with Augustine that her claims are not preempted.

"The Supremacy Clause provides that '[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (quoting U.S. Const. art. VI, cl. 2) (alteration

and omissions in original). "It is basic to this constitutional command that all conflicting state provisions be without effect." *Id.*

The FDCA, enacted in 1938, grants the FDA power to ensure that "foods are safe, wholesome, sanitary, and properly labeled," and prohibits the misbranding of food in interstate commerce. 21 U.S.C. §§ 331(a)-(c), 393(b)(2)(A). In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." Pub. L. No. 101-535, 104 Stat. 2353 (1990) (codified at 21 U.S.C. § 343 et seq.); H.R. Rep. No. 101-538, at 7 (1990).

> There are three types of preemption:
>
> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010).

"The key to the preemption inquiry is the intent of Congress." *Id.* "Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *Id.* The Supreme Court has explained that "in all pre-emption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*,

14

555 U.S. 555, 565 (2009) (citation modified). Courts "have a duty to accept the reading that disfavors pre-emption" when such a reading is plausible. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

"Consistent with the statute's purpose of promoting uniform national labeling standards, the NLEA includes an express preemption provision that forbids the states from 'directly or indirectly establish[ing] . . . any requirement . . . made in the labeling of food that is not identical to' the federal labeling requirements established by certain specifically enumerated sections of the FDCA." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280 (S.D.N.Y. 2014) (quoting 21 U.S.C. § 343-1(a)). "Helpfully, the NLEA is clear on preemption, stating that it 'shall not be construed to preempt any provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343-1(a)] of the [FDCA].'" *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (alterations and emphasis in original) (quoting Nutrition Labeling and Education Act § 6(c)(1), 104 Stat. at 2364).

NLEA's preemption provision prohibits state or local governments from imposing labeling requirements relating to certain subsections of the FDCA's misbranded food provision that differ from federal labeling requirements. *See* 21 U.S.C. § 343-1(a) (referencing 21 U.S.C. § 343(b), (c), (d), (e), (f), (g), (h), -(i), (k), (q), (r), (w), and (x)). Notably, however, the preemption provision does not mention § 343(a), which states that a "food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. §§ 343(a), 343-1(a); *see Manuel v. Pepsi-Cola Co.*, No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply

to § 343(a). . . .”). Therefore, NLEA does not preempt state regulation of false or misleading labels.

Further, the fact that the FDA does not require the disclosure of lead does not mean Augustine's claims over misleading labels are preempted. Although the Complaint states that LesserEvil did not disclose the presence of lead, it also asserts that the Products' branding as "simply made with a blend of seven wholesome vegetables" and as "healthy snacks for kids" was false and misleading. Compl. ¶ 14. For instance, the Complaint alleges that "by marketing the Products as kids snacks, [LesserEvil] represents to consumers that the Products are safe and healthy for toddlers and young children." *Id.* ¶ 17.

I have already concluded that the Complaint adequately alleges that the Products' packaging could mislead a reasonable consumer into thinking the snacks did not contain lead. Therefore, because the NLEA preemption provision does not apply to prohibitions on false or misleading labeling, § 343(a), Augustine's state law claims that the labeling of the Products was false and misleading are not preempted. *See Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 246 (S.D.N.Y. 2019) (concluding that state law claims alleging misleading packaging of products as "Natural" even though they contained glyphosate were not preempted); *Balistreri v. McCormick & Co.*, No. 5:22-CV-00349-EJD, 2023 WL 5988600, at *6-7 (N.D. Cal. Sept. 13, 2023) (holding that the because the FDA "has not imposed any requirements regulating Heavy Metals labeling on herbs and spices" the FDCA did not preempt claims for failing to disclose lead and other heavy metals); *Cogswell v. LesserEvil LLC*, No. 1:23-CV-0311-DJC-JDP, 2025 WL 745011, at *5 (E.D. Cal. Mar. 7, 2025), *report and recommendation adopted*, No. 1:23-CV-0311-DJC-JDP, 2025 WL 931982 (E.D. Cal. Mar. 27, 2025) (holding that California state law claims against LesserEvil alleging misleading

16

packaging about saturated fat content were not preempted). Therefore, Augustine's state law claims for false and misleading labels are not preempted by the FDCA.

### 2.    FDA's Primary Jurisdiction

Alternatively, LesserEvil argues that this case should be dismissed because the inquiry into lead exposure falls under the "primary jurisdiction" of the FDA. Def.'s Mem. 29. LesserEvil, at the time it filed its Motion to Dismiss, said the "FDA is currently investigating whether to implement regulations . . . regarding the presence of heavy metals and other contaminants in food for babies and young children" and was expected to finalize "action levels" in December 2024. *Id.* Since that time, the FDA has issued these action levels, which are non-binding industry guidance.[3] Augustine argues that the fact that the FDA is involved in issuing such "nonbinding industry guidance" should not preclude a lawsuit on state law claims. Pl.'s Mem. 26. I agree with Augustine.

"The federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 504 (2d Cir. 2022) (quoting *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002)). The doctrine of primary jurisdiction is a "'relatively narrow' exception to this obligation." *Id.* (quoting *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)).

The primary jurisdiction doctrine aims to "allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Ellis v. Trib. Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (internal quotation

---

[3] *Action Levels for Lead in Processed Food Intended for Babies and Young Children*, U.S. Food & Drug Admin. (Jan. 2025), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-levels-lead-processed-food-intended-babies-and-young-children (last visited June 30, 2026).

marks and citation omitted). Overall, the "doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring).

In determining whether to dismiss a case in deference to an agency, a court considers the following factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82-83.

I conclude that the *Ellis* factors, on balance, do not favor dismissal. As to the first factor, the central question in this case is whether LesserEvil has misled the reasonable consumer about the lead content of the Products—an inquiry "to which courts are eminently well suited, even well versed." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013). Although the parties may litigate what amount of lead is safe to consume, "this case is far less about science than it is about whether a label is misleading." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). The overall purpose of the primary jurisdiction doctrine is to allow courts to benefit from the specialized knowledge of agencies. By contrast, the central issue to this case, misleading labeling, depends on the specialized experience of courts. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 21-CV-1040 (JAM), 2023 WL 2477499, at *14 (D. Conn. Mar. 13, 2023) ("Neither does the

18

FDA have any special expertise in assessing whether the absence of a [carcinogen chemical] warning would prove deceptive to a reasonable consumer, which requires the application of bread-and-butter tort principles best suited for a judge and jury.").

As to the second factor, it is "within the FDA's discretion to determine whether a label is 'misleading'" and to "ensur[e] product safety." *Goldemberg,* 8 F. Supp. 3d at 477 (citation omitted); *see* 21 U.S.C. § 343(a).

On the third factor, the danger of inconsistent rulings, LesserEvil argues that multiple courts have already dismissed lawsuits about heavy metals in food in deference to the FDA's primary jurisdiction. *See* Def.'s Mem. 32 (collecting cases). However, as discussed, the claims here relate to whether LesserEvil used misleading labeling and packaging—not whether LesserEvil was required to disclose the lead content of its Products. On the issue of misrepresentation, multiple courts in this Circuit have already allowed claims involving lead to survive motions to dismiss. *Levy*, 2024 WL 897495, at *1; *In re Lindt & Sprüngli*, 2024 WL 4107244, at *1; *In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-CV-00678 (NRM) (AYS), 2024 WL 5239510, at *1 (E.D.N.Y. Dec. 27, 2024); *see also White*, 2026 WL 686269, at *1 (allowing claims alleging lead in toothpaste to proceed). My holding is in line with these decisions. Furthermore, it appears there is little risk that the FDA will issue a ruling about the central issue in this case, whether Defendant's labels are misleading about the presence (or risk) of lead. The FDA's *Closer to Zero* initiative, as of June 2026, does not mention any proposed action items relating to labeling or marketing.[4] There is no indication that a

---

[4] *Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods*, U.S. Food & Drug Admin. (Jan. 6, 2025), https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods (last visited June 30, 2026).

determination on such an issue is forthcoming or even under consideration. Accordingly, the third *Ellis* factor weighs in favor of retaining jurisdiction.

As to the fourth factor, LesserEvil does not argue that a prior application has been made to the FDA regarding lead in children's food—instead, it cites an ongoing FDA assessment of heavy metals in baby food and their impact on "babies and young children." Def.'s Mem. 29-30. As noted, after the parties filed briefs in this case, the FDA did issue its industry guidance on "Action Levels for Lead in Processed Food Intended for Babies and Young Children." The FDA's assessment primarily bears on what level of lead might cause injury to health, not whether a misleading label might have deceived consumers like Augustine. Since this case primarily revolves around misleading labels, an area of primarily judicial, not FDA, expertise, I decline to dismiss the case under the primary jurisdiction doctrine. *See Franklin v. Gen. Mills, Inc.*, No. 21-CV-01781 (JMA) (AYS), 2024 WL 1096054, at *2 (E.D.N.Y. Feb. 12, 2024) (applying the *Ellis* factors to hold that the FDA does not have primary jurisdiction over misleading phthalate labeling claims).

### D.    Standing

LesserEvil also argues that the Complaint should be dismissed in its entirety because Augustine lacks Article III standing. Def.'s Mem. 33-36. LesserEvil argues that Augustine lacks Article III standing because she has not sufficiently pleaded facts to show the specific Products she and her children consumed contained lead, or that she suffered any injury from their consumption. *Id.* at 33-34. Augustine contends that it is plausible that the Products she purchased contained levels of lead in line with the results of third-party testing done on the Products described in the Complaint. Pl.'s Mem. 34. She also asserts she suffered an economic injury-in-fact because (1) she spent money to purchase the products that she would not have

otherwise spent and (2) she overpaid for the Products because they are sold at a price premium due to LesserEvil's misleading advertising. *Id.* at 30-33.

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Consistent with Article III's "standing" requirement, a federal court may adjudicate a plaintiff's case only if a plaintiff establishes that they personally suffered a concrete and particularized injury that is actual or imminent, that was likely caused by the defendant's alleged wrongdoing, and that would likely be redressed by a grant of judicial relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022).

At the pleadings stage, a court must accept all factual allegations in support of a plaintiff's standing as true and must draw all reasonable inferences in favor of the plaintiff. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 72 n.1 (2d Cir. 2022). Nevertheless, a plaintiff "bears the burden of establishing standing 'in the same way as any other matter on which [it] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, at the motion to dismiss stage, the complaint must allege enough facts to make it plausible to conclude that the plaintiff has standing. *See Maddox v. Bank of New York Mellon Tr. Co.*, 19 F.4th 58, 65-66 (2d Cir. 2021).

First, I agree with Augustine that she has alleged a sufficient possibility that the Products she purchased contained lead. In *John v. Whole Foods Market Group., Inc.*, the plaintiff alleged that (1) a third-party study had found that Whole Foods' New York City stores "routinely overstated the weights of its pre-packaged products," and (2) he "routinely"

21

purchased such pre-packaged products from the relevant Whole Foods stores during that time period. 858 F.3d 732, 734-35, 737 (2d Cir. 2017). The Second Circuit held that these allegations were sufficient to confer standing. *Id.* at 738. As the Circuit explained, "[a]t the pleading stage, [the Plaintiff] need not prove the accuracy of the [third party's] findings or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible." *Id.* at 737.

*John's* reasoning applies here, where Augustine has alleged that a third-party tested the Products and found lead in each sample. Compl. ¶ 19. It is true that Augustine does not allege the Products she purchased were produced in the same batch as those tested by Consumer Reports. However, courts have not required plaintiffs to make such a showing to establish standing. *See Clinger*, 2023 WL 2477499, at *4 ("Yet, even in the absence of linkage to a particular batch or lot, it is reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of residual [harmful product] contamination even if not every batch is contaminated."); *Levy*, 2024 WL 897495, at *4 (finding standing despite the fact that plaintiff did "not allege the Products she purchased were produced in the same batch as those tested").

Moreover, the Second Circuit has explained that "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." *Eidelman v. Sun Prods. Corp.*, No. 21-1046-CV, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022); *Cantor v. Beech-Nut Nutrition Co.*, No. 25-821-CV, 2026 WL 304246, at *2 (2d Cir. Feb. 5, 2026) (internal quotation marks omitted) ("It is well-established that a plaintiff can show a particularized and concrete economic injury in fact for

22

purposes of Article III standing by alleging that he overpay[ed] for a product."); *see also Clinger*, 2023 WL 2477499, at *4.

The Complaint alleges that Augustine "would not have purchased the Products if she knew the Products contained lead" and "knowing the truth, the Products are worthless to her." Compl. ¶ 33. Therefore, "she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct." *Id.* ¶ 34; *see also id.* ¶ 73 (stating that Augustine and the subclass were injured because they "would not have purchased the Products if they had known that they contained lead, or risked being contaminated by lead," they "overpaid for the Products because the Products are sold at a price premium due to Defendant's misleading representations," or they "received a product that was defective and thus less valuable than what they paid for").

LesserEvil contends that Augustine has not identified "any other comparable, cheaper, or safer products to show that she, in fact, paid a premium for Lil' Puffs." Def.'s Mem. 35. In addition, LesserEvil argues that because Augustine says her knowledge of the Products' lead content renders them valueless to her, she cannot claim a premium. *Id.* Augustine responds that she does not need to point to a comparator to show she paid a price premium. Pl.'s Mem. 34.

I agree that Augustine need not point to any specific, cheaper comparator to sufficiently allege she paid a premium for LesserEvil's Products. *See Brown v. Kerry Inc.*, No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *4 n.4 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, No. 20-CIV-9730 (PGG) (JLC), 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ("[P]laintiff is not required to point to any comparator products in order to successfully allege a price premium theory of injury."); *see also Cooper v. Anheuser-Busch,*

23

*LLC*, 553 F. Supp. 3d 83, 109-10 (S.D.N.Y. 2021) (holding that plaintiff not required to point to comparators in support of price premium claim); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (same).

Augustine can also claim an economic injury even if she alleges the lead content of the product makes it worthless. *See In re Lindt & Sprüngli*, 2024 WL 4107244, at *5 (holding the plaintiffs had standing where they alleged they "would not have purchased the [product] or they would have paid less for them"). It makes little sense that a plaintiff who would have paid a smaller sum for a product has standing but a plaintiff who suffered an even larger economic cost because they would not have purchased the product at all would not have standing. Accordingly, I conclude that Augustine has sufficiently alleged she suffered an economic injury in her purchase of the Products. *See Cantor*, 2026 WL 304246, at *2 (reversing district court's grant of motion to dismiss where complaint "alleged that Beech-Nut marketed its baby food as safe, healthy, and subject to rigorous testing, placing the products in a premium category, while concealing elevated levels or material risks of toxic heavy metals" and had plaintiffs "known the truth, they would not have purchased the products or would have paid less").

### E.    Magnuson-Moss Warranty Act Claims (Count III)

Count Three asserts a class action warranty claim under the MMWA, alleging that the Products did not conform to their representation as being safe for kids. Compl. ¶¶ 75-96. LesserEvil moves to dismiss Count Three because it argues (1) Augustine has not met the jurisdictional requirements of the MMWA, (2) the claim is preempted pursuant to 15 U.S.C. § 2311(d), and (3) the Products' labeling is not a warranty within the meaning of the MMWA. Def.'s Mem. 39. Augustine maintains jurisdiction exists for the MMWA claim under the Class

24

Action Fairness Act ("CAFA"), that her MMWA claim is not preempted, and that the Products' labeling was a warranty within the meaning of the MMWA. Pl.'s Mem. 36-42.

### 1.    Jurisdiction over MMWA Claims

"Congress passed the Magnuson-Moss Warranty Act of 1975, 15 U.S.C. §§ 2301-12, in response to perceived problems with warranties on consumer goods." *In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 735 F. Supp. 3d 1036, 1040 (E.D. Wis. 2024). "The Act aims to make warranties more understandable to the consumer and to create a mechanism for more easily enforcing express or implied warranties." *Id.* "[T]he Act allows a consumer who is damaged by the failure of a supplier to comply with the obligations imposed by the MMWA or by a written or implied warranty to bring a cause of action for damages or other relief." *Id.* (citing 15 U.S.C. § 2310(d)(1)).

"The MMWA provides that the suit may be brought in either state or federal court, but the Act makes the federal jurisdiction it confers subject to three conditions: (1) the amount in controversy of any individual claim must be greater than or equal to $25, (2) the aggregate value of all claims in the suit must be greater than or equal to $50,000, and (3) if the case is brought as a class action, there must be at least 100 named plaintiffs." *Id.* (citing 15 U.S.C. § 2310(d)(3)).

Because Augustine's Complaint does not include at least 100 named plaintiffs, the MMWA does not confer original jurisdiction to hear the MMWA claim. However, Augustine asserts that jurisdiction exists under CAFA for the MMWA claim. Pl.'s Mem. 37. LesserEvil disagrees. Def.'s Mem. 39. As explained below, I conclude that I have jurisdiction over the MMWA claim under CAFA, and, even if I did not, I could exercise supplemental jurisdiction over Augustine's MMWA claim.

### a.    CAFA Jurisdiction

This Court has jurisdiction over plaintiff's state-law claims in this case under the amendments to diversity jurisdiction made by CAFA because there are 100 or more putative class members, the aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and Augustine and LesserEvil are citizens of different states.

"The federal courts are divided on the question of whether they may exercise jurisdiction over an MMWA claim under CAFA." *In re Generac*, 735 F. Supp. 3d at 1042. The Sixth Circuit held in *Kuns v. Ford Motor Co*., 543 F. App'x 572, 574 (6th Cir. 2013), that a district court has original federal jurisdiction over a MMWA claim under CAFA even if the requirements of the MMWA's jurisdiction provision are not met. The Third and Ninth Circuits have reached the opposite conclusion. *See Rowland v. Bissell Homecare, Inc*., 73 F.4th 177, 182-85 (3d Cir. 2023); *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034-35 (9th Cir. 2020). District courts have taken differing views, *Ghaznavi v. De Longhi Am., Inc*., No. 22 CIV. 1871 (KPF), 2023 WL 4931610, at *8 (S.D.N.Y. Aug. 2, 2023) (collecting cases), and the Second Circuit has yet to weigh in on this issue.

CAFA's "grant of jurisdiction over qualifying class actions is quite broad" and "provides district courts with original jurisdiction over '*any* civil action' that both satisfies the amount in controversy requirement and 'is a class action,' as long as certain specified other criteria are met." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015) (emphasis in case) (quoting 28 U.S.C. § 1332(d)(2)). "In turn, 'class action' is expansively defined as '*any* civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *Id.* (emphasis in case) (quoting 28 U.S.C. §

1332(d)(1)(B)). Moreover, CAFA contains several enumerated exceptions but does not carve out MMWA claims.

As other courts have observed, the text itself of the MMWA itself does not purport to strip federal courts of jurisdiction over that may be conferred by another statute. "Instead, the text merely limits the federal jurisdiction conferred by the MMWA itself." *In re Generac*, 735 F. Supp. 3d at 1043; *see also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 844 (E.D. Mich. 2021).[5]

---

[5] The MMWA provides:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
>
> > (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> >
> > (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 U.S.C. § 2310(d)(1). Subsection (3) provides as follows:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—
>
> > (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> >
> > (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all clams to be determined in this suit; or
> >
> > (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Id.* § 2310(d)(3).

27

As Judge Furman has observed, "interpreting CAFA to allow plaintiffs to bring class actions alleging violations of the MMWA, even when they cannot satisfy the MMWA's jurisdictional limits, furthers the purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations." *Weisblum*, 88 F. Supp. 3d at 294. CAFA "was passed with the clear intention of expanding federal court jurisdiction over class actions," whereas "the MMWA's jurisdictional provisions were intended (1) to avoid trivial or minor actions being brought as class actions in the federal district courts; and, (2) to overcome the absence of an amount in controversy requirement." *Id.* (internal quotation marks omitted). Thus, "[t]reating CAFA as an alternative basis for jurisdiction is consistent with the goal of expanding federal court jurisdiction over significant class actions, but CAFA's own limitations—including its amount-in-controversy requirement, its required minimum number of class members, and the local controversy and home state exceptions—ensure that trivial and minor actions still cannot be brought as class actions in federal courts." *Id.*

More recently, Judge Furman reasoned in *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667 (JMF), 2024 WL 967124, at *10 (S.D.N.Y. Mar. 5, 2024), that "the MMWA's jurisdictional provision provides that '[n]o claim shall be cognizable *in a suit brought under* paragraph (1)(B)' if its jurisdictional prerequisites are not met." *Id.* at *10 (emphasis in case) (quoting 15 U.S.C. § 2310(d)(3)). "Here, however, the Class Plaintiffs base subject-matter jurisdiction on—and therefore bring suit 'under'—CAFA, not the MMWA." *Id.* Moreover:

> [A]lthough the MMWA was intended to raise the jurisdictional threshold for class actions alleging breach of warranty claims in particular, putting MMWA claims on a different jurisdictional track from all other claims in a class action properly brought under CAFA would do nothing to prevent federal class actions from raising the same issues via breach-of-warranty claims based on state law. More to the point, in cases like this—where a putative class brings claims under both state warranty laws and the MMWA—it would lead to a counter-intuitive,

if not non-sensical, result: piecemeal litigation, with state-law claims proceeding in federal court and federal-law claims proceeding in state court.

*Id.*

For these reasons, I conclude that this Court has jurisdiction over the MMWA claim under CAFA.

### b.    Supplemental Jurisdiction

Regardless of whether CAFA confers jurisdiction over Augustine's MMWA claim, I would exercise supplemental jurisdiction over the MMWA claim.

As noted, CAFA confers jurisdiction over Augustine's state law claims in this case. Because the MMWA and the state law claims arise from the same common nucleus of operative facts, the MMWA claim forms part of the same case or controversy as the state law claims. *See* 28 U.S.C. § 1367(a);[6] *In re Generac*, 735 F. Supp. 3d at 1041 (concluding that the court could exercise supplemental jurisdiction over MMWA claims). Section 1367(a) allows the Court to exercise supplemental jurisdiction over the MMWA claim unless another federal statute "expressly provide[s] otherwise." Here, "the MMWA's 100-named-plaintiff requirement does not expressly prohibit the exercise of supplemental jurisdiction and does not mention supplemental jurisdiction at all." *In re Generac*, 735 F. Supp. 3d at 1042. "At best, the requirement implies that a federal court may not exercise supplemental jurisdiction over

---

[6] The supplemental jurisdiction statute provides:

> Except as provided in [other subsections of the statute] or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

29

an MMWA claim, which is insufficient to negate supplemental jurisdiction." *Id.*; *see also In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 929 (7th Cir. 2025) (citations omitted) (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 522 (7th Cir. 2003) ("We have yet to resolve the jurisdictional interplay between the [MMWA] and CAFA. Nor must we in this case. Because the [MMWA] claims arise out of the same controversy as the state law claims, the district court could have exercised supplemental jurisdiction over the [MMWA] claims.");[7] *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 170-72 (E.D.N.Y. 2016) (holding that the MMWA's amount-in-controversy requirement does not prevent district courts from exercising supplemental jurisdiction over such claims).

Accordingly, even if the CAFA does not confer jurisdiction over the MMWA claim, I would exercise supplemental jurisdiction over the claim.

### 2.    Preemption of the MMWA Claim

LesserEvil argues that the MMWA claim is preempted by the FDCA. Def.'s Mem. 39.

The MMWA provides that, subject to various requirements, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. §

---

[7] In *Rowland*, the Third Circuit concluded that CAFA did not confer jurisdiction over an MMRA claim but did not address whether supplemental jurisdiction existed because the complaint asserted only an MMRA claim. *See Rowland*, 73 F.4th at 183 n.10 (citation omitted) ("Thus, while we have suggested that a district court could exercise supplemental jurisdiction over an MMWA claim where the complaint contained other claims with original jurisdiction, a district court cannot exercise supplemental jurisdiction over an MMWA claim where no other claims are asserted.").

2310(d)(1). Section 2311(d), however, provides: "This chapter . . . shall be inapplicable to any written warranty the making or content of which is otherwise governed by Federal law. If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." *Id.* § 2311(d). LesserEvil maintains that because "the products at issue are subject to their own regulatory scheme (the FDCA), the MMWA cannot be used to attack label statements on the same products." Def.'s Mem. 40.

As Augustine observes, § 2311(d) applies only to written warranties, and an MMWA claim may be based on either a "written warranty" or an "implied warranty." Pl.'s Mem. 40. I agree with Augustine that § 2311(d) has no effect on MMWA claims based on an implied warranty.

Augustine also argues that her express warranty claims are not based on any statement governed by the FDCA because that statute does not regulate the presence of lead. *Id.* at 40-41. I conclude that resolution of this argument is better resolved at the summary judgment stage of the case. *See Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015) ("Whether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case.").

### 3.    Written Warranty

LesserEvil asserts that its statements, as alleged in the Complaint, do not guarantee "anything over a specified period of time" and thus fail to satisfy the MMWA's definition of a written warranty. Def.'s Mem. 40.

Augustine notes that LesserEvil's argument applies only to her written warranty claim, and her implied warranty claim is sufficient to support her MMWA claim. Pl.'s Mem. 41-42.

I agree that LesserEvil's argument does not defeat Augustine's MMWA claim to the extent it relies on her implied warranty claims.

With respect to Augustine's written warranty claim, Augustine observes that that a written warranty can be an affirmation that a product is "defect free *or* will meet a specified level of performance over a specified period of time." *Id.* at 42; *see* 15 U.S.C. § 2301(6)(A) (defining "written warranty" in relevant part as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time"). Augustine maintains that LesserEvil "warranted that its product was 'defect free' by representing that they were safe for reasonably anticipated uses—i.e., consumption by children." Pl.'s Mem. 42.

In its Reply, LesserEvil asserts that Augustine references only production descriptions in support of her written warranty claim, and these descriptions do not suggest the Products are "defect free." Def.'s Reply 9; *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) ("The references on the packaging to 'honey' and 'graham' do not suggest that the crackers are defect free or that they will meet a specified level of performance over a specified period of time; instead, they simply describe the product.").

However, LesserEvil advertises that its Products are "air-puffed healthy snacks for kids." Compl. ¶ 14. Indeed, the packaging marketing material highlights that "[w]hen [consumers] see the Clean Label Project certification on our packaging," they "can trust that we've taken every measure to ensure it's a safe and high-quality product" that has passed "rigorous third-party testing." *Id.* ¶¶ 14-15 (alterations in original). LesserEvil thus stated that

the Products would be "healthy" and "safe." Yet the Complaint alleges that the Products contain high levels of lead, a toxic metal that causes a host of health issues, and is particularly dangerous for children. *Id.* ¶¶ 2, 11, 12, 19. *See Levin v. Johnson & Johnson*, No. CV 16-6631 (JS)(AYS), 2019 WL 6392503, at *9 (E.D.N.Y. June 17, 2019), *report and recommendation adopted as modified*, No. 16-CV-6631 (JS) (AYS), 2019 WL 3980876 (E.D.N.Y. Aug. 23, 2019) (holding that plaintiff stated a viable claim for breach of express warranty where defendant sold shampoo they advertised as "safe and effective for reasonably anticipated uses").

I observe that the parties have devoted little space in their briefs to a discussion of the adequacy of Augustine's written warranty claim under the MMWA. For purposes of this motion to dismiss, I exercise my discretion to allow Augustine's MMWA claim based on written warranty to proceed. LesserEvil may renew its arguments with respect to the adequacy of this claim at the summary judgment stage of this case.

Finally, it is unclear from the briefing to what extent LesserEvil maintains that Augustine's claims for express or implied warranty are insufficient under Illinois law. To the extent LesserEvil wishes to pursue such arguments, LesserEvil may do so in a summary judgment motion.

### F.    Request for Injunctive Relief

LesserEvil moves to dismiss Augustine's claims for injunctive relief, arguing that she lacks standing to claim injunctive relief. Def.'s Mem. 36. In addition, LesserEvil argues that I should not allow Augustine to amend her complaint to address this deficiency. *Id.* at 41. Augustine concedes that as presently pleaded, "she does not adequately allege standing to seek injunctive relief," but asks for leave to do so. Pl.'s Mem. 36.

33

In *Berni v. Barilla, S.p.A*, the Second Circuit reversed the district court's certification of a class under Fed. R. Civ. P. 23(b)(2), which provides that a class may be certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." 964 F.3d 141, 146, 149 (2d Cir. 2020). The Second Circuit recognized that, if, in pursuing injunctive relief, "some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III." *Id.* at 147. The Second Circuit concluded that in a deceptive advertising case "future harm is not likely, and that, as a result, the injunctive relief sought would not provide a remedy for all members of the class." *Id.* The Second Circuit reasoned: "[T]here is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the [newer boxes of the product are] filled in the same way as the [boxes were before]." *Id.* at 148.

As Augustine observes, some courts within this Circuit have held that plaintiffs do have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future. *See, e.g.*, *Decoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 224 (N.D.N.Y. 2023) (concluding that plaintiffs had sufficiently alleged future injury and therefore had standing to seek injunctive relief, where the defendant continued to sell the products at issue and plaintiffs had indicated that they would purchase the products again if they were safe for use or re-labeled); *see also Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 2766050, at *5 (S.D.N.Y. May 27, 2020) (holding that plaintiff had standing to seek injunctive relief where she alleged that she would purchase the product at issue again if any purported

defects were identified and eliminated); *Campbell v. Freshbev LLC*, 322 F. Supp 3d. 330, 337-38 (E.D.N.Y. 2018) (holding that plaintiffs had standing to seek injunctive relief where they pleaded a future desire to purchase Defendant's product, despite Defendant's argument that Plaintiff "now knows the truth about the [product] and therefore cannot be fooled again"). Yet all but one of these decisions in this Circuit preceded *Berni*, and the one post-*Berni* decision, *DeCoursey*, does not discuss *Berni*. *See Davis*, 727 F. Supp. 3d at 163 (discussing cases considering the question).

Accordingly, as Augustine concedes, the Complaint does not plead facts sufficient to establish standing to seek injunctive relief. Augustine seeks leave to amend but does not provide information about what form of injunctive relief she seeks or what she plans to allege. Thus, I will dismiss Augustine's claim for injunctive relief. To the extent Augustine seeks to amend her request for injunctive relief, she must file a motion to amend her Complaint and a proposed amended complaint pursuant to Local Rule 7(f).

## IV.    CONCLUSION

For the foregoing reasons, LesserEvil's Motion to Dismiss, ECF No. 16, is granted in part and denied in part. I dismiss Augustine's claims for injunctive relief and allow her other claims to proceed. If Augustine seeks to pursue a claim for injunctive relief, she must file a motion to amend her Complaint and a proposed amended complaint pursuant to Local Rule 7(f) on or before August 7, 2026.

**SO ORDERED.**

New Haven, Connecticut
July 8, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

35